Matthew D. Carlson (State Bar No. 273242)
mdcarlson@mdcarlsonlaw.com
LAW OFFICE OF MATTHEW D. CARLSON
3959 N. Buffalo Road, Suite 29
Orchard Park, NY 14127
Telephone: (716) 242-1234

Attorney for Plaintiff JONATHAN ZUBIN

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN ZUBIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC., COINBASE, INC., PHILLIP MARTIN, MATTHEW MULLER, and DOES 1-50,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jonathan Zubin ("Plaintiff"), by and through his attorney, brings this nationwide class action against Defendant Coinbase Global, Inc. and Coinbase Inc. (collectively "Coinbase") and individual Coinbase employees Phillip Martin and Matthew Muller ("Individual Defendants") pursuant to the Electronic Funds Transfer Act, 15 USC § 1693 *et seq.* ("EFTA") and 12 C.F.R. §§ 1005.1–1005.20 ("Regulation E" of the EFTA), and pursuant to a common law theory of negligence.

## NATURE OF THE ACTION

1. Coinbase is a publicly traded company in the business of, *inter alia*, operating an exchange on which Coinbase users can buy and sell various cryptocurrencies and fiat currencies using their Coinbase accounts, or electronic "wallets," which are typically funded and de-funded via electronic transfers to and from Coinbase users' banks.

2. As the cryptocurrency market has increased in popularity and participation, Coinbase users have increasingly become the target of hackers who have breached Coinbase security and made unauthorized transfers of funds – whether in the form of cryptocurrency or fiat currency – from Coinbase users' accounts to the hackers' electronic wallets.[1]

3. In response to widespread instances of unauthorized electronic fund transfers on the Coinbase exchange, Coinbase has done essentially nothing. More specifically, Coinbase – a "financial institution" as defined by the EFTA – has failed to undertake its responsibilities to remedy unauthorized electronic fund transfers under the EFTA and Regulation E by, for example, failing to timely investigate fraudulent transfers and failing to credit and/or provisionally recredit users' accounts pending investigation. Coinbase users have repeatedly implored Coinbase to help them rectify the unauthorized transfers from their accounts, but Coinbase has routinely and repeatedly ignored such requests, instead relying on automated responses that do not specifically address Coinbase users' concerns and do not provide any

---

[1] The owner of an electronic wallet can, for example, use cryptocurrency directly to pay for goods or services from vendors who accept payment in cryptocurrency, or they can trade the cryptocurrency on an exchange (like Coinbase) for fiat currency.

meaningful customer service whatsoever. Coinbase has essentially turned a blind eye to the systemic breaches of security on its exchange, leaving affected Coinbase users without recourse, short of litigation, to correct these issues. Indeed, a recent CNBC article titled "Coinbase slammed for what users say is terrible customer service after hackers drain their accounts" documents users' experiences with Coinbase, and specifically regarding unauthorized transfers of funds.[2]

4. Moreover, Coinbase has failed to comply with the EFTA and Regulation E by failing to provide affected Coinbase users with information concerning the status of the unauthorized electronic transfers from their accounts upon request, and has failed to comply with Regulation E by failing to provide all Coinbase users with initial disclosures required by Regulation E.

5. Coinbase's failure to protect its affected users from unauthorized electronic funds transfers is, separately, negligence: a breach of its duty of reasonable care to safeguard Coinbase users' accounts, which has resulted in substantial economic loss to Coinbase users. Further, Individual Defendants, whom Plaintiff is informed and believes have ultimate responsibility for Coinbase's security protocols, are personally liable for negligence as a result of the acts and omissions attributable to them as alleged herein.

6. As a result of Coinbase's violations of the EFTA and Regulation E, including its disregard for the users from whom it collects substantial transaction fees, as well as Defendants' negligence, Plaintiff seeks, on behalf of all other Class Members (as defined below), damages – including treble damages – statutory damages, attorneys' fees, costs of suit, interest, and any other relief the Court deems appropriate.[3]

**JURISDICTION**

7. This Court has federal question subject matter jurisdiction over this case pursuant to 28

---

[2] *See* https://www.cnbc.com/2021/08/24/coinbase-slammed-for-terrible-customer-service-after-hackers-drain-user-accounts.html.

[3] Plaintiff does not assert claims that have been raised in *Kelly, et al. v. Coinbase Global, Inc., et al.*, Case No. 4:21-cv-06010-JST (N.D. Cal. 8/3/21), Dkt. No.1.

