Matthew D. Carlson (State Bar No. 273242)
mdcarlson@mdcarlsonlaw.com
LAW OFFICE OF MATTHEW D. CARLSON
3959 N. Buffalo Road, Suite 29
Orchard Park, NY 14127
Telephone: (716) 242-1234

Attorney for Plaintiff JONATHAN ZUBIN

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN ZUBIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE, INC.<br><br>Defendant. | **Case No.: 4:21-cv-07478-DMR**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jonathan Zubin ("Plaintiff"), by and through his attorney, brings this nationwide class action against Defendant Coinbase, Inc. ("Coinbase") pursuant to the Electronic Funds Transfer Act, 15 USC § 1693 *et seq.* ("EFTA") and 12 C.F.R. §§ 1005.1–1005.20 ("Regulation E" of the EFTA).

## NATURE OF THE ACTION

1. Coinbase is a wholly-owned subsidiary of publicly-traded entity Coinbase Global, Inc., in the business of, *inter alia*, operating an exchange on which Coinbase users can buy and sell various cryptocurrencies and fiat currencies using their Coinbase accounts, or electronic "wallets," which are typically funded and de-funded via electronic transfers to and from Coinbase users' banks.

2. As the cryptocurrency market has increased in popularity and participation, Coinbase users have increasingly become the target of hackers who have breached Coinbase security and made unauthorized transfers of funds – whether in the form of cryptocurrency or fiat currency – from Coinbase users' accounts to the hackers' electronic wallets.[1]

3. In response to widespread instances of unauthorized electronic fund transfers on the Coinbase exchange, Coinbase did essentially nothing – until four days after this case was filed. *See* ¶ 5, *infra*. More specifically, Coinbase – a "financial institution" as defined by the EFTA – failed to undertake its responsibilities to remedy unauthorized electronic fund transfers under the EFTA and Regulation E by, for example, failing to timely and in good faith investigate fraudulent transfers and failing to timely credit and/or provisionally recredit users' accounts pending investigation. Coinbase users repeatedly implored Coinbase to help them rectify the unauthorized transfers from their accounts, but Coinbase routinely and repeatedly ignored such requests, instead relying on automated responses that did not specifically address Coinbase users' concerns and did not provide any meaningful customer service whatsoever. For many

---

[1] The owner of an electronic wallet can, for example, use cryptocurrency directly to pay for goods or services from vendors who accept payment in cryptocurrency, or they can trade the cryptocurrency on an exchange (like Coinbase) for fiat currency.

months, Coinbase essentially turned a blind eye to the systemic breaches of security on its exchange, leaving affected Coinbase users without recourse, short of litigation, to correct these issues. Indeed, a recent CNBC article titled "Coinbase slammed for what users say is terrible customer service after hackers drain their accounts" documents users' experiences with Coinbase, and specifically regarding unauthorized transfers of funds.[2]

4. Moreover, Coinbase failed to comply with the EFTA and Regulation E by failing to timely provide affected Coinbase users with information concerning the status of the unauthorized electronic transfers from their accounts upon request, and failed to comply with Regulation E by failing to provide all Coinbase users with initial disclosures required by Regulation E.

5. On September 28, 2021 – four days after Plaintiff filed this action – Plaintiff received an email from Coinbase stating, *inter alia*, "between March and May 20, 2021, you were a victim of a third-party campaign to gain unauthorized access to the accounts of Coinbase customers and move customer funds off the Coinbase platform. At least 6,000 Coinbase customers had funds removed from their accounts, including you" and that as a result, Coinbase "will be depositing funds into your account equal to the value of the currency improperly removed from your account at the time of the incident." Coinbase also stated that it would be "setting up a dedicated phone support line for our customers who have been impacted by this." Coinbase admitted that a "third party took advantage of a flaw in Coinbase's SMS Account Recovery process in order to…gain access to [Coinbase users'] accounts" and thereby steal Coinbase users' funds. *See* Exh. A.

