Matthew D. Carlson (State Bar No. 273242)
mdcarlson@mdcarlsonlaw.com
LAW OFFICE OF MATTHEW D. CARLSON
3959 N. Buffalo Road, Suite 29
Orchard Park, NY 14127
Telephone: (716) 242-1234

Attorney for Plaintiff ABRAHAM BIELSKI

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ABRAHAM BIELSKI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE, INC.<br><br>Defendant. | **Case No.: 3:21-cv-07478-WHA**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Abraham Bielski ("Plaintiff"), by and through his attorney, brings this nationwide class action against Defendant Coinbase, Inc. ("Coinbase") pursuant to the Electronic Funds Transfer Act, 15 USC § 1693 *et seq.* ("EFTA") and 12 C.F.R. §§ 1005.1–1005.20 ("Regulation E" of the EFTA).

## NATURE OF THE ACTION

1. Coinbase is a wholly-owned subsidiary of publicly-traded entity Coinbase Global, Inc., in the business of, *inter alia*, operating an exchange on which Coinbase users can buy and sell various cryptocurrencies and fiat currencies using their Coinbase accounts, or electronic "wallets," which are typically funded and de-funded via electronic transfers to and from Coinbase users' banks.

2. As the cryptocurrency market has increased in popularity and participation, Coinbase users have increasingly become the target of hackers who have breached Coinbase security and made unauthorized transfers of funds – whether in the form of cryptocurrency or fiat currency – from Coinbase users' accounts to the hackers' electronic wallets.[1]

3. In response to widespread instances of unauthorized electronic fund transfers on the Coinbase exchange, Coinbase has done nothing for a vast number of Coinbase users, including Plaintiff.[2] More specifically, Coinbase – a "financial institution" as defined by the EFTA – has

---

[1] The owner of an electronic wallet can, for example, use cryptocurrency directly to pay for goods or services from vendors who accept payment in cryptocurrency, or they can trade the cryptocurrency on an exchange (like Coinbase) for fiat currency.

[2] Four days after this case was originally filed, Coinbase apparently refunded approximately 6,000 Coinbase users in the amount of the value of assets stolen from their accounts, valued at the time said assets were stolen. *See* First Amended Complaint, Exh. 1. For these users, Coinbase has acknowledged that the thefts from their accounts were a result of "third parties [who] took advantage of a flaw in Coinbase's SMS Account Recovery Process" and Coinbase apparently issued the refunds in response to its culpability. *Id.* These users are nonetheless included in the class definitions, as they would still be able to seek under the EFTA any unpaid compensatory damages (*e.g.*, the value of asset appreciation up to the time refunds were issued), as well as treble damages, statutory damages, attorneys' fees, costs, and interest. *See* 15 U.S.C. § 1693m(e) (safe harbor applies only to complete remedial action taken before an EFTA action is filed); *see also Cobb v. PayLease LLC*, 34 F.Supp.3d 976, 985 (D.Minn.,2014).

failed to undertake its responsibilities to remedy unauthorized electronic fund transfers under the EFTA and Regulation E by, for example, failing to timely and in good faith investigate fraudulent transfers, and failing to timely credit and/or provisionally recredit, or credit and/or provisionally recredit at all, users' accounts pending investigation. Coinbase users have repeatedly implored Coinbase to help them rectify the unauthorized transfers from their accounts, but Coinbase has routinely and repeatedly effectively ignored such requests, instead relying on automated responses that have not specifically addressed Coinbase users' concerns and have not provided timely, meaningful customer service. For many months, and continuing today, Coinbase has largely turned a blind eye to the systemic breaches of security on its exchange, leaving affected Coinbase users without recourse, short of litigation, to correct these issues. Indeed, a CNBC article titled "Coinbase slammed for what users say is terrible customer service after hackers drain their accounts" documents users' experiences with Coinbase, and specifically regarding unauthorized transfers of funds.[3]

4. Moreover, Coinbase has failed to comply with the EFTA and Regulation E by failing to timely provide affected Coinbase users with information concerning the status of the unauthorized electronic transfers from their accounts upon request, and has failed to comply with Regulation E by failing to provide all Coinbase users with initial disclosures required by Regulation E.

5. Accordingly, Plaintiff seeks, on behalf of all Class Members (as defined below), compensatory damages, treble damages, statutory damages, attorneys' fees, costs of suit, interest, and any other relief the Court deems appropriate.

