KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
W. HAMILTON JORDAN - # 295004
wjordan@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant COINBASE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| ABRAHAM BIELSKI, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE, INC.<br><br>Defendant. | Case No. 3:21-cv-07478-WHA<br><br>**COINBASE, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY**<br><br>Date:        March 10, 2022<br>Time:       8:00 a.m.<br>Dept.:      Courtroom 12 – 19th Floor<br>Judge:     Hon. William Alsup<br><br>Date Filed: September 24, 2021<br><br>Trial Date: None set |
|---|---|

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT......................................................................................................................... 2

    A. The delegation provision is not unconscionable. .................................................... 2

        1. Even in a contract of adhesion, a delegation provision does not give rise to anything more than a low level of procedural unconscionability. ............................................................................................... 2

        2. The delegation provision is not substantively unconscionable. ................. 5

            a. The arbitration and delegation provisions are bilateral. ................. 5

            b. The pre-arbitration dispute procedures are reasonable and do not provide Coinbase a "free peek" at users' claims. ..................... 8

        3. Even if the Court found part of the agreement substantively unconscionable, the relevant provision could be severed. ........................ 11

    B. Mr. Bielski cannot avoid arbitration by preventing the required pre-arbitration procedures from occurring. ................................................................ 12

    C. The Arbitration Agreement is enforceable for the same reasons that the delegation provision is enforceable. ....................................................................... 13

    D. Whether the class-action waiver would "survive" on its own is not a question before the Court in this Motion.. .............................................................. 14

III. CONCLUSION.................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Baker v. Acad. of Art Univ. Found.*,
   No. 17-CV-03444-JSC, 2017 WL 4418973 (N.D. Cal. Oct. 5, 2017) ................................... 3

*Britt v. ContextLogic, Inc.*,
   No. 20-cv-04333-WHA, 2021 WL 1338553 (N.D. Cal. Apr. 9, 2021) ............................... 14

*Bugarin v. All Nippon Airways Co.*,
   513 F. Supp. 3d 1172 (N.D. Cal. 2021) ....................................................................... 5, 12

*Darrah v. Friendly Ice Cream Corp.*,
   328 F. Supp. 2d 319 (N.D.N.Y. 2004) ............................................................................ 13

*Dunham v. Env't Chemical Corp.*,
   No. C 06-03389 JSW, 2006 WL 2374703 (N.D. Cal. Aug. 16, 2006) ............................ 6, 7

*Durruthy v. Charter Commc'ns, LLC*,
   No. 20-CV-1374-W-MSB, 2020 WL 6871048 (S.D. Cal. Nov. 23, 2020) ........................... 8

*Ingle v. Cir. City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003) ....................................................................................... 5, 8

*Merkin v. Vonage Am. Inc.*,
   2014 WL 457942 (C.D. Cal. 2014) ..................................................................................... 4

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ............................................................................................ 2

*Monex Dep. Co. v. Gilliam*,
   671 F. Supp. 2d 1137 (C.D. Cal. 2009) .............................................................................. 3

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) .............................................................................. 7, 8, 9, 10

*Poublon v. C.H. Robinson Company*,
   846 F.3d 1251 (9th Cir. 2017) ................................................................................. passim

*Quevedo v. Macy's, Inc.*,
   798 F. Supp. 2d 1122 (C.D. Cal. 2011) .............................................................................. 8

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ............................................................................................................ 2

*Stanfield v. Tawkify, Inc.*,
   517 F. Supp. 3d 1002 (N.D. Cal. 2021) .............................................................................. 7

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ......................................................................................... 4, 5, 10

*Vine v. PLS Fin. Servs., Inc.*,
  807 F. App'x 320 (5th Cir. 2020) ......................................................................................... 14, 15

*White v. Mills*,
  No. CV 17-1775, 2021 WL 6750766 (D.N.J. Dec. 29, 2021) ............................................. 15

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) ......................................................................................... 3

**State Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) ..................................................................................... 5, 10, 11, 12

*Bakersfield Coll. v. Cal. Cmty. Coll. Athletic Assn.*,
  41 Cal. App. 5th 753 (2019) ................................................................................................. 7

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016) ....................................................................................................... 5

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
  226 Cal. App. 4th 74 (2014) ................................................................................................. 10

*Carver v. JFK Mem'l Hosp., Inc.*,
  No. E071782, 2020 WL 6269268 (Cal. Ct. App. Oct. 26, 2020) ..................................... 10, 11

