KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
W. HAMILTON JORDAN - # 295004
wjordan@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant COINBASE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ABRAHAM BIELSKI, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE, INC.<br><br>Defendant. | Case No. 3:21-cv-07478-WHA<br><br>**COINBASE, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY**<br><br>Date Filed:  September 24, 2021<br><br>Trial Date:  None set |

At last week's hearing, the Court requested supplemental briefing on one discrete issue: whether the two pre-arbitration steps required by Coinbase's User Agreement ("UA"), which are intended to help the parties resolve a customer's dispute *before* turning to arbitration, might be so "onerous" as to render the dispute-resolution provisions of the UA unconscionable with respect to Mr. Bielski. The answer to the Court's question is "***no***." Coinbase's pre-arbitration process is not onerous, and it is not unconscionable under the law because it does not "shock the conscience." Courts routinely enforce arbitration agreements with significantly *more* burdensome prerequisites. And no court has ever found an arbitration agreement "unconscionable" because of its pre-arbitration processes alone.

Regardless, this question should not affect whether the Court compels arbitration because the UA contains a delegation provision. In the UA, the parties expressly agreed that "all" questions about enforceability, which includes questions about the UA's pre-arbitration process, "shall be decided by an arbitrator and not by a court or judge." UA at § 8.3. Where an arbitration agreement contains a delegation provision, courts may only consider those arguments that "go to the validity of the delegation provision" itself, not challenges to other parts of the agreement or the agreement as a whole. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("[U]nless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid…, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *see Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) ("When considering an unconscionability challenge to a delegation provision, the court must consider only arguments specific to the delegation provision."); *see also Knepper v. Ogletree, Deakins, Nash, Smoak & Stewart, P.C.*, 2019 WL 144585, at *8 (N.D. Cal. Jan. 9, 2019) (holding that unconscionability arguments about "the Agreement itself, not the delegation provision," must "be resolved by the arbitrator"); *Riley v. Medline Indus., Inc.*, 2020 WL 5944445, at *4 (E.D. Cal. Oct. 7, 2020) ("[P]laintiff's unconscionability arguments must be decided by the arbitrator.").

**A.     Coinbase's pre-arbitration process is not onerous, let alone unconscionable.**

For a provision to be unconscionable, it must "shock the conscience." *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003). This extraordinarily high bar has not been met

here. Nothing about Mr. Bielski's experience with Coinbase transforms Coinbase's **simple** pre-dispute process into something that should stop the Court from enforcing the UA's delegation and arbitration clauses.

Under the UA, users are required to take two basic steps before filing an arbitration demand. *First*, users must "contact Coinbase through our support team" to "attempt to resolve any … dispute amicably." UA § 8.2. The UA explains how users can contact Coinbase, and the relevant phone numbers and email addresses are readily available on Coinbase's "Contact Us" webpage.[1]

The *second* step is just as straightforward. "In the event that your dispute with Coinbase is not resolved through your contact with Coinbase Support, you agree to use our Complaint form to describe your Complaint, how you would like us to resolve the Complaint, and any other information related to your dispute that you believe to be relevant. The Complaint form can be found on the Coinbase support pages, https://support.coinbase.com…." *Id*. at § 8.2.1. This short form is available at https://help.coinbase.com/en/contact-us/submit-a-complaint and can be completed in minutes. Nothing about these steps is complicated or unjust.

