Matthew D. Carlson (State Bar No. 273242)
mdcarlson@mdcarlsonlaw.com
LAW OFFICE OF MATTHEW D. CARLSON
3959 N. Buffalo Road, Suite 29
Orchard Park, NY 14127
Telephone: (716) 242-1234

Attorney for Plaintiff ABRAHAM BIELSKI

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ABRAHAM BIELSKI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE, INC.<br><br>Defendant. | **Case No.: 3:21-cv-07478-WHA**<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF RE: DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date:    March 10, 2022<br>Time:    8:00 a.m.<br>Judge:   Hon. William H. Alsup<br>Ctrm.:   12 – 19th Floor<br><br>Complaint Filed: September 24, 2021 |

Pursuant to the Court's instruction at the March 10, 2022 hearing on Defendant's Motion to Compel Arbitration, Plaintiff Abraham Bielski submits this supplemental brief regarding the prearbitration procedures in the applicable Coinbase User Agreement ("UA"), Dkt. No. 28-1.

**A.    The Delegation Provision**

As a threshold matter, Plaintiff notes that UA's delegation provision is expressly incorporated into the broader arbitration agreement. See UA at ¶ 8.3. Thus, the preconditions to arbitration of substantive disputes are equally applicable to the arbitration of disputes encompassed by the delegation provision. *Id.*

**B.    Preconditions to Arbitration and Plaintiff's Experience Therewith**

Coinbase's UA includes two mandatory preconditions to arbitration: (1) the customer support precondition, and (2) the Formal Complaint process precondition.

**1.    The Customer Support Precondition**

The first precondition to arbitration in Coinbase's UA is that users must submit their disputes to Coinbase's "support team." The UA provides: "If you have a dispute with Coinbase (a 'Complaint'), you agree to contact Coinbase through our support team to attempt to resolve any such dispute amicably." UA at ¶ 8.1. The UA also states that this precondition is met only if "*we* cannot resolve [the user's] dispute." UA at ¶ 8.2 (emphasis added).[1]

---

[1]    There are **two important points of contractual interpretation** regarding this precondition. **First**, the requirement that both parties (*i.e.*, "we") attempt to "resolve" a dispute means *both* parties must make a "good faith" attempt and use their "informal best efforts" to resolve a dispute before their duties have been fulfilled. *See Darrah v. Friendly Ice Cream Corp.*, 328 F.Supp.2d 319, 322-323 (N.D.N.Y. 2004) (finding DRP with substantially similar language required *both* parties to make a "good faith" attempt and use their "informal best efforts" to resolve a dispute before their duties have been fulfilled, and finding that "[b]y refusing to engage in the [informal DRP], defendant clearly failed to comply with a condition precedent to arbitration under the Agreement."). Similarly, the implied covenant of good faith and fair dealing imposes upon Coinbase "a duty to make a reasonable effort to fulfill the commitment it undertook" in its own contract. *Andrews v. Mobile Aire Ests.*, 125 Cal. App. 4th 578, 583 (2005). **Second**, Coinbase's apparent position that Mr. Bielski could have simply bypassed the first precondition is unsupported by the law (in addition to being unsupported by the wording of the precondition itself). *Carver v. JFK Mem'l Hosp., Inc.*, 2020 WL 6269268, at *11 (Cal. Ct. App. Oct. 26, 2020) ("[I]t does not matter that the parties did not comply with the prearbitration procedures and do not seek to enforce them now.") (*citing Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 125 (2000)).

Mr. Bielski attempted to "amicably resolve" his issue with Coinbase's "support team" – and it was a nightmare. Bielski Decl. at ¶ 8. He tried to engage in a "live chat," but was met with a "bot" and template responses. *Id.* He repeatedly called Coinbase at the telephone number *specifically designated* by the UA for disputes of this nature but was unable to ever reach anyone. *Id.*; *see also* UA at ¶ 8.1 ("If you believe your account has been compromised, you may also report your claim by calling (888) 908-7930."). He mailed Coinbase *two letters* in which he begged for help and received no response – until after he added his name to this case, after which he received multiple, apparently automated emails. Bielski Decl. at ¶ 8. Unfortunately, this sort of debacle is not unique to Mr. Bielski, nor can Coinbase seriously claim this is "the first it has heard of it" – it has been the subject of national news, most notably in an article titled "*Coinbase slammed for what users say is terrible customer service after hackers drain their accounts.*"[2]