U.S.C. § 1331 because this action is brought pursuant to the Electronic Funds Transfer Act of 1978, 15 U.S.C. § 1693 *et seq.*

8. This Court has supplemental jurisdiction over Plaintiff's negligence claim pursuant to 28 U.S.C. § 1367 because the negligence claim is so related to the EFTA claim such that the claims form part of the same case or controversy under Article III of the United States Constitution.

9. The Court also has jurisdiction over the action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there exists minimal diversity between Class Members and one or more Defendant and because the amount in controversy exceeds $5,000,000, exclusive of interests and costs.

## VENUE

10. This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants have substantial and systematic contacts in this District as alleged in further detail below.

11. Assignment is proper to the San Francisco Division of the Northern District of California under Civil L.R. 3-2(c) and (d) because a substantial part of the events or omissions that gave rise to Plaintiff's claims occurred in San Francisco County.

## THE PARTIES

12. Plaintiff Zubin is a citizen of New York, residing in Erie County.

13. Coinbase, Inc. is a Delaware company and wholly owned subsidiary of Coinbase Global, Inc. Coinbase is in the business of, *inter alia*, operating interactive cryptocurrency exchanges and other related businesses around the world via its website and cellular phone application. Coinbase, Inc. has its principal place of business in San Francisco, California, maintains its executive offices in San Francisco, California, is registered with the Secretary of State of California, has an agent for service of process in California, and, on information and belief, pays taxes to the State of California.

//

14. Defendant Coinbase Global, Inc. is a publicly traded Delaware company in the business of, *inter alia*, operating cryptocurrency exchanges and other related businesses around the world via its website and cellular phone application. While Coinbase Global, Inc. claims to have no physical headquarters, it – like Coinbase, Inc. – has its principal place of business in San Francisco, California, maintains its executive offices in San Francisco, California, is registered with the Secretary of State of California, has an agent for service of process in California, and, on information and belief, pays taxes to the State of California.

15. As stated in Coinbase Global, Inc.'s August 11, 2021 Form 10-Q, Coinbase Global, Inc. and Coinbase, Inc. are operationally the same company – the companies are referred to by Coinbase Global, Inc. collectively as "the 'Company'" which "operates globally and is a leading provider of end-to-end financial infrastructure and technology for the cryptoeconomy" and "offers retail users the primary financial account for the cryptoeconomy, institutions a state of the art marketplace with a deep pool of liquidity for transacting in crypto assets, and ecosystem partners technology and services that enable them to build crypto-based applications and securely accept crypto assets as payment." Given the corporations' expressly stated concerted activities, Coinbase Global, Inc. and Coinbase, Inc. are a single enterprise for purposes of liability for Plaintiff's claims.[4]

16. On information and belief, Individual Defendants Martin and Muller have been the persons with primary responsibility for failing to develop adequate protections against unauthorized transfers from Coinbase users' accounts, and their failure to develop such protections occurred within the course and scope of their employment with Coinbase. On information and belief, Defendant Martin has been, at all relevant times, the Chief Security Officer for Coinbase. On information and belief, Defendant Muller has been, at all relevant times, the Director of Security Operations for Coinbase. On information and belief, both

---

[4] Plaintiff notes that, for multiple reasons that will likely be addressed at a later stage, this state of affairs does not mean Coinbase Global, Inc. can invoke the (unenforceable in any case) arbitration agreement between Plaintiff and Coinbase, Inc.

Individual Defendants reside in California.

17. Does 1-50 are entities and/or individuals whose names are not currently known to Plaintiff, but who may be liable for the acts and/or omissions alleged herein.

## BACKGROUND

18. On or about February 28, 2020, Plaintiff opened an account with Coinbase for the purpose of buying and selling cryptocurrencies.

19. On May 2, 2021, Plaintiff noticed that unauthorized electronic transfers had been made from his Coinbase account to an unknown third party. Specifically, the third party electronically transferred, in multiple increments, Bitcoin and Ethereum valued at approximately $200 to the third party's cryptocurrency wallet. Plaintiff noticed the transfers occurring on May 2 in real time and took immediate steps to safeguard his funds. By the time he was able to do so, the third party had stolen from Plaintiff Bitcoin and Ethereum valued at approximately $4,600.