6. Thus, Coinbase has acknowledged its culpability for the unauthorized electronic transfers as well as its woefully inadequate and untimely investigation thereof, and woefully inadequate and untimely response to its users' inquiries regarding unauthorized electronic

---

[2] *See* https://www.cnbc.com/2021/08/24/coinbase-slammed-for-terrible-customer-service-after-hackers-drain-user-accounts.html.

transfers. And while – according to Coinbase – Plaintiff and potentially some Class Members have received partial refunds, Plaintiff continues to seek, on behalf of all other Class Members (as defined below), any damages owed but not refunded, treble damages, statutory damages, attorneys' fees, costs of suit, interest, and any other relief the Court deems appropriate.

## JURISDICTION

7. This Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this action is brought pursuant to the Electronic Funds Transfer Act of 1978, 15 U.S.C. § 1693 *et seq.*

8. The Court also has jurisdiction over the action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there exists minimal diversity between Class Members and one or more Defendant and because the amount in controversy exceeds $5,000,000, exclusive of interests and costs.

## VENUE

9. This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Coinbase has substantial and systematic contacts in this District as alleged in further detail below.

10. Assignment is proper to the San Francisco or Oakland Division of the Northern District of California under Civil L.R. 3-2(c) and (d) because a substantial part of the events or omissions that gave rise to Plaintiff's claims occurred in San Francisco County.

## THE PARTIES

11. Plaintiff Zubin is a citizen of New York, residing in Erie County.

12. Defendant Coinbase, Inc. is a Delaware company in the business of, *inter alia*, operating cryptocurrency exchanges and other related businesses around the world via its website and cellular phone application. While Coinbase, Inc. claims to have no physical headquarters, it has its principal place of business in San Francisco, California, maintains its executive offices in San Francisco, California, is registered with the Secretary of State of California, has an agent for

service of process in California, and, on information and belief, pays taxes to the State of California.

## BACKGROUND

13. On or about February 28, 2020, Plaintiff opened an account with Coinbase for the purpose of buying and selling cryptocurrencies.

14. On May 2, 2021, Plaintiff noticed that unauthorized electronic transfers had been made from his Coinbase account to an unknown third party. Specifically, the third party electronically transferred, in multiple increments, Bitcoin and Ethereum valued at approximately $200 to the third party's cryptocurrency wallet. Plaintiff noticed the transfers occurring on May 2 in real time and took immediate steps to safeguard his funds. By the time he was able to do so, the third party had stolen from Plaintiff Bitcoin and Ethereum valued at approximately $4,600.

15. While attempting to safeguard his account on May 2, Plaintiff notified Coinbase of the unauthorized transfers, pursuant to which Plaintiff received an automated response. Following that initial notification, Plaintiff made multiple attempts to communicate with Coinbase regarding the transfers. However, Coinbase repeatedly closed Plaintiff's customer support cases without notice or explanation. In the days following the transfers, Plaintiff also attempted to reach out to Coinbase customer service via Twitter and Reddit and yet again received only automated responses in reply.

16. On or about May 6, 2021, Plaintiff submitted to Coinbase via Coinbase's website a "Formal Complaint" regarding the transfers. Plaintiff once again received a computer-generated response, this time confirming receipt of the Formal Complaint. It was not until August 5, 2021 – after Plaintiff informed Coinbase customer support that he had obtained legal counsel, and approximately 90 days after submitting his Formal Complaint – that Plaintiff finally received a clearly cookie-cutter response indicating that Coinbase had rejected his Formal Complaint. During the approximately 90-day period following Plaintiff's submission of his Formal Complaint (as well as during the several-day period leading up to Plaintiff's Formal Complaint), Coinbase made no attempts whatsoever to engage with Plaintiff to attempt to resolve the issue.

17.     On September 28, 2021 – four days after Plaintiff filed this action – Plaintiff received an email from Coinbase informing him that, *inter alia*, Coinbase would refund him, and, it appears, other affected Coinbase users, the value of funds (as of the date of the theft) stolen from their Coinbase accounts. *See* Exh. A. However, Plaintiff, on behalf of all other affected Coinbase users, still seeks any outstanding damages, treble damages, statutory damages, interest, attorneys' fees, and costs of litigation.