## JURISDICTION

6. This Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this action is brought pursuant to the Electronic Funds Transfer Act of

---

[3]   *See* https://www.cnbc.com/2021/08/24/coinbase-slammed-for-terrible-customer-service-after-hackers-drain-user-accounts.html

1978, 15 U.S.C. § 1693, *et seq.*

7. The Court also has jurisdiction over the action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there exists minimal diversity between Class Members and one or more Defendant and because the amount in controversy exceeds $5,000,000, exclusive of interests and costs.

## VENUE

8. This Court is the proper venue for this matter pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Coinbase has substantial and systematic contacts in this District as alleged in further detail below.

9. Assignment is proper to the San Francisco or Oakland Division of the Northern District of California under Civil L.R. 3-2(c) and (d) because a substantial part of the events or omissions that gave rise to Plaintiff's claims occurred in San Francisco County.

## THE PARTIES

10. Plaintiff Bielski is a citizen of Florida, residing in Duval County.

11. Coinbase is a Delaware company in the business of, *inter alia*, operating cryptocurrency exchanges and other related businesses around the world via its website and cellular phone application. While Coinbase claims to have no physical headquarters, it has its principal place of business in San Francisco, California, maintains its executive offices in San Francisco, California, is registered with the Secretary of State of California, has an agent for service of process in California, and, on information and belief, pays taxes to the State of California.

## BACKGROUND

12. In May 2021, Plaintiff opened an account with Coinbase for the purpose of buying and selling cryptocurrencies for his personal use.

13. On September 8, 2021, Plaintiff realized that an unauthorized electronic transfer had been made from his Coinbase account to an unknown third party. Specifically, the third party electronically transferred USD 31,0309.06 out of Plaintiff's account. Plaintiff immediately

notified Coinbase customer service of the unauthorized transfer, but Coinbase customer service did not make any good faith efforts to engage with Plaintiff about his dispute or otherwise attempt to resolve the dispute, one way or another, in a good faith manner.

14. Plaintiff has not been refunded any of his money, and Plaintiff is informed and believes that neither he nor any other Class Member (as defined herein) have received the full relief sought in this action.

\*\*\*

**FIRST CLAIM**
**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**15 U.S.C. § 1693 *et seq.***
**On Behalf of all Class Members against Coinbase**

15. Plaintiff, on behalf of himself and all other Class Members, as defined below, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

**A. Legal Framework of the EFTA**

16. The EFTA and its corresponding regulations implemented by the Consumer Financial Protection Bureau ("CFPB"), 12 C.F.R. § 1005.1, *et seq.* were designed with the "primary objective" of "the provision of individual consumer rights." 15 U.S.C. § 1693; 12 C.F.R. § 1005.1(b) (the "primary objective of the act and this part is the protection of individual consumers engaging in electronic fund transfers and remittance transfers.").

17. Relevant definitions:

   a. A "financial institution" includes banks and credit unions, as well as "any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9).  A "person" includes "a natural person or an organization, including a corporation…" 12 CFR § 1005.2(j).

   b. An "account" includes any consumer asset account held directly or indirectly by a financial institution and established primarily for personal, family, or household purposes. 15 U.S.C. § 1693a(2); *see also* 12 CFR § 1005.2(j).

c. A "consumer" is defined as a "natural person." 15 U.S.C. § 1693a(6).

d. An "error" includes, *inter alia*, an "unauthorized electronic fund transfer." 15 § 1693f(f)(1); 12 C.F.R. § 1005.11(a)(vii).

e. An "unauthorized electronic fund transfer" is defined as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693(a)(12); *see also* 15 C.F.R. § 1005(m). The CFBP (as well as the Board of Governors of the Federal Reserve System) have specifically stated that "[a]n unauthorized [electronic funds transfer] includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery." *See* 12 C.F.R. § 205, Supp. I at 2(m) (Board of Governors' Official Interpretation of § 205.2(m)); 12 C.F.R. § 1005, Supp. I at 2(m) (CFPB's Official Interpretation of § 1005.2(m)); *see also Green v. Capital One, N.A.*, 2021 WL 3810750, at *3 (S.D.N.Y., 2021).[4]

f. An "electronic fund transfer" includes any transfer of funds initiated through a computer. While the definition does not include any transfer of funds the primary purpose of which is the purchase or sale of a security or commodity, if the security or commodity is regulated by the Securities and Exchange Commission ("SEC") or the Commodity Futures Trading Commission ("CFTC") or is purchased or sole through a broker-dealer regulated by the SEC or through a future commission merchant regulated by the CFTC, the "primary purpose" of the transfers of funds at issue in this action is not the purchase or sale of a security or commodity, but rather outright