*City of Hollister v. Monterey Ins. Co.*,
  165 Cal. App. 4th 455 (2008), *as modified on denial of reh'g* (Aug. 28, 2008) ............... 12, 13

*Graham v. Scissor-Tail, Inc.*,
  28 Cal. 3d 807 (1981) ....................................................................................................... 3

*Kinney v. United HealthCare Servs., Inc.*,
  70 Cal. App. 4th 1322 (1999) ............................................................................................ 7

*Morris v. Redwood Empire Bancorp*,
  128 Cal. App. 4th 1305 (2005) ............................................................................................ 3

*Nyulassy v. Lockheed Martin Corp.*,
  120 Cal. App. 4th 1267 (2004) ........................................................................................ 8, 10

*O'Hare v. Mun. Res. Consultants*,
  107 Cal. App. 4th 267 (2003) ............................................................................................ 6, 7

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) ....................................................................................................... 2, 3

*Serafin v. Balco Properties Ltd., LLC,*
  235 Cal. App. 4th 165 (2015) ................................................................................................ 3, 7

*Serpa v. California Sur. Investigations, Inc.,*
  215 Cal. App. 4th 695 (2013) ................................................................................................ 4, 8

*Tiri v. Lucky Chances, Inc.,*
  226 Cal. App. 4th 231 (2014) ................................................................................................... 2

**Federal Statutes**

9 U.S.C. § 2 ..................................................................................................................................... 1

I.      INTRODUCTION

Mr. Bielski does not dispute that he agreed to be bound by the Coinbase User Agreement ("UA").[1] He does not dispute that the UA includes clear arbitration and delegation provisions, under which the parties expressly agreed to resolve any and all disputes—including disputes about arbitrability—in binding arbitration. And he certainly does not dispute that the claims he pursues here fall squarely within the scope of that arbitration agreement.

Instead, Mr. Bielski makes just two arguments, neither of which should stop the Court from compelling arbitration as required by the UA. First, he claims that the arbitration agreement is unconscionable and unenforceable because, he contends, it is "impossible for a dispute Coinbase might have against a user to trigger the obligation to arbitrate that dispute." Opp. at 1. But that is not true. The UA is clear: "**you and we** agree that **any dispute** arising out of or relating to this Agreement or the Coinbase Services … **shall** be resolved through binding arbitration…." UA at § 8.3. Unlike the unilateral agreements in the cases Mr. Bielski relies on, Coinbase's UA is a bilateral agreement. It imposes on both Coinbase and its users the same obligations to arbitrate their disputes. Nothing about that is unconscionable.

Second, Mr. Bielski argues that Coinbase cannot compel him to arbitrate this claim because a condition precedent—Mr. Bielski attempting to resolve the dispute through Coinbase's Formal Complaint Process—never occurred. But Mr. Bielski readily admits that this problem is one of his own making: he chose not to submit a Formal Complaint to Coinbase. *See* Dkt. 29-1, ¶ 9. Under California law, a plaintiff cannot avoid arbitration by thwarting a condition precedent.

The FAA mandates the enforcement of arbitration agreements, including their delegation provisions, except in those rare cases where there are grounds to revoke the contract. *See* Mot. at 4–5; *see also* 9 U.S.C. § 2. This is by no means that rare case. Because Mr. Bielski concedes that *this* dispute is covered by the UA's arbitration agreement, and because he has failed to demonstrate that the UA is unconscionable, Coinbase requests that this Court stay these proceedings and compel arbitration of his claims.

---

[1] Coinbase has requested that the Court take judicial notice of the relevant User Agreement. *See* Dkt. 28 (RJN), Dkt. 28-1 (UA). Mr. Bielski does not oppose that request.

## II. ARGUMENT

Where, as here, an arbitration agreement contains a delegation provision, the delegation provision is presumed valid and must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 78 (2010) (*citing* 9 U.S.C. § 2). Mr. Bielski has failed to prove that the delegation provision is invalid. As such, it must be enforced, and any other questions about arbitrability should be resolved by an arbitrator.

### A.  The delegation provision is not unconscionable.

"There are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability." *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (2014) (citing *Rent-A-Center,* 561 U.S. at 68–70, n.1). "When considering an unconscionability challenge to a delegation provision, the court must consider only arguments specific to the delegation provision." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016).[2]

Mr. Bielski never claims that the UA's delegation clause is unclear; he argues only that it is unconscionable. Mr. Bielski bears the burden of proving **both** procedural and substantive unconscionability. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012); *Poublon v. C.H. Robinson Company*, 846 F.3d 1251, 1260 (9th Cir. 2017) ("[T]he party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable.").