Mr. Bielski acknowledges that he took the first step. Then, because his "dispute with Coinbase [was] not resolved" to his satisfaction, he could have chosen to move to the second step of the process *at any time*. That is how the pre-arbitration dispute process works. Mr. Bielski acknowledges that he chose not to take the second step—not because the process itself was too onerous, but because he wanted to argue in these proceedings that a condition precedent had not been met. *See* Dkt. 29-1 at 22–24. Mr. Bielski could still submit a complaint through the pre-arbitration dispute process today and Coinbase will respond. UA § 8.2.2.[2]

---

[1] Mr. Bielski chose to contact Coinbase support via regular mail and summarized his complaint in writing. *See* Dkt. 29-1 at 1:27–28 (explaining that he "wrote two letters to Coinbase at its San Francisco address"). When Coinbase received his letter, it responded promptly, explaining that it was "working quickly to address the issue" and then, later that same day, informing Mr. Bielski that the company had "temporarily locked [his] account to protect" him. *See* Ex. A. Coinbase then followed up again—twice in the next week—to request "additional information" to help "resolve this case." *Id.*

[2] Mr. Bielski submitted two declarations with his opposition brief. In his own, he concedes that he "never submitted to Coinbase a 'Formal Complaint' … pursuant to the User Agreement." But the

Coinbase's pre-arbitration process is simple and reasonable. Mr. Bielski cannot use his own failures, intentional or not, to argue that the process is "onerous," that it "shocks the conscience," or that the parties cannot proceed to arbitration because Mr. Bielski himself chose not to meet a condition precedent. *See* Dkt. 29-1 at 22:9–10; Dkt. 30 at 12–13.

### B. Courts routinely enforce pre-arbitration processes like those in the UA.

Even if there were no delegation clause and the court could consider the issue of unconscionability here, there is nothing substantively unconscionable about requiring users to comply with a reasonable pre-arbitration process. Courts routinely enforce arbitration agreements that involve significantly *more* burdensome prerequisites than those at issue here.

In *Serpa*, for instance, the plaintiff argued that her arbitration agreement was unconscionable because it required her "to submit her dispute informally to the company before seeking arbitration." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013). The court disagreed: "a requirement that internal grievance procedures be exhausted before proceeding to arbitration is both reasonable and laudable" and "plainly does not 'shock the conscience' so as to vitiate the arbitration agreement." *Id.* (granting motion to compel arbitration); *see also Barati v. Ottno, Inc.*, 2018 WL 3099015, at *4 (Cal. Ct. App. June 25, 2018) (unpublished) (characterizing requirement that the parties *first* mediate as "easily complied with" and directing plaintiff to attend "an informal meeting, mediation…, and finally arbitration if the case is not settled by then"); *Taft v. Henley Enters., Inc.*, 2016 WL 9448485, at *8 (C.D. Cal. Mar. 2, 2016) (enforcing arbitration agreement where employees were first required to provide written notice describing the nature of all claims and detailing supporting facts); *Marks v. Bridgestone Americas, Inc.*, 2015 WL 13919149, at *2 (C.D. Cal. Nov. 16, 2015) (granting defendant's motion to compel arbitration where agreement "call[ed] first for mediation and, in the

---

second, from non-party Hung Phan, provides a useful example here. Mr. Phan's exhibits show that: (1) he lodged a Formal Complaint on December 14, 2021; (2) he received a written response from Coinbase, on January 1, 2022, explaining that the company was "looking into [his] Complaint" and needed "some more time to fully investigate and respond"; and (3) he received a detailed response from Coinbase later that same month. *See* Dkt. 29-2 at 5–7. This is how the process works, and how it could have worked if Mr. Bielski had submitted a complaint, as he agreed to do under the UA.

event that mediation fails…, submission to binding arbitration"); *Lei v. Amway Corp.*, 2014 WL 12596787, at *9 (C.D. Cal. July 23, 2014) (enforcing agreement requiring informal mediation before arbitration); *Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 406 (2014) (enforcing agreement requiring employees to submit a form listing claims and witnesses).[3]