### 2. The Formal Complaint Process Precondition

The second precondition to arbitration is the filing of a Formal Complaint form and failure of the Formal Complaint process. UA at ¶¶ 8.2, 8.2.1, 8.2.2. As noted, the UA does not permit parties to move on to this precondition without a bilateral attempt to resolve the dispute at the "support team" level. UA at ¶¶ 8.1, 8.2. But if Mr. Bielski had been required to proceed, he would have found that the link to the required Formal Complaint form in his UA led not to the form, but to a landing page for various informational topics – none of which were how to submit a Formal Complaint.[3] Even typing "Formal Complaint" into the search bar at the top of the landing page did not lead to the form. *Id.*[4] Compounding problems, the UA alternatively

---

[2]    *See* https://www.cnbc.com/2021/08/24/coinbase-slammed-for-terrible-customer-service-after-hackers-drain-user-accounts.html. Indeed, counsel has received calls from countless Coinbase users who have run into the same "customer service" dead ends.

[3]    *See* https://web.archive.org/web/20210412140702/https://www.coinbase.com/legal/user_agreement/united_states (linking to https://web.archive.org/web/20210412140709/https://help.coinbase.com/) (UA applicable to Plaintiff).

[4]    Coinbase's representation that the link and landing page do work properly (*see* Reply at p. 9, n. 4.) is misleading – the link and landing page in the *current* UA (which does not apply to Mr. Bielski) function properly, but did not in Mr. Bielski's UA. *See* n. 3 (Plaintiff's UA); *compare* current UA at https://www. coinbase.com/legal/ user_agreement/united_states (linking to https://help.coinbase. com/en/coinbase/other-topics/other/how-to-send-a-complaint).

provided that Mr. Bielski could request the form from customer service – but of course he could never *reach* a customer service agent. Bielski Decl. at ¶ 8. Attempting to locate the unreasonably difficult to find form, or alternatively requesting the form from the unreasonably difficult to find "support team" were the only ways Mr. Bielski could have submitted a Formal Complaint and have it inevitably rejected. UA at ¶ 8.2.1. Understandably, he never did so. Bielski Decl. at ¶ 9.

**C. Discussion**

Agreements to arbitrate are contracts like any other, subject to state contract law defenses. *See* 9 U.S.C.A. § 2. In California, state law defenses to a party's performance under a contract include, *inter alia*, (1) prevention of performance, *see Bewick v. Mecham*, 26 Cal.2d 92, 99 (1945); and (2) impracticability/frustration of purpose, *see Maudlin v. Pac. Decision Scis. Corp.*, 137 Cal. App. 4th 1001, 1017 (2006). These defenses do not operate to invalidate specific contractual terms; rather, they are complete defenses to performance. *See Lortz v. Connell*, 273 Cal. App. 2d 286, 290 (Ct. App. 1969) ("prevention of performance by one party to a contract excuses performance by the other."); *Maudlin*, 137 Cal. App. 4th at 1017 (performance is excused when there is impracticability or frustration of purpose). Thus, <u>severance is not an available remedy</u> under such circumstances. *Id*. As discussed below, these defenses excuse Plaintiff from arbitrating his claim:

**1. Prevention of Performance**

"It is a general rule of contract law that each party impliedly covenants not to hinder, prevent or make more burdensome the other party's performance." *State of Cal. v. United States*, 151 F. Supp. 570, 573 (N.D. Cal. 1957); *see also Bewick*, 26 Cal. 2d at 99 ("Each party to a contract has a duty to do everything that the contract presupposes that he will do to accomplish its purpose and a duty not to prevent or hinder performance by the other party."). "The prevention doctrine is a corollary to the general principle that equity will not permit one to rely on one's own misconduct." *United States v. E. Mun. Water Dist.*, 2008 WL 11333849, at *4 (C.D. Cal. Apr. 3, 2008); *see also City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455,

511 (2008), *as modified on denial of reh'g* (Aug. 28, 2008) ("We will not now allow defendant to raise as a defense plaintiff's failure to perform an act which defendant itself greatly hindered plaintiff from performing."). This defense goes hand in hand with the implied covenant of good faith and fair dealing. *See Ninety Nine Invs. v. Overseas Courier Serv. (Singapore) Priv.*, 113 Cal. App. 4th 1118, 1131 (2003).