20. While attempting to safeguard his account on May 2, Plaintiff notified Coinbase of the unauthorized transfers, pursuant to which Plaintiff received an automated response. Following that initial notification, Plaintiff made multiple attempts to communicate with Coinbase regarding the transfers. However, Coinbase has repeatedly closed Plaintiff's customer support cases without notice or explanation. Plaintiff has attempted to reach out to Coinbase customer service via Twitter and Reddit and yet again received only automated responses in reply. All told, Coinbase has done nothing whatsoever to effectively address the unauthorized transfers, let alone rectify the situation in accordance with applicable law.

***

## FIRST CLAIM
### VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT
### 15 U.S.C. § 1693 *et seq.*
### On Behalf of all Class Members against Coinbase

21. Plaintiff, on behalf of himself and all other Class Members, as defined below, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

**A.      Legal Framework of the EFTA**

22.     The EFTA and its corresponding regulations implemented by the Consumer Financial Protection Bureau ("CFPB"), 12 C.F.R. § 1005.1, *et seq.* were designed with the "primary objective" of "the provision of individual consumer rights." 15 U.S.C. § 1693; 12 C.F.R. § 1005.1(b) (the "primary objective of the act and this part is the protection of individual consumers engaging in electronic fund transfers and remittance transfers.").

23.     Relevant definitions:

   a. A "financial institution" includes banks and credit unions, as well as "any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9).  A "person" includes "a natural person or an organization, including a corporation…" 12 CFR § 1005.2(j).

   b. An "account" includes any consumer asset account held directly or indirectly by a financial institution and established primarily for personal, family, or household purposes. 15 U.S.C. § 1693a(2); *see also* 12 CFR § 1005.2(j).

   c. A "consumer" is defined as a "natural person." 15 U.S.C. § 1693a(6).

   d. An "error" includes, *inter alia*, an "unauthorized electronic fund transfer." 15 § 1693f(f)(1); 12 C.F.R. § 1005.11(a)(vii).

   e. An "unauthorized electronic fund transfer" is defined as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693(a)(12); *see also* 15 C.F.R. § 1005(m). The CFBP (as well as the Board of Governors of the Federal Reserve System) have specifically stated that "[a]n unauthorized [electronic funds transfer] includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery." *See* 12 C.F.R. § 205, Supp. I at 2(m) (Board of Governors' Official Interpretation of § 205.2(m)); 12 C.F.R. § 1005, Supp. I at 2(m) (CFPB's Official Interpretation of § 1005.2(m)); *see also Green v. Capital One, N.A.*, 2021 WL 3810750, at *3

(S.D.N.Y., 2021).[5]

    f. An "electronic fund transfer" includes any transfer of funds initiated through a computer. While the definition does not include any transfer of funds the primary purpose of which is the purchase or sale of a security or commodity, if the security or commodity is regulated by the Securities and Exchange Commission ("SEC") or the Commodity Futures Trading Commission ("CFTC") or is purchased or sole through a broker-dealer regulated by the SEC or through a future commission merchant regulated by the CFTC, the "primary purpose" of the transfers of funds at issue in this action is not the purchase or sale of a security or commodity, but rather outright theft. Indeed, CFPB has made clear that this "Securities Exemption" applies to, for example, a transfer initiated by a telephone order to a stockbroker to buy or sell securities or to exercise a margin call, but *not* a transfer involving an access device that accesses a securities or commodities account that a consumer uses for purchasing goods or services or for obtaining cash (*i.e.*, a Coinbase account). 12 C.F.R. § 1005, Supp. I at 3(c)(4).

24.     The error resolution subpart of the EFTA provides, in relevant part, that if a financial institution, within sixty days after having transmitted to a consumer notice of an electronic funds transfer, receives oral or written notice in which the consumer (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer; (2) indicates the consumer's belief that the documentation, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief that an error has occurred, the financial institution must investigate the alleged error, determine whether an error has occurred, and

---

[5] The definition of "unauthorized electronic fund transfer" under § 1693(a)(12) and § 1005(m) excludes any electronic fund transfer initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer. The CFPB and Board of Governors have confirmed that this exclusion does not encompass situations where a consumer technically furnishes to a third party his or her means of access to an account, but due to fraud, threat, or force.

report or mail the results of such investigation and determination to the consumer within ten business days. 15 U.S. Code § 1693f(a)(3); *see also* 12 C.F.R § 205.11; *see also* Supp. I to § 205 at 11(b)(1)–5 (a notice of error is effective so long as the financial institution is able to identify the account in question); 12 C.F.R. § 1005, Supp. I at 11(b)(1)(1) (same). Notice may be constructive "when the institution becomes aware of circumstances leading to the reasonable belief that an unauthorized transfer to or from the consumer's account has been or may be made." 12 C.F.R. 1005.6(b)(5)(iii).