***

**FIRST CLAIM**
**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**15 U.S.C. § 1693** *et seq.*
**On Behalf of all Class Members against Coinbase**

18.     Plaintiff, on behalf of himself and all other Class Members, as defined below, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

**A.      Legal Framework of the EFTA**

19.     The EFTA and its corresponding regulations implemented by the Consumer Financial Protection Bureau ("CFPB"), 12 C.F.R. § 1005.1, *et seq.* were designed with the "primary objective" of "the provision of individual consumer rights." 15 U.S.C. § 1693; 12 C.F.R. § 1005.1(b) (the "primary objective of the act and this part is the protection of individual consumers engaging in electronic fund transfers and remittance transfers.").

20.     Relevant definitions:

    a. A "financial institution" includes banks and credit unions, as well as "any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9).  A "person" includes "a natural person or an organization, including a corporation…" 12 CFR § 1005.2(j).

    b. An "account" includes any consumer asset account held directly or indirectly by a financial institution and established primarily for personal, family, or household purposes. 15 U.S.C. § 1693a(2); *see also* 12 CFR § 1005.2(j).

c. A "consumer" is defined as a "natural person." 15 U.S.C. § 1693a(6).

d. An "error" includes, *inter alia*, an "unauthorized electronic fund transfer." 15 § 1693f(f)(1); 12 C.F.R. § 1005.11(a)(vii).

e. An "unauthorized electronic fund transfer" is defined as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693(a)(12); *see also* 15 C.F.R. § 1005(m). The CFBP (as well as the Board of Governors of the Federal Reserve System) have specifically stated that "[a]n unauthorized [electronic funds transfer] includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery." *See* 12 C.F.R. § 205, Supp. I at 2(m) (Board of Governors' Official Interpretation of § 205.2(m)); 12 C.F.R. § 1005, Supp. I at 2(m) (CFPB's Official Interpretation of § 1005.2(m)); *see also Green v. Capital One, N.A.*, 2021 WL 3810750, at *3 (S.D.N.Y., 2021).[3]

f. An "electronic fund transfer" includes any transfer of funds initiated through a computer. While the definition does not include any transfer of funds the primary purpose of which is the purchase or sale of a security or commodity, if the security or commodity is regulated by the Securities and Exchange Commission ("SEC") or the Commodity Futures Trading Commission ("CFTC") or is purchased or sole through a broker-dealer regulated by the SEC or through a future commission merchant regulated by the CFTC, the "primary purpose" of the transfers of funds at issue in this action is not the purchase or sale of a security or commodity, but rather outright

---

[3] The definition of "unauthorized electronic fund transfer" under § 1693(a)(12) and § 1005(m) excludes any electronic fund transfer initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer. The CFPB and Board of Governors have confirmed that this exclusion does not encompass situations where a consumer technically furnishes to a third party his or her means of access to an account, but due to fraud, threat, or force.

theft. Indeed, CFPB has made clear that this "Securities Exemption" applies to, for example, a transfer initiated by a telephone order to a stockbroker to buy or sell securities or to exercise a margin call, but *not* a transfer involving an access device that accesses a securities or commodities account that a consumer uses for purchasing goods or services or for obtaining cash (*i.e.*, a Coinbase account). 12 C.F.R. § 1005, Supp. I at 3(c)(4).

21. The error resolution subpart of the EFTA provides, in relevant part, that if a financial institution, within sixty days after having transmitted to a consumer notice of an electronic funds transfer, receives oral or written notice in which the consumer (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer; (2) indicates the consumer's belief that the documentation, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief that an error has occurred, the financial institution must investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. 15 U.S. Code § 1693f(a)(3); *see also* 12 C.F.R § 205.11; *see also* Supp. I to § 205 at 11(b)(1) (a notice of error is effective so long as the financial institution is able to identify the account in question); 12 C.F.R. § 1005, Supp. I at 11(b)(1)(1) (same). Notice may be constructive "when the institution becomes aware of circumstances leading to the reasonable belief that an unauthorized transfer to or from the consumer's account has been or may be made." 12 C.F.R. 1005.6(b)(5)(iii).