---

[4] The definition of "unauthorized electronic fund transfer" under § 1693(a)(12) and § 1005(m) excludes any electronic fund transfer initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer. The CFPB and Board of Governors have confirmed that this exclusion does not encompass situations where a consumer technically furnishes to a third party his or her means of access to an account, but due to fraud, threat, or force.

theft. Indeed, CFPB has made clear that this "Securities Exemption" applies to, for example, a transfer initiated by a telephone order to a stockbroker to buy or sell securities or to exercise a margin call, but *not* a transfer involving an access device that accesses a securities or commodities account that a consumer uses for purchasing goods or services or for obtaining cash (*i.e.*, a Coinbase account). 12 C.F.R. § 1005, Supp. I at 3(c)(4).

18. The error resolution subpart of the EFTA provides, in relevant part, that if a financial institution, within sixty days after having transmitted to a consumer notice of an electronic funds transfer, receives oral or written notice in which the consumer (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer; (2) indicates the consumer's belief that the documentation, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief that an error has occurred, the financial institution must investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. 15 U.S. Code § 1693f(a)(3); *see also* 12 C.F.R § 205.11; *see also* Supp. I to § 205 at 11(b)(1) (a notice of error is effective so long as the financial institution is able to identify the account in question); 12 C.F.R. § 1005, Supp. I at 11(b)(1)(1) (same). Notice may be constructive "when the institution becomes aware of circumstances leading to the reasonable belief that an unauthorized transfer to or from the consumer's account has been or may be made." 12 C.F.R. 1005.6(b)(5)(iii).

19. If the financial institution determines that an error did occur, it has the option to either (1) timely correct the error, including the crediting of interest where applicable; or (2) timely provisionally recredit the consumer's account for the amount alleged to be in error pending the conclusion of the institution's investigation of the error within ten business days of being notified of the error. 15 U.S. Code § 1693f(c); *see also* 12 C.F.R. § 1005.11. In no circumstance can an investigation be concluded more than forty-five days after receipt of the notice of error, and during the pendency of the investigation, the consumer must be allowed full use of funds

provisionally recredited. *Id.*

20. Where a financial institution (1) fails to provisionally recredit a consumer's account within the ten-day period specified above, and the financial institution (a) did not make a good faith investigation of the alleged error, or (b) did not have a reasonable basis for believing that the consumer's account was not in error; or (2) knowingly and willfully concludes that a consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation, then the consumer shall be entitled to treble damages determined under section 1693m(a)(1).

21. The consumer may be held liable for an unauthorized electronic fund transfer where a financial institution provides the required notices under 15 U.S.C. § 1693c and 12 C.F.R. § 1005.7(b). 15 U.S.C. § 1693g; 12 C.F.R. § 1005.6. Liability of the consumer, if applicable, is limited to $50 if the consumer notifies the institution within two business days after learning of the loss, or $500 if the consumer fails to notify the institution within two business days after learning of the loss. *Id.*

**B.   Factual Allegations**

22. Coinbase is a "financial institution" as defined by the EFTA because it is a corporation that holds accounts belonging to consumers, including Class Members' accounts. As stated in Coinbase's User Agreement, Coinbase provides users with (a) "a hosted Digital Currency wallet(s) for holding Digital Currencies ("Digital Currency Wallet"), and (b) a hosted US Dollars ("USD") wallet for holding USD (a "USD Wallet").

23. Class Members are "consumers" as defined by the EFTA because they are natural persons.

24. Class Members' accounts are "accounts" as defined by the EFTA and/or Regulation E because they are asset accounts held directly by Coinbase and established primarily for personal, family, or household purposes. Class Members' accounts are used for such personal purposes – *i.e.*, intended to earn income from appreciating assets – and not for business purposes.