He has not met, and cannot meet, that burden.

#### 1.  Even in a contract of adhesion, a delegation provision does not give rise to anything more than a low level of procedural unconscionability.

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Id*. (quoting *Pinnacle Museum*, 55 Cal. 4th at 236). "Oppression

---

[2] Unless otherwise noted, all internal marks and citations have been omitted and emphasis has been added.

occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle Museum*, 55 Cal. 4th at 247. Mr. Bielski does not allege that the delegation provision is an unfair surprise, nor could he—it is highlighted in bold print and referred to in the introductory paragraph of the UA. *See* UA at Introduction, § 8.2. He claims that the UA's delegation provision is procedurally unconscionable "to a high degree" simply because it is contained in a contract of adhesion that includes a modification provision. *See* Opp. at 11. Binding case law holds otherwise.

As the Ninth Circuit has explained, "the adhesive nature of a contract, without more, would give rise to a **low** degree of procedural unconscionability **at most**." *Poublon*, 846 F.3d at 1261–62; *see also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (adhesion creates "only a minimal degree" of procedural unconscionability); *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 179 (2015) ("[W]here the arbitration provisions presented in a contract of adhesion are highlighted for the employee, any procedural unconscionability is 'limited.'"). This rule exists for good reason: adhesion contracts are "an inevitable fact of life for all citizens—businessman and consumer alike." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817–18 (1981). And contrary to Mr. Bielski's claim that contracts of adhesion are *per se* oppressive, the Ninth Circuit recognizes that "[w]hile California courts have found that 'the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability' in a range of circumstances, the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable." *Poublon*, 846 F.3d at 1261 (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015)); *see also Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005) ("Although adhesion contracts often are procedurally oppressive, this is not always the case.").

In *Baker*, for instance, the court held that the adhesive nature of the contract was "insufficient to show unconscionability" because the plaintiff was "a consumer with options"—he was not obligated to use the defendant's services and he "failed to demonstrate any oppression beyond what is inherent in any adhesion contract." *Baker v. Acad. of Art Univ. Found.*, No. 17-CV-03444-JSC, 2017 WL 4418973, at *4 (N.D. Cal. Oct. 5, 2017); *see also Monex Dep. Co. v.*

*Gilliam*, 671 F. Supp. 2d 1137, 1144 (C.D. Cal. 2009) (adhesive agreement "not procedurally unconscionable" because "Monex investors had many reasonable and realistic market alternatives…, including the option of not investing in precious metals at all"). The same is true here. Mr. Bielski is "a consumer with options" who had a meaningful choice to use other exchanges or not to trade digital currency at all.

Next, Mr. Bielski claims that the delegation provision is unconscionable because the UA contains a unilateral modification provision, which he alleges has been "exercised thirty-seven times over a ten-year period." *See* Opp. at 11. First, a unilateral modification provision contained elsewhere in the UA does not make the delegation provision unconscionable. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016) ("[T]he unilateral modification clause does not make the arbitration provision itself unconscionable."). It is well established in California that "the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Id*. Second, to make this argument, Mr. Bielski would have to present evidence showing that Coinbase had altered the delegation provision "to the point where the current [provision] is in effect a different agreement" than the one he signed up for. *Merkin v. Vonage Am. Inc.*, 2014 WL 457942, at *7 (C.D. Cal. 2014), *rev'd and remanded on other grounds*, 639 Fed. Appx. 481 (9th Cir. 2016) (finding that the defendant's "actual and repeated modification of the TOS" modified the agreement "to the point where the current TOS is in effect a different agreement" than the one the plaintiffs signed up for"). But that argument fails because Coinbase has asked only that Mr. Bielski be held to the *exact* delegation provision he agreed to in April 2021. *See* Mot. at 3–4.

Where, as here, there is no indication of oppression or surprise, even an adhesive delegation provision "would give rise to a ***low*** degree of procedural unconscionability ***at most***." *See Poublon*, 846 F.3d at 1261–62. Thus, the UA is enforceable, and should be enforced, "unless the degree of substantive unconscionability is high." *Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013), *as modified* (Apr. 19, 2013), *as modified* (Apr. 26, 2013). As explained below, Mr. Bielski cannot make that showing.