At oral argument, Mr. Bielski's counsel identified *Darrah* as his "best case" for the proposition that pre-arbitration processes are unconscionable. But the *Darrah* court never evaluated unconscionability at all, and it certainly did not conclude that the employer's pre-dispute processes were "onerous" or unfair. *See Darrah v. Friendly Ice Cream Corp.*, 328 F.Supp.2d 319 (N.D.N.Y. 2004). To the contrary, when the *Darrah* court turned to the grievance steps required by Ms. Darrah's employment agreement, it assumed that they were appropriate and enforceable: "[T]he parties agreed that engaging in the Open Door Policy is a condition precedent to initiating arbitration…. Therefore, it must be determined whether each side fulfilled its duty to engage in the Open Door Policy." *Id.* The problem in *Darrah* was that, when Ms. Darrah did what she was supposed to—"fulfilled her duty to engage" in the pre-dispute processes by "exercising her rights" under the policy—her employer refused to cooperate, "dismissively responded that she 'was being hormonal,'" and "failed to comply" with its own obligations. *Id.* Here, by contrast, Mr. Bielski could have moved to the formal complaint stage after his interactions with Coinbase's support team. That is how the process works. Coinbase was never given an opportunity to address his Formal Complaint because he never submitted one. Mr. Bielski cannot escape his contractual obligations by intentionally thwarting a condition precedent. *See* Dkt. 30 at 12–13.

### C. Courts reject pre-dispute processes only when additional coercive pressures exist in the arbitration agreement

In the very rare cases where courts have objected to pre-arbitration processes as improper, the courts did so because the processes had additional, troubling coercive elements, far beyond simply having to provide basic information about a dispute in a simple form.

---

[3] None of these cases involved an arbitration agreement with a delegation provision. If they had, the question of whether these processes were unconscionable would have been decided by an arbitrator, not the court. See *Knepper*, 2019 WL 144585, at *8; *Riley*, 2020 WL 5944445, at *4.

In *Nyulassy*, for instance, the court found three concerns that "taken together" rendered the agreement substantively unconscionable, including requiring a plaintiff to have *multiple* discussions with *supervisors* and share more than the basic level of information required by Coinbase, and, more importantly, shortening the statute of limitation for the employee's claims. *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267, 1282-82 (2004). That combination isn't an issue here, where the UA requires users to complete a simple one-page form, not appear in person to present evidence or testimony, and in no way shortens the statute of limitations for claims. "Requiring an employee to provide a description of the 'nature and basis' of a claim, at apparently whatever level of detail the employee chooses, is a far cry from subjecting the employee to potential fact-finding discussions with supervisors." *Durruthy v. Charter Commc'ns, LLC*, 2020 WL 6871048, at *12 (S.D. Cal. Nov. 23, 2020) (finding that the plaintiff failed to show requirements were "unreasonable, much less unconscionable"); *Serpa*, 215 Cal. App. 4th at 710 (requirement that internal grievance procedures be exhausted before arbitration is both "reasonable and laudable").

And even the *Nyulassy* court recognized that pre-arbitration requirements generally could be "laudable mechanism[s] for resolving [] disputes informally." *Nyulassy*, 120 Cal.App.4th at 1283. No court has ever concluded that a pre-dispute requiring users to contact customer support and complete a one-page form, without more, rendered a bilateral agreement unconscionable.

\* \* \*

The parties ("you and we") agreed that "*any* dispute arising out of or relating to [the UA] or the Coinbase Services … shall be resolved through binding arbitration…." *See* UA, § 8.3 (emphasis added). Because this dispute falls within the parties' agreement to arbitrate, it must be sent to arbitration. Nothing about Coinbase's pre-arbitration dispute process changes that result. The two steps required under the UA are the sort of "reasonable and laudable" efforts that allow parties to resolve disputes short of litigation. *Serpa*, 215 Cal. App. 4th at 710. They will not always work, and if they don't, the parties are free to pursue their claims in arbitration after they complete the simple pre-arbitration dispute process.

For the foregoing reasons, Coinbase respectfully requests that the Court grant its Motion.

1839187

Dated: March 14, 2022            KEKER, VAN NEST & PETERS LLP

By:  */s/ Nicholas D. Marais*
      STEVEN P. RAGLAND
      NICHOLAS D. MARAIS
      W. HAMILTON JORDAN

Attorneys for Defendant COINBASE, INC.