Here, at the first precondition to arbitration, Mr. Bielski did everything he reasonably could to engage with Coinbase customer service in a good faith effort to discuss his dispute. Coinbase, however, entirely failed to reciprocate as it was contractually obligated to do. *See Darrah*, *supra*. In so doing, Coinbase prevented Plaintiff from meeting the first precondition to arbitration, and similarly violated the covenant of good faith and fair dealing. *See Andrews*, *supra*. Further, by making the Formal Complaint form unreasonably difficult to locate – made more confusing by including a link that did not lead to the form, and made even worse by instructing users to ask non-existent customer service to provide the form – Coinbase prevented Plaintiff from meeting the second precondition to arbitration. Put simply, the law does not allow Coinbase to rely on contractual obligations that Coinbase itself prevented Plaintiff from fulfilling. For this reason, Plaintiff should not be required to arbitrate his claim.

**2.     Impracticability/Frustration of Purpose**

"[W]here, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged." *Maudlin*, 137 Cal. App. 4th at 1017. Similarly, "[w]here, after a contract is made, a party's principal purpose is substantially frustrated...his remaining duties to render performance are discharged…" *Far W. Fed. Bank, S.B. v. Off. of Thrift Supervision-Dir.*, 119 F.3d 1358, 1364 (9th Cir. 1997). One court has suggested that when prearbitration procedures are not "clear" or are "difficult," and when a plaintiff contends that "he encountered difficulty in complying with [the] procedures," performance may be excused. *Swiderski v. Milberg, et al.*, 114 Cal. Rptr. 2d 513, 537 (Ct. App.

2001), *review granted and opinion superseded sub nom.*, 42 P.3d 509 (Cal. 2002).

Here, the purpose of the agreement to arbitrate was, of course, to arbitrate Plaintiff's disputes. By acting (or not acting) in a way that made it unreasonably difficult for Plaintiff to satisfy both preconditions to arbitration, Coinbase frustrated the purpose of the agreement and, in so doing, made it impracticable for Plaintiff to perform his obligations under the agreement. For this alternative reason, Plaintiff is not contractually required to arbitrate his claim.

***

Plaintiff urges that the Court can and should find Coinbase's arbitration provision (including the delegation provision) unenforceable because as the UA is worded, any disputes Coinbase might have with its users cannot trigger the obligation to arbitrate such disputes (including disputes subject to the delegation provision), leaving only users subject to arbitration.[5] Particularly in conjunction with an even modestly substantively unconscionable unilateral free peek provision,[6] as further amplified by an unconscionable fee-shifting provision,[7] there can be no doubt that the agreement is unenforceable and cannot be saved by severance.[8] Such a ruling would have implications for both Plaintiff and putative class members. However, the Court has ample basis to deny Coinbase's Motion on the alternative grounds set forth herein and in Plaintiff's Opposition papers.

Dated: March 14, 2022                    LAW OFFICE OF MATTHEW D. CARLSON

                                         By: */s/ Matthew D. Carlson*
                                             Matthew D. Carlson
                                             Attorney for Plaintiff

---

[5] *See* Plf.'s Opp. at pp. 11-14; *see also Dunham v. Env't Chemical Corp.*, No. C 06-03389 JSW, 2006 WL 2374703, at *2 (N.D. Cal. Aug. 16, 2006).

[6] *Id.*; *see also* Plf.'s Opp. at pp. 14-16.

[7] *See* UA at ¶ 8.3; *see also Ramirez v. Charter Comm's, Inc.*, 2022 WL 498706, at *6-10 (Cal. Ct. App. Feb. 18, 2022); *see also Lou v. Ma Lab'ys, Inc.*, No. C 12-05409 WHA, 2013 WL 2156316, at *5 (N.D. Cal. May 17, 2013) (discussing "to the extent permitted by law" language like the language in the UA's fee-shifting provision). However, a finding that this provision is unconscionable is not required to find the agreement unenforceable. *See Dunham*, *supra*.

[8] *See* Plf.'s Opp at pp. 16-19.