25. If the financial institution determines that an error did occur, it has the option to either (1) correct the error, including the crediting of interest where applicable; or (2) provisionally recredit the consumer's account for the amount alleged to be in error pending the conclusion of the institution's investigation of the error within ten business days of being notified of the error. 15 U.S. Code § 1693f(c); *see also* 12 C.F.R. § 1005.11. In no circumstance can an investigation be concluded more than forty-five days after receipt of the notice of error, and during the pendency of the investigation, the consumer must be allowed full use of funds provisionally recredited. *Id.*

26. Where a financial institution (1) fails to provisionally recredit a consumer's account within the ten-day period specified above, and the financial institution (a) did not make a good faith investigation of the alleged error, or (b) did not have a reasonable basis for believing that the consumer's account was not in error, then the consumer shall be entitled to treble damages determined under section 1693m(a)(1).

27. The consumer may be held liable for an unauthorized electronic fund transfer where a financial institution provides the required notices under 15 U.S.C. § 1693c and 12 C.F.R. § 1005.7(b). 15 U.S.C. § 1693g; 12 C.F.R. § 1005.6. Liability of the consumer, if applicable, is limited to $50 if the consumer notifies the institution within two business days after learning of the loss, or $500 if the consumer fails to notify the institution within two business days after learning of the loss. *Id.*

//

**B.      Factual Allegations**

28.     Coinbase is a "financial institution" as defined by the EFTA because it is a corporation that holds accounts belonging to consumers, including Class Members' accounts.

29.     Class Members are "consumers" as defined by the EFTA because they are natural persons.

30.     Class Members' accounts are "accounts" as defined by the EFTA and/or Regulation E because they are asset accounts held directly by Coinbase and established primarily for personal, family, or household purposes. Class Members' accounts were used for such personal purposes – *i.e.*, intended to earn income from appreciating assets – and not for business purposes.

31.     The electronic fund transfers at issue were "unauthorized electronic fund transfers" because they were initiated by a person other Class Members by fraud, without actual authority to initiate such transfer, and from which Class Members have received no benefit. The primary purpose of such transfers were not the purchase or sale of security or commodity, but rather for the purpose of stealing securities or commodities.

32.     As described herein, Class Members provided timely actual and/or constructive notice to Coinbase of the unauthorized electronic transfers from their accounts. Indeed, Coinbase knew or should have known of the repeated and widespread breaches of its security and subsequent theft of funds, and repeated and widespread requests for assistance from numerous Class Members, such that it should have been aware of and prepared to handle inquiries concerning unauthorized electronic transfers from Class Members' accounts, and should have taken steps to monitor its users' accounts for unauthorized transfers.

33.     However, Coinbase failed to timely investigate the unauthorized electronic transfers from Class Members' accounts as required by 15 U.S. Code § 1693f(a)(3) and 15 U.S. Code § 1693f(d) by failing to conduct a reasonable review of its own records. *See* 12 C.F.R. § 205.11(c)(4); *see also* Supp. I to § 205 at 11(c)(4)–5. Indeed, an adequate investigation would have easily led Coinbase to the conclusion that fraud had occurred given that Class Members

did not authorize the transfers at issue, that the fraudulent transfers were made to accounts other than those Class Members used to fund their Coinbase accounts, and that these fraudulent transfers had been widely reported as a common issue on the Coinbase exchange. Accordingly, Class Members are entitled to damages, attorneys' fees, and costs for Coinbase's inadequate investigation pursuant to 15 U.S.C. § 1693m(a).

34. Further, Defendants failed to correct the "errors" (as noted above, statutorily defined to include "unauthorized electronic fund transfers") in Class Members' accounts by crediting or provisionally recrediting Class Members' accounts after they had been breached and drained of funds. 15 U.S. Code § 1693f(b)-(c). This failure, separately, results in damages owed to Class Members pursuant to 15 U.S.C. § 1693m(a). Further, because Coinbase never provided disclosures to Class Members that were compliant with 12 C.F.R. § 1005.7(b), Class Members have no liability for the unauthorized electronic fund transfers under 15 U.S.C. § 1693g and/or 12 C.F.R. § 1005.6.