22. If the financial institution determines that an error did occur, it has the option to either (1) timely correct the error, including the crediting of interest where applicable; or (2) timely provisionally recredit the consumer's account for the amount alleged to be in error pending the conclusion of the institution's investigation of the error within ten business days of being notified of the error. 15 U.S. Code § 1693f(c); *see also* 12 C.F.R. § 1005.11. In no circumstance can an investigation be concluded more than forty-five days after receipt of the notice of error, and during the pendency of the investigation, the consumer must be allowed full use of funds

provisionally recredited. *Id.*

23. Where a financial institution (1) fails to provisionally recredit a consumer's account within the ten-day period specified above, and the financial institution (a) did not make a good faith investigation of the alleged error, or (b) did not have a reasonable basis for believing that the consumer's account was not in error, then the consumer shall be entitled to treble damages determined under section 1693m(a)(1).

24. The consumer may be held liable for an unauthorized electronic fund transfer where a financial institution provides the required notices under 15 U.S.C. § 1693c and 12 C.F.R. § 1005.7(b). 15 U.S.C. § 1693g; 12 C.F.R. § 1005.6. Liability of the consumer, if applicable, is limited to $50 if the consumer notifies the institution within two business days after learning of the loss, or $500 if the consumer fails to notify the institution within two business days after learning of the loss. *Id.*

**B.     Factual Allegations**

25. Coinbase is a "financial institution" as defined by the EFTA because it is a corporation that holds accounts belonging to consumers, including Class Members' accounts.

26. Class Members are "consumers" as defined by the EFTA because they are natural persons.

27. Class Members' accounts are "accounts" as defined by the EFTA and/or Regulation E because they are asset accounts held directly by Coinbase and established primarily for personal, family, or household purposes. Class Members' accounts are used for such personal purposes – *i.e.*, intended to earn income from appreciating assets – and not for business purposes.

28. The electronic fund transfers at issue were "unauthorized electronic fund transfers" because they were initiated by a person other than Class Members by fraud, without actual authority to initiate such transfer, and from which Class Members have received no benefit. The primary purpose of such transfers were not the purchase or sale of security or commodity, but rather for the purpose of stealing securities or commodities.

29. As described herein, Class Members provided timely actual and/or constructive notice to Coinbase of the unauthorized electronic transfers from their accounts. Indeed, Coinbase knew or should have known of the repeated and widespread breaches of its security and subsequent theft of funds, as well as repeated and widespread requests for assistance from numerous Class Members, such that it should have been aware of and prepared to handle inquiries concerning unauthorized electronic transfers from Class Members' accounts, and should have taken steps to monitor its users' accounts for unauthorized transfers.

30. However, Coinbase failed to timely investigate the unauthorized electronic transfers from Class Members' accounts as required by 15 U.S. Code § 1693f(a)(3) and 15 U.S. Code § 1693f(d) by failing to conduct a timely and reasonable review of its own records. *See* 12 C.F.R. § 205.11(c)(4); *see also* Supp. I to § 205 at 11(c)(4)–5. Indeed, an adequate investigation would have easily led Coinbase to the conclusion that fraud had occurred given that Class Members did not authorize the transfers at issue, that the fraudulent transfers were made to accounts other than those Class Members used to fund their Coinbase accounts, and that these fraudulent transfers had been widely reported as a common issue on the Coinbase exchange. Indeed, this is exactly what Coinbase's untimely investigation revealed. *See* Exh. A. Accordingly, Class Members are entitled to any outstanding damages, attorneys' fees, and costs for Coinbase's inadequate investigation pursuant to 15 U.S.C. § 1693m(a).