25. The electronic fund transfers at issue have been "unauthorized electronic fund transfers" because they have been initiated by a person other than Class Members by fraud, without actual authority to initiate such transfers, and from which Class Members have received no benefit. The primary purpose of such transfers have not been the purchase or sale of security or commodity, but rather for the purpose of stealing securities or commodities.

26. As described herein, Plaintiff and Class Members have provided timely actual and/or constructive notice to Coinbase of the unauthorized electronic transfers from their accounts. Indeed, Coinbase knew or should have known of the repeated and widespread breaches of its security and subsequent theft of funds, as well as repeated and widespread requests for assistance from numerous Class Members, such that it should have been aware of and prepared to handle inquiries concerning unauthorized electronic transfers from Class Members' accounts, and should have taken steps to monitor its users' accounts for unauthorized transfers.

27. However, Coinbase has failed to timely and in good faith investigate the unauthorized electronic transfers from Class Members' accounts as required by 15 U.S. Code § 1693f(a)(3) and 15 U.S. Code § 1693f(d) by failing to conduct a timely and reasonable review of its own records. *See* 12 C.F.R. § 205.11(c)(4); *see also* Supp. I to § 205 at 11(c)(4)–5. Indeed, adequate and timely investigations would have easily led Coinbase to the conclusion that fraud had occurred given that Class Members have not authorized the transfers at issue, that the fraudulent transfers have been made to accounts other than those Class Members used to fund their Coinbase accounts, and that these fraudulent transfers have been widely reported as a common issue on the Coinbase exchange. Accordingly, Class Members are entitled to compensatory damages, attorneys' fees, and costs for Coinbase's inadequate investigation pursuant to 15 U.S.C. § 1693m(a).

28. Further, Coinbase has failed to timely correct the "errors" (as noted above, statutorily defined to include "unauthorized electronic fund transfers"), or to correct the "errors" at all, in Class Members' accounts by timely crediting or provisionally recrediting Class Members' accounts, or crediting or provisionally recrediting Class Members' accounts at all, after they had

been breached and drained of funds. 15 U.S. Code § 1693f(b)-(c). This failure, separately, results in compensatory damages owed to Class Members pursuant to 15 U.S.C. § 1693m(a). Further, because Coinbase has never provided disclosures to Class Members that were compliant with 12 C.F.R. § 1005.7(b), Class Members have no liability for the unauthorized electronic fund transfers under 15 U.S.C. § 1693g and/or 12 C.F.R. § 1005.6.

29.     Additionally, because Coinbase has not timely provisionally recredited, or provisionally recredited at all, Class Members' accounts, and because Coinbase has failed to conduct timely, good faith investigations into the unauthorized transactions that Class Members have actually or constructively reported by, for example, failing to provide Class Members reasonable access to timely and effective customer service or otherwise engaging in any sort of good faith investigation of unauthorized electronic fund transfers, Coinbase is liable for treble damages under the EFTA.

30.     Further, Coinbase is also liable for treble damages under the EFTA because it has not had a reasonable basis for believing Class Members' accounts were not in "error." Instead, Coinbase has failed to use the resources and procedures necessary to timely resolve, or resolve at all, the fraud that has been occurring on Class Members' accounts, thus demonstrating that Coinbase has been unable or unwilling to timely form, or form at all, a reasonable basis for believing Class Members' accounts were not in "error." Moreover, to the extent Coinbase has concluded that Class Members' accounts were not in "error," Coinbase has knowingly and willfully reached that conclusion when that conclusion could not reasonably have been drawn from the evidence available to Coinbase at the time of any investigation.

31.     Plaintiff and Class members are therefore entitled to compensatory damages, attorneys' fees, and costs under 15 U.S.C. § 1693m, as well as treble damages under 15 U.S.C. § 1693f(e), on this claim.

//

//

//

## SECOND CLAIM
### VIOLATION OF EFTA AND REGULATION E CUSTOMER SERVICE PROVISIONS
### 15 U.S.C. § 1693f(f)(6); 12 C.F.R. § 1005.11(a)(7)
### On Behalf of all Class Members against Coinbase

32. Plaintiff, on behalf of himself and all other Class Members, as defined below, realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

33. The EFTA, 15 U.S.C. § 1693f(f)(6) and Regulation E, 12 C.F.R. § 1005.11(a)(7), (c) [5] require financial institutions to address "a consumer's request for additional information or clarification concerning an electronic fund transfer" within ten business days of receiving notice of error, or within 45 calendar days if the financial institution provisionally recredits the consumer's account, with interest where applicable, within 10 business days of receiving the notice of error.