### 2. The delegation provision is not substantively unconscionable.

Substantive unconscionability "is concerned not with 'a simple old-fashioned bad bargain' but with terms that are unreasonably favorable to the more powerful party." *Tompkins*, 840 F.3d at 1023. "Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: '*overly* harsh,' '*unduly* oppressive,' '*unreasonably* favorable.'" *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016) (emphasis in original). Substantive unconscionability turns on whether the terms of an agreement "are so one-sided as to shock the conscience." *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003). Here, Mr. Bielski fails to show that the delegation provision is substantively unconscionable, much less that it "shock[s] the conscience" or is "so one-sided" as to render it unenforceable.

#### a. The arbitration and delegation provisions are bilateral.

To be enforceable, an arbitration agreement must contain a "modicum of bilaterality." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000). Mr. Bielski claims that the arbitration provision, and the delegation provision contained therein, are "*completely* one-sided" because "disputes Coinbase might have with users … simply do not trigger the obligation to arbitrate." Opp. at 13 (emphasis in original). He is wrong. The UA's arbitration agreement is explicitly bilateral:

> If we cannot resolve the dispute through the Formal Complaint Process, ***you and we agree that any dispute arising out of or relating to this Agreement or the Coinbase Services***, including, without limitation, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation, or any other legal theory, ***shall be resolved through binding arbitration***, on an individual basis (the "Arbitration Agreement")….

*See* UA § 8.3. And the agreement's delegation provision is equally clear:

> This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. ***All such matters shall be decided by an arbitrator and not by a court or judge***.

*Id*. The UA requires both Coinbase ("we") and its users ("you") to submit "***any***" disputes—including "***all***" disputes about arbitrability—to binding arbitration *unless* they are otherwise resolved through the Formal Complaint Process.

Mr. Bielski argues that this provision is "meaningless" because only users are required to resolve their disputes through the Formal Complaint Process, and that Coinbase would thus "be free to pursue an action in court" where Mr. Bielski would not. Opp. at 14. His argument appears to be that, if Coinbase "cannot resolve [its] disputes through its Formal Complaint Process," then it would not be bound by the rest of Section 8.3. But that is wrong too. If Coinbase "were to read its own UA," as Mr. Bielski proposes, it could readily "determine how [to] proceed": if the dispute "[arose] out of or relat[ed] to" the UA or the Coinbase Services, then it "shall be resolved through binding arbitration." That is not just a "crumb of bilaterality," *see* Opp. at 14; it is a mutual obligation that applies equally to both Coinbase and its users.

The same is true of the delegation provision ("[a]ll such matters shall be decided by an arbitrator and not by a court or judge") and of the arbitration agreement as a whole. As Mr. Bielski concedes in his opposition brief:

> [N]owhere in the entire [dispute resolution procedure] does Coinbase contemplate the ***possibility*** of proceedings in court – except in a provision that states "you may elect to pursue your claim in your local small claims court rather than through arbitration so long as your matter remains in small claims court and proceeds only on an individual (non-class and non-representative) basis.

Opp. at 21.

None of the cases Mr. Bielski cites save his arguments: they all involve arbitration provisions that are quite different from the one at issue here. For instance, Mr. Bielski falsely claims that the language in *Dunham* "is materially *identical* to the language in Coinbase's DRP." *See* Opp. at 12 (emphasis in original). Not so. The terms of the *Dunham* agreement required the plaintiff-employee to arbitrate all her claims, but expressly allowed the defendant-employer "to retain the right 'to pursue any remedy available to it under the law' should *Dunham* violate the Trade Secrets Agreement, also contained in her employment agreement." *See Dunham v. Env't Chemical Corp.*, No. C 06-03389 JSW, 2006 WL 2374703 (N.D. Cal. Aug. 16, 2006), at *6. They also allowed the employer, but not the employee, to seek an injunction or other equitable relief in court. *Id*. That is why the court found that the agreement lacked bilaterality—specifically "[b]ecause the employment agreements ***reserve[d]*** ECC's right to pursue litigation…." *Id*. Similarly, the agreement in *O'Hare* required the plaintiff to arbitrate claims while explicitly

"preserving [defendant's] right to file *any* lawsuit" in court. *See O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267, 275 (2003) ("MRC, *in addition to all other rights*, shall have the right to file a lawsuit [for injunctive and equitable relief]." (emphasis and internal marks in original)). Unlike the *Dunham* and *O'Hare* agreements, the Coinbase UA contains no carve outs or exceptions for Coinbase. *See* UA § 8.3. Where, as here, "an arbitration agreement sets forth that 'any and all' disputes between the parties will be arbitrated, courts … have found the agreement to be fully mutual in scope." *Serafin*, 235 Cal. App. 4th at 182.