35. Additionally, Coinbase has failed to conduct good faith investigations into the unauthorized transactions that Class Members have actually or constructively reported by, for example, failing to provide Class Members reasonable access to effective customer service or otherwise engaging in any sort of meaningful investigation of unauthorized electronic fund transfers.  Further, Coinbase has not had a reasonable basis for believing Class Members' accounts were not in "error." Instead, Coinbase has failed to use the resources and procedures necessary to resolve the levels of fraud that have been occurring on Class Members' accounts, thus demonstrating that Coinbase has been unable or unwilling to form a reasonable basis for believing Class Members' accounts were not in "error." Plaintiff and Class members are therefore entitled to damages, attorneys' fees, and costs under 15 U.S.C. § 1693m, as well as treble damages under 15 U.S.C. § 1693f(e), on this claim.

//

//

//

**SECOND CLAIM**
**VIOLATION OF EFTA AND REGULATION E CUSTOMER SERVICE PROVISIONS**
**15 U.S.C. § 1693f(f)(6); 12 C.F.R. § 1005.11(a)(7)**
**On Behalf of all Class Members against Coinbase**

36. Plaintiff, on behalf of himself and all other Class Members, as defined below, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

37. The EFTA, 15 U.S.C. § 1693f(f)(6) and Regulation E, 12 C.F.R. § 1005.11(a)(7) [6] require financial institutions to address "a consumer's request for additional information or clarification concerning an electronic fund transfer."

38. As alleged above, Class Members are "consumers" within the meaning of the EFTA and Regulation E.

39. Coinbase, a "financial institution" as alleged herein, violated the EFTA and Regulation E by failing to provide information or clarification concerning an electronic fund transfer, including a request the consumer makes to determine whether there was an unauthorized electronic transfer. *See* 15 U.S.C. § 1693f(f)(6); 12 C.F.R. § 1005.11(vii).

40. Accordingly, Coinbase is liable to Class Members for statutory damages, attorneys' fees, and costs for this claim pursuant to 15 U.S.C § 1693m.

**THIRD CLAIM**
**VIOLATION OF REGULATION E NOTICE REQUIREMENTS**
**15 U.S.C. § 1693c; 12 C.F.R. § 1005.7**
**On Behalf of all Class Members against Coinbase**

41. Plaintiff, on behalf of himself and all other Class Members, as defined below, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

42. 15 U.S.C § 1693c and Regulation E, 12 C.F.R. § 1005.7, requires all financial institutions to make the disclosures set forth in § 1005.7(b) before the first electronic fund

---

[6] Consumers have a private right of action for violations of Regulation E. *See Lussoro v. Ocean Financial Federal Credit Union*, 456 F.Supp.3d 474, 492 (E.D.N.Y., 2020).

transfer is made involving a consumer's account.

43. Coinbase, a "financial institution" as alleged herein, violated Regulation E by failing to provide adequate initial disclosures to Class Members including, as applicable: (1) a summary of Class Members' liability, under 12 CFR § 1005.6 or under state or other applicable law or agreement, for unauthorized electronic fund transfers; (2) the telephone number and address of the person or office to be notified when a Class Member believes that an unauthorized electronic fund transfer has been or may be made; (3) Coinbase's business days; (4) the type of electronic fund transfers that Class Members may make and any limitations on the frequency and dollar amount of transfers; (5) any fees imposed by Coinbase for electronic fund transfers or for the right to make transfers; (6) a summary of Class Members' right to receipts and periodic statements, as provided in 12 CFR § 1005.9 of this part, and notices regarding preauthorized transfers as provided in 12 CFR § 1005.10(a) and (d); (7) a summary of Class Members' right to stop payment of a preauthorized electronic fund transfer and the procedure for placing a stop-payment order, as provided in 12 CFR § 1005.10(c); (8) a summary of Coinbase's liability to Class Members under section 910 of the Act for failure to make or to stop certain transfers; (9) the circumstances under which, in the ordinary course of business, Coinbase may provide information concerning Class Members' account to third parties; (10) A notice that is substantially similar to Model Form A-3 as set out in appendix A of 12 CFR 1005.1, *et seq.*, concerning error resolution; and (11) a notice that a fee may be imposed by an automated teller machine operator as defined in 12 CFR § 1005.16(a), when a Class Member initiates an electronic fund transfer or makes a balance inquiry, and by any network used to complete the transaction.