31. Further, Coinbase failed to timely correct the "errors" (as noted above, statutorily defined to include "unauthorized electronic fund transfers") in Class Members' accounts by timely crediting or provisionally recrediting Class Members' accounts after they had been breached and drained of funds. 15 U.S. Code § 1693f(b)-(c). This failure, separately, results in any outstanding damages owed to Class Members pursuant to 15 U.S.C. § 1693m(a). Further, because Coinbase never provided disclosures to Class Members that were compliant with 12 C.F.R. § 1005.7(b), Class Members have no liability for the unauthorized electronic fund transfers under 15 U.S.C. § 1693g and/or 12 C.F.R. § 1005.6.

32. Additionally, Coinbase has failed to conduct good faith investigations into the

unauthorized transactions that Class Members have actually or constructively reported by, for example, failing to provide Class Members reasonable access to timely and effective customer service or otherwise engaging in any sort of meaningful timely investigation of unauthorized electronic fund transfers.  Further, Coinbase has not had a reasonable basis for believing Class Members' accounts were not in "error." Instead, Coinbase failed to use the resources and procedures necessary to timely resolve the fraud that had been occurring on Class Members' accounts, thus demonstrating that Coinbase was unable or unwilling to timely form a reasonable basis for believing Class Members' accounts were not in "error." Plaintiff and Class members are therefore entitled to any outstanding damages, attorneys' fees, and costs under 15 U.S.C. § 1693m, as well as treble damages under 15 U.S.C. § 1693f(e), on this claim.

**SECOND CLAIM**
**VIOLATION OF EFTA AND REGULATION E CUSTOMER SERVICE PROVISIONS**
**15 U.S.C. § 1693f(f)(6); 12 C.F.R. § 1005.11(a)(7)**
**On Behalf of all Class Members against Coinbase**

33. Plaintiff, on behalf of himself and all other Class Members, as defined below, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

34. The EFTA, 15 U.S.C. § 1693f(f)(6) and Regulation E, 12 C.F.R. § 1005.11(a)(7) [4] require financial institutions to address "a consumer's request for additional information or clarification concerning an electronic fund transfer."

35. As alleged above, Class Members are "consumers" within the meaning of the EFTA and Regulation E.

36. Coinbase, a "financial institution" as alleged herein, violated the EFTA and Regulation E by failing to timely provide information or clarification concerning an electronic fund transfer, including requests Class Members made to determine whether there were unauthorized electronic transfers from their accounts. *See* 15 U.S.C. § 1693f(f)(6); 12 C.F.R. § 1005.11(vii).

---

[4]   Consumers have a private right of action for violations of Regulation E. *See Lussoro v. Ocean Financial Federal Credit Union*, 456 F.Supp.3d 474, 492 (E.D.N.Y., 2020).

37.     Accordingly, Coinbase is liable to Class Members for statutory damages, attorneys' fees, and costs for this claim pursuant to 15 U.S.C § 1693m.

**THIRD CLAIM**
**VIOLATION OF REGULATION E NOTICE REQUIREMENTS**
**15 U.S.C. § 1693c; 12 C.F.R. § 1005.7**
**On Behalf of all Class Members against Coinbase**

38.     Plaintiff, on behalf of himself and all other Class Members, as defined below, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

39.     15 U.S.C § 1693c and Regulation E, 12 C.F.R. § 1005.7, requires all financial institutions to make the disclosures set forth in § 1005.7(b) before the first electronic fund transfer is made involving a consumer's account.