34. As alleged above, Class Members are "consumers" within the meaning of the EFTA and Regulation E.

35. Coinbase, a "financial institution" as alleged herein, has violated the EFTA and Regulation E by failing to timely provide information or clarification concerning electronic fund transfers, including requests Class Members made to determine whether there were unauthorized electronic transfers from their accounts. *See* 15 U.S.C. § 1693f(f)(6); 12 C.F.R. § 1005.11.

36. Accordingly, Coinbase is liable to Class Members for statutory damages, attorneys' fees, and costs for this claim pursuant to 15 U.S.C § 1693m.

## THIRD CLAIM
### VIOLATION OF REGULATION E NOTICE REQUIREMENTS
### 15 U.S.C. § 1693c; 12 C.F.R. § 1005.7
### On Behalf of all Class Members against Coinbase

37. Plaintiff, on behalf of himself and all other Class Members, as defined below, realleges

---
[5] Consumers have a private right of action for violations of Regulation E. *See Lussoro v. Ocean Financial Federal Credit Union*, 456 F.Supp.3d 474, 492 (E.D.N.Y., 2020).

and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein.

38.     15 U.S.C § 1693c and Regulation E, 12 C.F.R. § 1005.7, requires all financial institutions to make the disclosures set forth in § 1005.7(b) before the first electronic fund transfer is made involving a consumer's account.

39.     Coinbase, a "financial institution" as alleged herein, has violated Regulation E by failing to provide adequate initial disclosures to Class Members including, as applicable: (1) a summary of Class Members' liability, under 12 CFR § 1005.6 or under state or other applicable law or agreement, for unauthorized electronic fund transfers; (2) the telephone number and address of the person or office to be notified when a Class Member believes that an unauthorized electronic fund transfer has been or may be made; (3) Coinbase's business days; (4) the type of electronic fund transfers that Class Members may make and any limitations on the frequency and dollar amount of transfers; (5) any fees imposed by Coinbase for electronic fund transfers or for the right to make transfers; (6) a summary of Class Members' right to receipts and periodic statements, as provided in 12 CFR § 1005.9 of this part, and notices regarding preauthorized transfers as provided in 12 CFR § 1005.10(a) and (d); (7) a summary of Class Members' right to stop payment of a preauthorized electronic fund transfer and the procedure for placing a stop-payment order, as provided in 12 CFR § 1005.10(c); (8) a summary of Coinbase's liability to Class Members under section 910 of the Act for failure to make or to stop certain transfers; (9) the circumstances under which, in the ordinary course of business, Coinbase may provide information concerning Class Members' account to third parties; (10) A notice that is substantially similar to Model Form A-3 as set out in appendix A of 12 CFR 1005.1, *et seq.*, concerning error resolution; and (11) a notice that a fee may be imposed by an automated teller machine operator as defined in 12 CFR § 1005.16(a), when a Class Member initiates an electronic fund transfer or makes a balance inquiry, and by any network used to complete the transaction.

40.     As a result of Coinbase's violation of the notice requirements of 15 U.S.C. § 1693c and

Regulation E, Class Members are entitled to statutory damages, attorneys' fees, and costs for this claim pursuant to 15 U.S.C. § 1693m(a).

\*\*\*

## CLASS ACTION ALLEGATIONS

41. Plaintiff's first claim for compensatory and treble damages and related remedies under the EFTA is brought on behalf of himself and all others similarly situated. This putative class is defined as:

> "All Coinbase users who have had funds, including but not necessarily limited to cryptocurrency and/or fiat currency, stolen from them as a result of unauthorized electronic fund transfers from their Coinbase account within the one-year period immediately preceding the filing of this action."

42. Plaintiff's second claim for statutory damages and related remedies pursuant to Coinbase's violation of the EFTA's "customer service" provision, 15 U.S.C. § 1693f(e)(6) and Regulation E, 12 C.F.R. § 1005.11(a)(vii), is brought on behalf of himself and all others similarly situated. This putative class is also defined as:

> "All Coinbase users who have had funds, including but not necessarily limited to cryptocurrency and/or fiat currency, stolen from them as a result of unauthorized electronic fund transfers from their Coinbase account within the one-year period immediately preceding the filing of this action."