The same pattern emerges across all of the cases Mr. Bielski relies on.

In *Stanfield v. Tawkify*, for example, the agreement was expressly a "one-way street," providing that "[a]s a condition of using Tawkify's services, *each user* agrees that any and all disputes … shall be resolved through arbitration." *Stanfield v. Tawkify, Inc.*, 517 F. Supp. 3d 1002, 1006–07 (N.D. Cal. 2021). The court focused on that language—"the user agrees"—as "fram[ing] the arbitration obligation exclusively in terms of the *user's* obligation." *Id*. at 1007 (emphasis in original).

In *Kinney v. United*, the agreement made plain that it "does not require that [United] initiate the arbitration process in regard to any dispute." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1326 (1999). Worse, the court found that the agreement "fail[ed] to satisfy even a modicum of bilaterality" because it established numerous rules for the arbitration proceedings that were designed and intended to benefit the defendant-employer, including precluding the arbitrator "from finding that the employment relationship was other than at will." *Id*. at 1323. And the agreement in *Pokorny v. Quixtar* contained scores of unilateral provisions, including that only plaintiffs must undergo a lengthy, cumbersome mediation process where they were to present testimony and documentary evidence concerning the dispute prior to demanding arbitration, demand arbitration within two years or forfeit their claims, and be bound by a confidentiality provision. *See Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 991–93 (9th Cir. 2010).[3]

---

[3] Courts frequently look to the arbitration agreement as a whole to determine whether it has a "modicum of bilaterality" or is unfairly unilateral. For instance, in *Bakersfield Coll. v. California Cmty. Coll.*, the court found that the obligation to arbitrate disputes fell only to "a member college, a student of the member college, or employees of the college," but not to the college itself. *Bakersfield Coll. v. Cal. Cmty. Coll. Athletic Assn.*, 41 Cal. App. 5th 753, 766 (2019). But,

Here, unlike in the cases described above, the Coinbase UA unambiguously provides that both "you and we agree" to arbitrate any dispute, including "all" disputes about arbitrability. *See* UA § 8.3. The UA does not create special arbitration rules that favor Coinbase—it simply incorporates the default AAA rules for consumer-related disputes. *See id*. Mr. Bielski has failed to show that the delegation provision is unfairly unilateral, let alone "so one-sided as to shock the conscience." The arbitration agreement and delegation provision are valid and must be enforced. *See Ingle*, 328 F.3d at 1172; *Poublon*, 846 F.3d at 1261–62.

        **b.**    **The pre-arbitration dispute procedures are reasonable and do not provide Coinbase a "free peek" at users' claims.**

Next, Mr. Bielski argues that the UA's pre-arbitration complaint procedures "contribute to the substantive unconscionability of the delegation provision" and "the broader agreement to arbitrate…." Opp. at 16. But requiring a user to go through an informal dispute process before submitting to arbitration is hardly unconscionable. In *Durruthy*, for instance, the court found that a mandatory, pre-arbitration dispute resolution process that required an employee to "(1) describe the nature and basis of the claim or dispute, (2) set forth the specific relief sought, and (3) include a sworn verification that the dispute is covered by this Agreement and that the information submitted in the notice is accurate" was not unreasonable, "much less unconscionable." *Durruthy v. Charter Commc'ns, LLC*, No. 20-CV-1374-W-MSB, 2020 WL 6871048, at *12 (S.D. Cal. Nov. 23, 2020). The court reasoned that, in contrast to *Nyulassy*, on which Mr. Bielski relies, "[r]equiring an employee to provide a description of the 'nature and basis' of a claim, at apparently whatever level of detail the employee chooses, is a far cry from subjecting the employee to potential fact-finding discussions with supervisors." *Id*.; *see also Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1140 (C.D. Cal. 2011) (holding that a mandatory "preliminary-steps requirement" did not "render[] the agreement so substantively unconscionable as to be unenforceable"); *see also Serpa*, 215 Cal. App. 4th at 710.

---

more than that, the court identified and relied on *other* indicia of unilaterality too: a provision that only awarded fees and costs to the defendant; a requirement that claimants demand arbitration almost immediately; and a requirement that the arbitrator be selected from a pre-established list created by the defendant. *Id.* at 767–69.

Here, Coinbase's informal dispute resolution procedures do not offer Coinbase a "free peek" at Mr. Bielski's claim. Nor do they subject him (or any user) to "fact-finding discussions" or pre-arbitration hearings. They simply require users to inform Coinbase of their complaint and to give Coinbase an opportunity to respond and resolve the dispute before the parties delve into arbitration.