44. As a result of Coinbase's violation of the notice requirements of 15 U.S.C. § 1693c and Regulation E, Class Members are entitled to statutory damages, attorneys' fees, and costs for this claim pursuant to 15 U.S.C. § 1693m(a).

//

//

## FOURTH CLAIM
## NEGLIGENCE
**On Behalf of all Class Members against all Defendants**

45. Plaintiff, on behalf of himself and all other Class Members, as defined below, reallege and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

46. Coinbase and Individual Defendants owed, and continues to owe, a duty to Class Members to exercise reasonable care to safeguard the assets Class Members stored on Coinbase.

47. Coinbase and Individual Defendants have breached this duty by, for example, failing to store Coinbase users' assets in a secure manner. Specifically, Coinbase and Individual Defendants could have, but did not, institute a waiting-time requirement on transfers of assets from the Coinbase exchange. Indeed, other cryptocurrency exchanges such as Gemini have a two-week waiting period for transfers from a user's account. On Coinbase, however, electronic transfers from users' account are instant. The result is that when there is breach of security on Coinbase, the breaching third parties have unfettered access to users' funds unless and until the user notices the breach and can stop it him or herself. Further, Coinbase and Individual Defendants could have, but did not, take action to respond to the dramatic increase of unauthorized electronic transfers that have been well-documented by users and media, of which Coinbase and Individual Defendants were or should have been aware, and Coinbase and Individual Defendants could have, but did not, have in place a procedure for recrediting or provisionally crediting accounts that had been subject to unauthorized electronic transfers.

48. Coinbase and Individual Defendants' actions and/or omissions identified herein are inconsistent with industry standards and regulations, including the EFTA and Regulation E.

49. The harm inflicted upon Class Members as a result of Coinbase and Individual Defendants' actions and/or omissions identified herein was reasonably foreseeable to Coinbase and Individual Defendants because they were and are aware or should have been aware of the unreasonable security risks on the Coinbase exchange and Class Members' unreasonable exposure to unauthorized electronic transfers of funds.

50.     On information and belief, Individual Defendants were the individuals with primary responsibility for failing to develop adequate protections against unauthorized transfers from Coinbase users' accounts, and their failure to develop such protections occurred within the course and scope of their employment with Coinbase.

51.     As a direct and proximate result of Coinbase and Individual Defendants' acts and omissions identified herein, Class Members lost funds from their Coinbase accounts.

52.     Accordingly, Class Members are entitled to damages pursuant to this claim.

***

## CLASS ACTION ALLEGATIONS

53.     Plaintiff's first claim for damages, including treble damages, under the EFTA is brought on behalf of himself and all others similarly situated. This putative class is defined as:

> "All Coinbase users who had funds, including but not necessarily limited to cryptocurrency and/or fiat currency, stolen from them as a result of unauthorized electronic fund transfers from their Coinbase account within the one-year period immediately preceding the filing of this action."

54.     Plaintiff's second claim for statutory damages pursuant to Coinbase's violation of the EFTA's "customer service" provision, 15 U.S.C. § 1693f(e)(6) and Regulation E, 12 C.F.R. § 1005.11(a)(vii), is brought on behalf of himself and all others similarly situated. This putative class is also defined as:

> "All Coinbase users who had funds, including but not necessarily limited to cryptocurrency and/or fiat currency, stolen from them as a result of unauthorized electronic fund transfers from their Coinbase account within the one-year period immediately preceding the filing of this action."

55.     Plaintiff's third claim for statutory damages pursuant to Coinbase's violation of the disclosure provisions of Regulation E, 12 C.F.R. § 1005.7, is brought on behalf of himself and all others similarly situated. This putative class is defined as:

> "All Coinbase users within the one-year period immediately preceding the filing of this action."

56.     Plaintiff's fourth claim for damages pursuant to his negligence claim is brought on behalf of himself and all others similarly situated. This putative class is defined as:

> "All Coinbase users who had funds, including but not necessarily limited to cryptocurrency and/or fiat currency, stolen from them as a result of unauthorized electronic fund transfers from their Coinbase account within the two-year period immediately preceding the filing of this action."[7]

57. For ease of reading, all members of each putative class are referred to herein have been and will be referred to as "Class Members."