40.     Coinbase, a "financial institution" as alleged herein, violated Regulation E by failing to provide adequate initial disclosures to Class Members including, as applicable: (1) a summary of Class Members' liability, under 12 CFR § 1005.6 or under state or other applicable law or agreement, for unauthorized electronic fund transfers; (2) the telephone number and address of the person or office to be notified when a Class Member believes that an unauthorized electronic fund transfer has been or may be made; (3) Coinbase's business days; (4) the type of electronic fund transfers that Class Members may make and any limitations on the frequency and dollar amount of transfers; (5) any fees imposed by Coinbase for electronic fund transfers or for the right to make transfers; (6) a summary of Class Members' right to receipts and periodic statements, as provided in 12 CFR § 1005.9 of this part, and notices regarding preauthorized transfers as provided in 12 CFR § 1005.10(a) and (d); (7) a summary of Class Members' right to stop payment of a preauthorized electronic fund transfer and the procedure for placing a stop-payment order, as provided in 12 CFR § 1005.10(c); (8) a summary of Coinbase's liability to Class Members under section 910 of the Act for failure to make or to stop certain transfers; (9) the circumstances under which, in the ordinary course of business, Coinbase may provide information concerning Class Members' account to third parties; (10) A notice that is

substantially similar to Model Form A-3 as set out in appendix A of 12 CFR 1005.1, *et seq.*, concerning error resolution; and (11) a notice that a fee may be imposed by an automated teller machine operator as defined in 12 CFR § 1005.16(a), when a Class Member initiates an electronic fund transfer or makes a balance inquiry, and by any network used to complete the transaction.

41. As a result of Coinbase's violation of the notice requirements of 15 U.S.C. § 1693c and Regulation E, Class Members are entitled to statutory damages, attorneys' fees, and costs for this claim pursuant to 15 U.S.C. § 1693m(a).

***

**CLASS ACTION ALLEGATIONS**

42. Plaintiff's first claim for damages, including treble damages, under the EFTA is brought on behalf of himself and all others similarly situated. This putative class is defined as:

> "All Coinbase users who had funds, including but not necessarily limited to cryptocurrency and/or fiat currency, stolen from them as a result of unauthorized electronic fund transfers from their Coinbase account within the one-year period immediately preceding the filing of this action."

43. Plaintiff's second claim for statutory damages pursuant to Coinbase's violation of the EFTA's "customer service" provision, 15 U.S.C. § 1693f(e)(6) and Regulation E, 12 C.F.R. § 1005.11(a)(vii), is brought on behalf of himself and all others similarly situated. This putative class is also defined as:

> "All Coinbase users who had funds, including but not necessarily limited to cryptocurrency and/or fiat currency, stolen from them as a result of unauthorized electronic fund transfers from their Coinbase account within the one-year period immediately preceding the filing of this action."

44. Plaintiff's third claim for statutory damages pursuant to Coinbase's violation of the disclosure provisions of Regulation E, 12 C.F.R. § 1005.7, is brought on behalf of himself and all others similarly situated. This putative class is defined as:

> "All Coinbase users within the one-year period immediately preceding the filing of this action."

**A.    ASCERTAINABILITY**

45.    As stated by Coinbase, the identities of Class Members are ascertainable through Coinbase's records. *See* Exh. A.

**B.    NUMEROSITY**

46.    As stated by Coinbase, there are approximately 6,000 Class Members, and it would be impracticable to bring them all before the Court. *See* Exh. A.

**C.    COMMONALITY**

47.    Questions of law and fact common to Class Members include, but are not necessarily limited to: (1) whether Coinbase complied with the investigation and error resolution requirements of the EFTA and/or Regulation E in connection with the unauthorized electronic transfer of funds from Class Members' accounts; (2) whether Coinbase made timely, good faith investigations of unauthorized electronic fund transfers or did not have a reasonable basis for believing Class Members' accounts were not in error (3) whether Coinbase timely complied with the customer service provisions of the EFTA and/or regulation E in connection with the unauthorized electronic transfer of funds from Class Members' accounts; and (4) whether Coinbase complied with the disclosure requirements of the EFTA and/or Regulation E.

48.    Issues common to the class can be resolved with classwide evidence, including, for example, evidence that (1) Coinbase did not timely investigate and/or credit or provisionally credit any Class Members' compromised accounts; (2) that Coinbase did not take any timely good faith steps to investigate the unauthorized electronic fund transfers or did not take timely steps to form a reasonable basis for believing Class Members accounts were not in error; (3) that Coinbase did not provide any timely and/or meaningful customer service to Class Members; and (4) that Coinbase did not provide adequate Regulation E disclosures to any Class Members.