43. Plaintiff's third claim for statutory damages and related remedies pursuant to Coinbase's violation of the disclosure provisions of Regulation E, 12 C.F.R. § 1005.7, is brought on behalf of himself and all others similarly situated. This putative class is defined as:

> "All Coinbase users within the one-year period immediately preceding the filing of this action."

**A.     ASCERTAINABILITY**

44. Plaintiff is informed and believes that the identities of Class Members are ascertainable through Coinbase's records.

**B.     NUMEROSITY**

45. Plaintiff is informed and believes that there are thousands of Class Members, and it would be impracticable to bring them all before the Court.

### C.  COMMONALITY

46. Questions of law and fact common to Class Members include, but are not necessarily limited to: (1) whether Coinbase has complied with the investigation and error resolution requirements of the EFTA and/or Regulation E in connection with the unauthorized electronic transfer of funds from Class Members' accounts; (2) whether Coinbase has made timely, good faith investigations of unauthorized electronic fund transfers, or has not had a reasonable basis for believing Class Members' accounts were not in error, or has knowingly and willfully concluded that Class Members' account were not in error when such conclusion could not reasonably have been drawn from the evidence available to Coinbase at the time of its investigation, if any; (3) whether Coinbase has timely complied with the customer service provisions of the EFTA and/or regulation E in connection with the unauthorized electronic transfer of funds from Class Members' accounts; and (4) whether Coinbase has complied with the disclosure requirements of the EFTA and/or Regulation E.

47. Issues common to the class can be resolved with classwide evidence, including, for example, evidence that (1) Coinbase has not timely, and in good faith, investigated and/or credited or provisionally credited any Class Members' compromised accounts; (2) that Coinbase has not taken timely, good faith steps to investigate the unauthorized electronic fund transfers or has not taken timely, good faith steps to form a reasonable basis for believing Class Members accounts were not in error; (3) that Coinbase has not provided timely, good faith customer service to Class Members; and (4) that Coinbase has not provided adequate Regulation E disclosures to any Class Members.

### D.  TYPICALITY

48. Plaintiff's claims are typical, if not identical, to the claims that could be asserted by all Class Members, as Plaintiff's statutory claims arise from Coinbase's practices applicable to all Class Members as described herein.

### E.  ADEQUACY

49. Plaintiff is a member of all proposed Classes and will adequately represent the interests

Class Members because there are no conflicts between Plaintiff and any Class Members and because Plaintiff's counsel has the experience and skill to zealously advocate for the interests of Class Members.

**F.     PREDOMINANCE**

50.    Common issues predominate over individualized inquiries in this action because Coinbase's liability under the EFTA, Regulation E, can be established as to all Class Members as discussed herein.

**G.     SUPERIORITY**

51.    There are substantial benefits to proceeding as a class action that render proceeding as a class superior to any alternatives, including the fact that it will provide a realistic means for Class Members to recover damages; it would be substantially less burdensome on the courts and the parties than numerous individual proceedings; many Class Members may be unaware that they have legal recourse for the conduct alleged herein; and because issues common to Class Members can be effectively managed in a single proceeding.

\*\*\*

**PRAYER FOR RELIEF**

Plaintiff prays for relief as follows:

a.    Certification of this action as a class action;

b.    Designation of Plaintiff as representative of the putative Classes;

c.    Designation of Plaintiff's counsel as counsel for the putative Classes;

d.    Compensatory damages pursuant to the EFTA, 15 U.S.C. § 1693(m);

e.    Treble damages pursuant to the EFTA, 15 U.S.C. § 1693(f);

f.    Statutory damages pursuant to the EFTA, 15 U.S.C. § 1693(m);

g.    Attorneys' fees pursuant to the EFTA, 15 U.S.C. § 1693(m);

h.    Costs of litigation pursuant to the EFTA, 15 U.S.C. § 1693(m);

i.    Pre-judgment interest pursuant to federal law;

j.    Post-judgment interest pursuant to 28 U.S.C. § 1961(a); and

k.  Any other relief the Court deems proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby respectfully demands a trial by jury in this matter.

Dated: November 19, 2021						LAW OFFICE OF MATTHEW D. CARLSON


						By:  /S/ Matthew D. Carlson
							Matthew D. Carlson
							Attorney for Plaintiff