Coinbase's Formal Complaint Process first requires users to "contact Coinbase through our support team and attempt to resolve any such dispute amicably." UA § 8.2. If Coinbase Support fails to resolve the issue, then the UA requires users "to use our Complaint form to describe your Complaint, how you would like us to resolve the Complaint, and any other information related to your dispute that you believe to be relevant." *Id*. at § 8.2.1. The UA provides a hyperlink to the simple complaint form,[4] which requires only that users share basic contact information, identify the Coinbase product at issue, and answer straightforward questions about whether they had submitted the complaint before.

Mr. Bielski asserts that "[u]sers are required to submit any information and documentation they might have to support their complaint, thus providing Coinbase with a 'free peek' at potential legal theories, including theories pertaining to the delegation provision." Opp. at 16. But that is false: as the form makes clear, it is optional for users to "describe the incident and complaint in full detail and describe how [Coinbase] can address it [the user's] satisfaction," just as it is optional for users to upload files or documents they want Coinbase to review.

Coinbase's Formal Complaint Process is a far cry from the cumbersome, lopsided pre-arbitration procedures in the cases that Mr. Bielski cites (all of which are, in any event, employment disputes, not consumer disputes). For instance, in *Pokorny*, the plaintiffs were first required to bring their disputes to an informal hearing panel that amounted to a "standard commercial mediation." *Pokorny*, 601 F.3d at 992. Then, they had to present their claim to a

---

[4] The relevant complaint form is available at https://help.coinbase.com/en/contact-us/submit-a-complaint. Mr. Bielski suggests that this form is difficult to find. *See* Opp. at 6 n.8. In fact, the UA includes a link ("The complaint form can be found here") that leads users to a Coinbase help page, from which they can submit their "complaint using the complaints form." And, despite Mr. Bielski's claims to the contrary, simply typing the word "complaint" into the search bar at help.coinbase.com or support.coinbase.com will, in fact, lead a user directly to the right page.

formal mediation panel that heard evidence and testimony and whose "primary goal [was] to mediate or conciliate each dispute by determining the facts and recommending to [Quixtar] any possible resolutions or remedy…." *Id*. Only then, if the plaintiff was unsatisfied with the mediation panel's "final decision," could she submit her claim to arbitration. *Id*. at 993. The court reasonably concluded that the "lopsided advantage" this process afforded the employer was "the type of one-sidedness that the doctrine of substantive unconscionability is designed to protect against." *Id*. at 1000; *see also Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282–83 (2004) (requiring discussions with various levels of management); *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 79 (2014) (requiring employee-plaintiffs to first have discussions with management and ownership "before any information is divulged to any persons, firms, corporations, media agency, governmental entities or agencies"); *Carver v. JFK Mem'l Hosp., Inc.*, No. E071782, 2020 WL 6269268, at *2 (Cal. Ct. App. Oct. 26, 2020) (requiring employee-plaintiffs to first have discussions with supervisors, then complete and submit a dispute resolution form, then discuss the dispute with both the Department Head and Facility Administration, all before arbitrating). Coinbase's Formal Complaint Process, by contrast, involves a simple online form that can be completed in minutes. It does not require users to present evidence or testimony to anyone, let alone a series of defendant-appointed panels.

Coinbase's pre-arbitration procedures exist for good reason.[5] By establishing a straightforward, uniform process—an online complaint form—Coinbase can investigate any user complaints, provide additional information to its users, and potentially resolve their concerns before the parties resort to costly arbitration. There is nothing unreasonable or untoward about this. And, under the controlling case law, it certainly is not unconscionable.

---

[5] "[T]he California Supreme Court has confirmed that a one-sided contract is not necessarily unconscionable. A contract can provide for a margin of safety that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." *Tompkins*, 840 F.3d at 1030–31. Unconscionability, therefore "turns not only on a 'one-sided' result, but also on an absence of 'justification' for it." *Armendariz*, 24 Cal. 4th at 117–18. If the drafter of the agreement has a "reasonable justification for the arrangement — i.e., a justification grounded in something other than the [drafter's] desire to maximize its advantage based on the perceived superiority of the judicial forum — such an agreement would not be unconscionable." *Id.* at 120.

### 3. Even if the Court found part of the agreement substantively unconscionable, the relevant provision could be severed.