### A. ASCERTAINABILITY

58. Plaintiff is informed and believes that the identities of Class Members are ascertainable through Coinbase's records.

### B. NUMEROSITY

59. On information and belief, Plaintiff estimates that there are thousands of Class Members, and that it would be impracticable to bring them all before the Court.

### C. COMMONALITY

60. Questions of law and fact common to Class Members include, but are not necessarily limited to: (1) whether Coinbase complied with the investigation and error resolution requirements of the EFTA and/or Regulation E in connection with the unauthorized electronic transfer of funds from Class Members' accounts; (2) whether Coinbase made good faith investigations of unauthorized electronic fund transfers or did not have a reasonable basis for believing Class Members' accounts were not in error (3) whether Coinbase complied with the customer service provisions of the EFTA and/or regulation E in connection with the unauthorized electronic transfer of funds from Class Members' accounts; (4) whether Coinbase complied with the disclosure requirements of the EFTA and/or Regulation E; (5) whether Coinbase owed a duty to Class Members; (6) whether Coinbase breached its duty to Class Members; and (7) whether Coinbase's breach of its duty to Class Members caused Class Members harm.

---

[7] While states have varying statutes of limitations for negligence claims, it is well-established that "[d]istrict courts have discretion to create subclasses in view of statute-of-limitations issues." *Hart v. BHH, LLC*, 323 F.Supp.3d 560, 565 (S.D.N.Y., 2018); *see also Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 545 (C.D.Cal.,2012).

61. Issues common to the class can be resolved with classwide evidence, including, for example, evidence that (1) Coinbase did not investigate and/or credit or provisionally credit any Class Members' compromised accounts; (2) that Coinbase did not take any good faith steps to investigate the unauthorized electronic fund transfers or did not take steps to form a reasonable basis for believing Class Members accounts were not in error; (3) that Coinbase did not provide any meaningful customer service to Class Members; (4) that Coinbase did not provide adequate Regulation E disclosures to any Class Members; (5) that Coinbase owed the same duty of ordinary care to all Class Members; (6) that Coinbase breached that duty of care as to all Class Members by its actions and/or omissions as described herein; and (7) that Coinbase's actions or omissions applicable to all Class Members as described herein caused Class Members harm.

## D. TYPICALITY

62. Plaintiff's claims are typical, if not identical, to the claims that could be asserted by all Class Members, as Plaintiff's statutory and common law claims arise from Coinbase's practices applicable to all Class Members as described herein.

## E. ADEQUACY

63. Plaintiff will adequately represent the interests Class Members because there are no conflicts between Plaintiff and any Class Members and because Plaintiff's counsel has the experience and skill to zealously advocate for the interests of Class Members.

## F. PREDOMINANCE

64. Common issues predominate over individualized inquiries in this action because Coinbase's liability under the EFTA, Regulation E, and pursuant to Plaintiff's negligence claim can be established as to all Class Members as discussed herein.

## G. SUPERIORITY

65. There are substantial benefits to proceeding as a class action that render proceeding as a class superior to any alternatives, including the fact that it will provide a realistic means for Class Members to recover damages; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many Class Members may be unaware that

they have legal recourse for the conduct alleged herein; and because issues common to Class Members can be effectively managed in a single proceeding.

***

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

a. Certification of this action as a class action;

b. Designation of Plaintiff as representative of the putative Classes;

c. Designation of Plaintiff's counsel as counsel for the putative Classes;

d. Actual damages owed to Class Members pursuant to Plaintiff's applicable EFTA claims and Plaintiff's negligence claim;

e. Treble damages pursuant to the EFTA, 15 U.S.C. § 1693(f);

f. Statutory damages pursuant to the EFTA, 15 U.S.C. § 1693(m);

g. Attorneys' fees pursuant to the EFTA, 15 U.S.C. § 1693(m);

h. Costs of litigation pursuant to the EFTA, 15 U.S.C. § 1693(m);

i. Pre-judgment interest pursuant to federal law;

j. Post-judgment interest pursuant to 28 U.S.C. § 1961(a);

k. Any other relief the Court deems proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby respectfully demands a trial by jury in this matter.

Dated: September 24, 2021      LAW OFFICE OF MATTHEW D. CARLSON


By: _/S/ Matthew D. Carlson_____
Matthew D. Carlson
Attorney for Plaintiff