**D.    TYPICALITY**

49.    Plaintiff's claims are typical, if not identical, to the claims that could be asserted by all Class Members, as Plaintiff's statutory claims arise from Coinbase's practices applicable to all Class Members as described herein.

### E.  ADEQUACY

50. Plaintiff will adequately represent the interests Class Members because there are no conflicts between Plaintiff and any Class Members and because Plaintiff's counsel has the experience and skill to zealously advocate for the interests of Class Members.

### F.  PREDOMINANCE

51. Common issues predominate over individualized inquiries in this action because Coinbase's liability under the EFTA, Regulation E, can be established as to all Class Members as discussed herein.

### G.  SUPERIORITY

52. There are substantial benefits to proceeding as a class action that render proceeding as a class superior to any alternatives, including the fact that it will provide a realistic means for Class Members to recover damages; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many Class Members may be unaware that they have legal recourse for the conduct alleged herein; and because issues common to Class Members can be effectively managed in a single proceeding.

***

### PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

a. Certification of this action as a class action;

b. Designation of Plaintiff as representative of the putative Classes;

c. Designation of Plaintiff's counsel as counsel for the putative Classes;

d. Any remaining actual damages owed to Class Members pursuant to Plaintiff's applicable EFTA claims;

e. Treble damages pursuant to the EFTA, 15 U.S.C. § 1693(f);

f. Statutory damages pursuant to the EFTA, 15 U.S.C. § 1693(m);

g. Attorneys' fees pursuant to the EFTA, 15 U.S.C. § 1693(m);

h. Costs of litigation pursuant to the EFTA, 15 U.S.C. § 1693(m);

i. Pre-judgment interest pursuant to federal law;

j. Post-judgment interest pursuant to 28 U.S.C. § 1961(a); and

k. Any other relief the Court deems proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby respectfully demands a trial by jury in this matter.

Dated: October 27, 2021                    LAW OFFICE OF MATTHEW D. CARLSON

                                           By: /S/ Matthew D. Carlson
                                               Matthew D. Carlson
                                               Attorney for Plaintiff

# EXHIBIT A

----- Forwarded Message -----
**From:** Coinbase Support <help@coinbase.com>
**To:** █████████████████████
**Sent:** Tuesday, September 28, 2021, 01:53:01 PM EDT
**Subject:** Case #07622155 - Unauthorized Access to Your Coinbase Account

*Please read this entire email. It contains important information about the security of your Coinbase account.*

Dear Jonathan M:

Privacy, security, and transparency are central to the future of finance that we are building at Coinbase. That is why we are writing to inform you about an unauthorized third party gaining access to your Coinbase account and what we are doing to help you manage this.

**What happened?**
Unfortunately, between March and May 20, 2021, you were a victim of a third-party campaign to gain unauthorized access to the accounts of Coinbase customers and move customer funds off the Coinbase platform. At least 6,000 Coinbase customers had funds removed from their accounts, including you.

In order to access your Coinbase account, these third parties first needed prior knowledge of the email address, password, and phone number associated with your Coinbase account, as well as access to your personal email inbox. While we are not able to determine conclusively how these third parties gained access to this information, this type of campaign typically involves phishing attacks or other social engineering techniques to trick a victim into unknowingly disclosing login credentials to a bad actor. We have not found any evidence that these third parties obtained this information from Coinbase itself.

Even with the information described above, additional authentication is required in order to access your Coinbase account. However, in this incident, for customers who use SMS texts for two-factor authentication, the third party took advantage of a flaw in Coinbase's SMS Account Recovery process in order to receive an SMS two-factor authentication token and gain access to their accounts.

Once in your account, the third party was able to transfer your funds to crypto wallets unassociated with Coinbase.

**What is Coinbase doing to help you?**
As soon as Coinbase learned of this issue, we updated our SMS Account Recovery protocols to prevent any further bypassing of that authentication process.