Mr. Bielski claims that, if this Court were to find provisions of the UA unconscionable, they could not be severed. He is wrong on the law and its application.

If a court determines that a contract contains an unconscionable clause, its primary goal should be to sever only the offending provision and to "limit the application of any unconscionable clause so as to avoid any unconscionable result."[6] *Poublon*, 846 F.3d at 1272 (citing Cal. Civ. Code § 1670.5(a)). In fact, courts may "refuse to enforce the entire agreement only when it is 'permeated' by unconscionability.'" *Id.*[7] Even in *Carver*, an unpublished state court case on which Mr. Bielski relies, the court acknowledged that "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." *Carver*, 2020 WL 6269268, at *7; *see* Opp. at 17; *Armendariz*, 24 Cal. 4th at 124. ("The overarching inquiry is whether the interests of justice…would be furthered by severance.").

Here, Mr. Bielski complains about two provisions in the UA: one that he characterizes as a "lengthy one-sided prearbitration procedure" and another he views as a unilateral delegation provision. *See* Opp. at 17. As explained above, the UA's Formal Complaint Process is neither lengthy nor unconscionable; it simply requires users to contact customer service and submit an online form describing their complaint.

That leaves only the delegation provision, which, according to Mr. Bielski, creates an obligation for users but not for Coinbase. *See* Opp. at 17. That argument defies logic, and a plain reading of Section 8.3, as explained above. But even if Mr. Bielski were right, the Court could easily sever the prefatory clause (*i.e.*, "~~If we cannot resolve the dispute through the Formal~~

---

[6] This is consistent with the parties' agreement, in the UA, that "[i]f any provision of this Agreement shall be determined to be invalid or unenforceable…, such provision will be changed and interpreted to accomplish the objectives of the provision to the greatest extent possible under any applicable law and the validity or enforceability of any other provision of this Agreement shall not be affected." *See* UA, § 9.7.

[7] To determine whether an arbitration agreement is "permeated" with unconscionability, courts look to (1) whether there are multiple unconscionable provisions; (2) whether the central purpose of the contract is illegal; and (3) whether the contract can be saved by severing the unconscionable terms. *Poublon*, 846 F.3d at 1273.

~~Complaint Process,~~) while leaving the rest of the provision intact. Even Mr. Bielski acknowledges that making this minor revision would render the provision indisputably mutual. *See* Opp. at 4 n.6; *id.* at 17 n.19 (recognizing that it is "grammatically possible for the Court to strike language that renders the delegation provision (and the entire agreement to arbitrate) unilateral"). Such an amendment would also conform with the parties' intent "for any invalid portion of the agreement to be restricted." *Poublon*, 846 F.3d at 1274; UA § 9.7. And it is plainly permissible because the UA is not "permeated" with unconscionable terms. *See Poublon*, 846 F.3d at 1273. Mr. Bielski complains that one clause in one sentence of one section of the agreement is confusing. Even if that were true, the offending clause would not render the central purpose of the UA illegal. As a result, the clause could be severed, leaving the rest of the UA—including the arbitration and delegation provision—intact. *See Armendariz*, 24 Cal. 4th at 124.

### B. Mr. Bielski cannot avoid arbitration by preventing the required pre-arbitration procedures from occurring.

As Mr. Bielski acknowledges, he cannot avoid arbitration by affirmatively thwarting a condition precedent—in this case, the pre-arbitration Formal Complaint Process. Opp. at 22 ("To be sure, parties to a contract cannot avoid contractual conditions by preventing the conditions from occurring."). Indeed, "[i]t is hornbook law that where one contracting party prevents the other's performance of a condition precedent, the party burdened by the condition is excused from performing it, and the benefited party's duty of performance becomes unconditional." *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 490, (2008), *as modified on denial of reh'g* (Aug. 28, 2008) (cited in *Bugarin v. All Nippon Airways Co.*, 513 F. Supp. 3d 1172, 1183 (N.D. Cal. 2021)). Nonetheless, Mr. Bielski now asks this Court to excuse him from arbitration for precisely that reason: the Formal Complaint Process "never occurred" because he "never submitted a Formal Complaint," and thus, he argues, he should not be compelled to arbitration. Opp. at 22; *see also* Dkt. 29-1 ("Bielski Decl.") at ¶ 9.

As a threshold matter, the parties expressly agreed to delegate all questions about arbitrability to the arbitrator, which would include questions about whether a condition precedent should have been or was met. *See* UA § 8.3; *see also id.* § 8.2 (reserving "the right to ask *the*

*arbitrator*" to dismiss a complaint for failing to follow the pre-arbitration process).