We will be depositing funds into your account equal to the value of the currency improperly removed from your account at the time of the incident. Some customers have already been reimbursed -- we will ensure all customers affected receive the full value of what you lost. You should see this reflected in your account no later than today.

We are setting up a dedicated phone support line for our customers who have been impacted by this at 1 (844) 613-1499. These representatives are aware of this incident and can answer additional questions you may have. This phone support line is available for questions and support related to this incident only -- other general inquiries should be directed to https://help.coinbase.com/en/contact-us.

We will be providing free credit monitoring to affected customers who are interested and if available in

your country of residence. We will be sharing information about how to obtain that service in a separate communication shortly.

Coinbase has also been working closely with law enforcement to support its investigation into the individuals behind this incident. Coinbase's internal investigation into this incident is ongoing.

**What personal information was exposed in this incident?**
The third party who accessed your Coinbase account would have been able to view the following information, depending on what information you have in your account: your full name, email address, home address, date of birth, IP addresses for account activity, transaction history, account holdings, and balance.

In addition, we have determined that the unauthorized third parties generated a private API key that would have allowed them to make transactions with your account without logging in. We have terminated that private API key to prevent future unauthorized transactions.

The third party who accessed your account may have changed the email, phone number, or other information associated with your account. We are working to restore any changed emails or phone numbers to their original state prior to the unauthorized activity.

**Next steps.**
We strongly encourage our customers who currently use SMS-based two-factor authentication to use an even stronger method of securing their Coinbase accounts, such as time-based one-time password (TOTP) or a hardware security key. You can learn more here about how to secure your account with these security measures.

We also strongly encourage you to change the password on your Coinbase account to a new, strong and unique password that you do not use on any other site. Because the third parties needed access to your personal email account as part of this incident, we strongly encourage you to change your password in the same way for your email account and for any other online accounts where you use a similar password.

To complete the password reset process for your Coinbase online account from the coinbase.com site, you may select "Sign In", then select the "Forgot password?" option and follow the prompts. If you need assistance, please visit our help page:
https://help.coinbase.com/en/coinbase/managing-my-account/get-back-into-my-account/reset-my-password.

We encourage you to monitor your personal accounts and free credit reports for any suspicious activity, consistent with best practices for the next 12-24 months. Incidents of suspected identity theft can and should be reported to law enforcement and government agencies, including the Federal Trade Commission (FTC):

Federal Trade Commission Consumer Response Center
600 Pennsylvania Avenue, NW Washington, DC 20580
(877) IDTHEFT (438-4338)
http://www.ftc.gov/idtheft/

New York residents can also consider placing a Security Freeze on their credit reports. A Security Freeze prevents most potential creditors from viewing your credit reports and therefore, further restricts the opening of unauthorized accounts. For more information on placing a security freeze on your credit reports, please go to the New York Department of State Division of Consumer Protection website at https://dos.nysits.acsitefactory.com/consumer-protection. New York residents may also contact the New York State Attorney General for more information on identity theft at http://www.ag.ny.gov/home.html.

You may also contact one of the three major credit bureaus listed below and request that a fraud alert or credit freeze be placed on your credit file. As noted above, we will be following up with you to provide an offer of free credit monitoring with one of these services if it is available in your country of residence.

|  |  |  |
|---|---|---|
| Equifax | Experian | TransUnionCorp |
| P.O. Box 1058 | P.O. Box 2002 | P.O. Box 1000 |
| Atlanta, GA 303 | Allen, TX 75013-20 | Chester, PA 19022 |
| 800-525-62 | 888-397-3742 | 800-680-7289 |
| www.equifax.com | www.experian.com | www.transunion.com |

\* \* \*

We recognize that the trust you place in Coinbase is precious and we will continuously work to uphold the highest standards to maintain that trust. Please be assured that we will continue to aggressively pursue bad actors and monitor our products to ensure the highest standards of security are met. If you need additional assistance with your account, please don't hesitate to reply to this support case.

Sincerely,
The Coinbase Team