But, in any event, Mr. Bielski's argument fails as a matter of law. To support his theory, Mr. Bielski relies on one case from the Northern District of New York, in which the parties failed to fulfill the required pre-arbitration procedure (a conversation with management) because, when the employee approached her manager to have a conversation, the manager simply "responded to the request by laughing and stating that [the employee] 'was being hormonal.'" *Darrah v. Friendly Ice Cream Corp.*, 328 F. Supp. 2d 319, 321 (N.D.N.Y. 2004). In other words, it was the defendant, not the plaintiff, who refused to engage in the process. That is not the case here. Mr. Bielski claims that he "did everything he reasonably could to communicate with Coinbase customer service." Opp. at 23. But that is plainly untrue. Here, unlike in *Darrah*, Mr. Bielski chose not to go through the required Formal Complaint Process. *Id.* at 22. He tries to blame Coinbase for his own inaction, arguing that when he contacted customer service, they failed to address his concerns quickly enough. *See Darrah*, 328 F. Supp. 2d at 323; *see also* Bielski Decl. at ¶ 8. But if Coinbase's support team was unable to resolve his dispute, he could and should have proceeded to the Formal Complaint Process, which would have ensured that a Coinbase customer relations agent responded to him within 15 days. *See* UA §§ 8.2, 8.2.1, 8.2.2. Instead, he chose to skip this step altogether and proceeded directly to filing a lawsuit so that he could argue here that a condition precedent had not been fulfilled.[8] But because it was Mr. Bielski who "prevent[ed] the conditions from occurring," he "cannot avoid [his] contractual obligations," *see* Opp. at 22, and this Court should compel him to arbitration. *See City of Hollister*, 165 Cal. App. 4th at 490.

    **C.    The Arbitration Agreement is enforceable for the same reasons that the delegation provision is enforceable.**

If the delegation provision is enforceable, the enforceability of the Arbitration Agreement must be decided by the arbitrator, not this Court. *See* UA § 8.3; *see also Britt v. ContextLogic,*

---

[8] When this case was first filed, original plaintiff Jonathan Zubin specifically alleged that he had completed the required pre-arbitration process, including by "submitt[ing] to Coinbase … a 'Formal Complaint.'" *See* Dkt. 6 at ¶ 16 (alleging that, in September, "Plaintiff received an email from Coinbase informing him that, inter alia, Coinbase would refund him"). When Mr. Bielski stepped in to take over from Mr. Zubin, he appears to have chosen a different path: "never submitt[ing] to Coinbase a 'Formal Complaint'…" *See* Bielski Decl. at ¶ 9.

*Inc.*, No. 20-cv-04333-WHA, 2021 WL 1338553, at *6 (N.D. Cal. Apr. 9, 2021) (holding that comparable language in another consumer arbitration contract "clearly and unmistakably delegates to the arbitrator the authority to decide the enforceability or validity of the arbitration agreement"). Mr. Bielski does not dispute this. For the reasons described above, the delegation provision is enforceable, and any other questions should be sent to an arbitrator to resolve.

### D. Whether the class-action waiver would "survive" on its own is not a question before the Court in this Motion.

Finally, Mr. Bielski argues that the UA's class-action waiver "cannot survive" independently of the arbitration agreement and therefore "must fall…." Opp. at 19. This argument is not relevant to the issue before the Court, which is whether it should compel arbitration. To the extent Mr. Bielski is seeking an order from the Court relating to the UA's class-action waiver, he cannot obtain that relief without filing a motion. *See, e.g.*, L.R. 7-1(a) ("Any written request … for an order must be presented" by motion or stipulation). Coinbase disagrees with Mr. Bielski's argument, objects to his efforts to stretch Fifth Circuit caselaw beyond reason, and reserves its right to fully address this issue in response to or in connection with a properly noticed motion. For now, it is sufficient that the resolution of this issue has no bearing on whether the Court should compel arbitration.

## III.   CONCLUSION

For the reasons set forth herein, Coinbase respectfully requests that the Court (1) compel Mr. Bielski to arbitrate his claims on an individual basis and (2) stay this action pending completion of the arbitration.

Dated:  February 24, 2022                                    KEKER, VAN NEST & PETERS LLP

By:   */s/ Nicholas D. Marais*
       STEVEN P. RAGLAND
       NICHOLAS D. MARAIS
       W. HAMILTON JORDAN

Attorneys for Defendant COINBASE, INC.