1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3 Before The Honorable William Alsup, Senior District Judge

4

5 ZUBIN,                          )
                                  )
6         Plaintiff,              )
                                  )
7 vs.                             )   No. C 21-07478-WHA
                                  )
8 COINBASE GLOBAL, INC.,          )
  et al.,                         )
9                                 )
          Defendants.             )
10 _____)

11                               San Francisco, California
                                 Thursday, March 10, 2022
12
             TRANSCRIPT OF THE OFFICIAL ELECTRONIC
13 _____ SOUND RECORDING 1:06 - 1:34 - 28 MINUTES

14

15 APPEARANCES:

16 For Plaintiff Abraham Bielski:
                                 Law Office of Matthew D.
17                                 Carlson
                                 3959 North Buffalo Road
18                               Suite 29
                                 Orchard Park, New York 14127
19                          BY:  MATTHEW D. CARLSON, ESQ.

20 For Defendant Coinbase:
                                 Keker, Van Nest & Peters LLP
21                               633 Battery Street
                                 San Francisco, California
22                                 94111
                            BY:  NICHOLAS D. MARAIS, ESQ.
23                          BY:  STEVEN PAUL RAGLAND, ESQ.

24

25

2

1    Transcribed by:              Echo Reporting, Inc.
                                  Contracted Court Reporter/
2                                 Transcriber
                                  echoreporting@yahoo.com
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1   Thursday, March 10, 2022                         1:06 p.m.

2                   P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4           THE CLERK:  Calling civil action 21-07478,

5   Zubin versus Coinbase Global, Inc., et al.

6       Counsel, please state your appearances for the record,

7   beginning with counsel for the plaintiff.

8           MR. CARLSON (via Zoom):  Good afternoon, your

9   Honor.  This is Matthew Carlson on behalf of plaintiff

10   Abraham Bielski.

11           THE COURT:  Okay.  Welcome.

12           MR. MARAIS:  Good afternoon, your Honor.  This is

13   Nick Marais from Keker, Van Nest and Peters LLP, and my

14   colleague Steven Ragland is with me.  We represent defendant

15   Coinbase.

16           THE COURT:  Okay.  Welcome to you.

17       All right.  You get to go first because it's your

18   motion to compel.  Please go ahead.

19           MR. MARAIS:  Thank you, your Honor.

20       We're here, as the Court has noted, on Coinbase's

21   motion to compel arbitration.  Plaintiff Jonathan Bielski is

22   a Coinbase user.  He set up a Coinbase account last April so

23   that he could buy and sell crypto currencies.

24       When he set up his account, he agreed to be bound by

25   Coinbase's user agreement, which is dated April 9, 2021.  It

4

1  is in the record at docket 28-1.

2      As the Court well knows, in analyzing a motion to

3  compel, there are typically three questions.

4      The first is, did the parties enter into a valid

5  binding agreement.  The answer is yes.  There is no dispute

6  on that.

7      The second is, did the parties agree to delegate

8  questions about arbitrability or about the enforceability of

9  the agreement to an arbitrator.  The answer to that question

10  is yes as well.

11      And then third, if the answer to the second question is

12  no, courts will sometimes evaluate whether these particular

13  claims are covered by the arbitration agreement.  I don't

14  think that's a question the Court needs to get to, but

15  there's no dispute in Mr. Bielski's opposition about that.

16      I'd like to start, if I can and as I think we must,

17  with the delegation provision.  It's in the middle of page

18  18 at docket 28-1.  And it quite clearly says that:  Any

19  disputes arising out of or related to the interpretation or

20  application of the arbitration agreement, including its

21  enforceability or its validity shall be decided by an

22  arbitrator and not by a court or judge.

23      In <u>Rent-A-Center</u>, the Supreme Court was faced with

24  arguments much like those Mr. Bielski makes today, that the

25  agreement was unconscionable because it was unilateral in

5

1   forcing only employees to litigate their claims.

2       But what the court held was that the parties can agree

3   to send those sorts of questions to the arbitrator.  And

4   they did.  And the arguments that Ms. Jackson made in that

5   case, or Mr. Bielski makes here, were not about the

6   delegation provision specifically.  And that I think is the

7   start and end of the inquiry.

8       There is a valid binding bilateral agreement to send

9   any questions about the arbitrability of this dispute to an

10  arbitrator.  Mr. Bielski acknowledges that he accepted the

11  terms of that agreement.  And so the motion to compel should

12  be granted.

13      Obviously, Mr. Bielski makes two arguments in his

14  opposition brief, or two main arguments.  I'm happy to

15  answer questions the Court may have about the others.

16      The first is that he claims that the agreement applies

17  only unilaterally.  The way he puts it is that if Coinbase

18  were to look at this user agreement, it would have no idea

19  how to proceed, whether it needed to litigate in court or in

20  arbitration.

21      And as I understand it, this is an argument about the

22  very first clause of section 8.3.  Again, it's about the

23  arbitration agreement, not the delegation agreement.  So

24  under Rent-A-Center, it is the kind of question that should

25  be sent to the arbitrator.

6

1    But in any event, the language in the arbitration

2 agreement is also clear.  It says, quote, "You and we agree

3 that any dispute arising out of or relating to this

4 agreement or the Coinbase services shall be resolved through

5 binding arbitration."

6    Now, the cases that Mr. Bielski talks about -- cites in

7 his opposition brief are quite clearly unilateral.  So in

8 Tawkify, for instance, the agreement said, quote, "Each user

9 agrees that any and all disputes shall be resolved through

10 arbitration."  And the court called out the fact that the

11 language there was not both parties agree or both sides

12 agree but each user agrees.

13    Same thing in Dunham:  The employee understands and

14 agrees that arbitration shall be the sole and exclusive

15 remedy.

16    Same in O'Hare where the court noted that the

17 arbitration provision's repeated use of the word "you" to

18 refer to O'Hare is indication that only his claims and not

19 his employees were subject to arbitration.

20    And on and on.  We address the other cases in our

21 reply, and I won't go through all of them here.

22    But that's what a unilateral provision looks like.  It

23 compels one party to arbitrate claims while exempting the

24 other.

25    Here, what the Coinbase user agreement says is "you and

7

1  we agree."  And like the delegation provision, it makes

2  clear that all such disputes, no matter whose disputes they

3  are, must be resolved in arbitration.

4      And the second argument that Mr. Bielski makes is it's

5  unfair to ask him to submit a form, an online form, as part

6  of Coinbase's formal complaint process because that gives

7  Coinbase, quote, a "sneak peek" into his arguments.

8      So there are obviously a continuum of cases here.  On

9  the one hand, you have a case like Pokorny, which involves

10  five stages.  Employees have to present their dispute to

11  mediation.  They have to present evidence and testimony to

12  the company.  They have to wait some period of time for the

13  company to rule on their dispute.  And only when they got to

14  step five could they submit those disputes to arbitration.

15      But on the other end, you have a case like Durruthy

16  where the court noted that, quote, "Requiring an employee to

17  provide a description of the 'nature and basis' of a claim,

18  at . . . whatever level of detail the employee chooses, is a

19  far cry from subjecting the employee to potential

20  fact-finding discussions with supervisors."

21      And we put a link to the online form in the reply

22  brief.  As the Court will see, it is very much on the

23  Durruthy end of the continuum, which is to say users need to

24  fill in their name, their email address and then provide, at

25  whatever level they choose, information about their dispute

8

1  in the hopes that Coinbase can resolve that dispute

2  informally before the parties need to resort to arbitration.

3      So I think that dispatches of those two arguments.  And

4  I'm happy to rest there unless the Court has other

5  questions.

6          THE COURT:  Thank you.  Let's hear from plaintiff.

7          MR. CARLSON:  Yes.  Thank you, your Honor.

8  Matthew Carlson for the plaintiff.

9      First and foremost, plaintiff spent numerous pages

10 specifically addressing the delegation provision in this

11 agreement.  So counsel's representation that that was not

12 the case is not accurate.

13     Now, with respect to the delegation provision

14 specifically, we outlined the reasons why it's both

15 procedurally and substantively unconscionable.

16     It's procedurally unconscionable because, as the

17 well-known Ninth Circuit case law says, it's a standardized

18 contract drafted by the party of superior bargaining

19 strength that relegates to the subscribing party only the

20 opportunity to adhere to the contract or reject it.

21     This delegation provision ticks all of those boxes.

22 And, again, I'm talking specifically about the delegation

23 provision.

24     On top of that, we have a unilateral modification

25 provision which adds to the procedural unconscionability of

9

1    the agreement.  If a company can and does just change its
2    user agreement on a whim, like Coinbase did 37 times, I
3    think that's pretty safe to say that it would be surprising
4    to your average Coinbase user.
5         Again, you know -- and with respect to the procedural
6    unconscionability, even a low degree of procedural
7    unconscionability is enough to get us talking about
8    substantive unconscionability.  And I think under the Merkin
9    case, we surpass that low degree of procedural
10   unconscionability that's necessary.
11        And I would just also add that plaintiff wasn't
12   required to review the terms of the user agreement before
13   accepting them.  He just had to tick the box.
14        Now, with regard to substantive unconscionability,
15   again specifically in regards to the delegation provision
16   which is incorporated into the larger agreement to
17   arbitrate -- that's why a lot of these arguments that apply
18   to the delegation provision apply also to the larger
19   agreement to arbitrate.  But this is pretty straightforward.
20        The way this arbitration provision is written,
21   including the delegation provision that's part of it,
22   Coinbase has no obligation to arbitrate any disputes it
23   might have against users.  And that alone should be enough
24   to have the agreement invalidated.
25        It seems to me like Coinbase would just like to ignore

10

1 the language of the agreement that makes the agreement

2 one-sided.

3      So the cases that I cited in plaintiff's brief,

4 particularly <u>Dunham</u>, <u>Pokorny</u>, <u>Kinney</u> and <u>Bakersfield</u>, those

5 are all cases where the agreement to arbitrate disputes was

6 not itself one-sided.

7      In other words, in <u>Dunham</u>, you know, the specific

8 language was:  Should employee exhaust the remedies provided

9 by the grievance procedure of defendant.  Employee and

10 defendant agree and understand that any controversy or claim

11 arising out of or relating to employee's employment shall be

12 settled by arbitration.

13      That, like Coinbase's agreement, is on its face

14 bilateral.  But when you look at the actual language of --

15 the sort of leading language of that agreement, by requiring

16 only the employee or only the Coinbase user to go through

17 the grievance procedure, the pre-arbitration dispute

18 procedure, only those claims are subject to arbitration.  I

19 mean I'm not -- that's just reading the agreement.  There is

20 really nothing special about it.

21      So to me, this is a clear instance of an illusory

22 agreement.  Coinbase says it has a certain obligation, but

23 in fact it has none.

24      Now, the free peek procedure, that is part and parcel

25 of the dispute resolution procedure as well.  You know,

1  there's recent case law, including Pokorny -- and as far as

2  there being a continuum with respect to the free peek

3  procedures, I don't think that's accurate.

4      I think the Durruthy case that counsel cited is pretty

5  old case law.  We have a substantial body of case law that's

6  far more recent that says that these free peek procedures

7  are substantively unconscionable, at least to some degree.

8          THE COURT:  What's that?  What do they call it,

9  pre what?  Pre-suit?  Pre what?

10         MR. CARLSON:  We've been calling it free peek.

11         THE COURT:  Well, okay.  I don't get that concept.

12      But what concerns me somewhat in this case is that the

13  right to go to arbitration, quote, "right" -- put that in

14  quotes -- is encumbered with these preconditions that, at

15  least as you've described it, were a nightmare for your guy.

16      And I am troubled by that and wonder if the law says

17  something like you cannot encumber and precondition the

18  right to go to arbitration on onerous preconditions.

19      So help me with that.  Is there law to that effect, and

20  if so, have you cited it?  What is the law on that?

21      Go ahead.

22         MR. CARLSON:  Well, I think actually a number of

23  these cases that I cited, including Dunham and Pokorny and

24  the Carver case is another one -- these cases all address

25  pre-arbitration dispute resolution procedures that are, to

12

1  different degrees, onerous and difficult and, as you put it,

2  a nightmare to fulfill.

3      So while those courts address those pre-arbitration

4  provisions as they related to the substantive

5  unconscionability of that provision, I think that would

6  apply just as equally as you've framed it.

7          THE COURT:  Well, okay.  The point I'm raising has

8  nothing to do with mutuality.  That's a separate problem.

9      But it's -- just stepping back and looking at the

10 broader picture, Congress -- for example, the Civil Rights

11 Act or the Electronic Funds Act creates a statutory right to

12 go to the district court to sue.  And then -- but then the

13 Arbitration Act gets in the way and says no, no, if there's

14 an agreement to arbitrate, you have to arbitrate.  You

15 cannot go to district court.

16     Okay.  That's the way the Supreme Court has come down

17 on that issue.  But I'm saying -- raising a different

18 question, and that is whether, okay, if you're forced to go

19 to arbitration, can it be made even worse by you can't even

20 go to arbitration unless you go through nightmarish

21 procedures first.

22     And to my mind, I think that's a serious question, and

23 maybe the right to arbitrate should never be conditioned on

24 nightmarish procedures.  What you described in the

25 declarations, an automated -- and he never even got a human

13

1 being on the line.  He's lost all of his money.  He tries to

2 get Coinbase to help, and no human being will talk to him.

3 He has to file a lawsuit.

4      I don't know.  One thing I've learned in life is when

5 you try to give your money away, you can always get a human

6 on the phone.  Whenever you want to sign up and tell them "I

7 want to subscribe," you always get a human on the phone.

8      But when you have a problem with customer service, you

9 have to jump through a hundred hoops.  You can't get anybody

10 on the phone.

11      So, I don't know, it's a sad day if that's the way the

12 law has come down, that you have to -- I don't think there's

13 a problem of free peek.  I don't -- that problem doesn't

14 bother me.

15      If you could get the human on the line, I'd say fine,

16 give them the free peek if they will help you.  But you

17 couldn't get a human on the line.  So that's the part of

18 your case that bothers me the most.

19      So tell me your best case on that one point. And then

20 I'm going to give the other side a chance to respond to my

21 grievance.

22      Go ahead.

23          MR. CARLSON:  Sure.  And this is Matthew Carlson

24 again.

25      So I think that actually squares directly with the

14

1  <u>Darrah</u> case that plaintiff cited in his alternative

2  argument, which essentially requires a good faith attempt

3  for a defendant company to engage in a pre-dispute

4  resolution procedure that it has drafted.

5       I mean it just seems fundamentally unfair for the

6  company to say, hey, you have to jump through all these

7  hoops to have a dispute resolved or attempt to be resolved

8  and then just completely blow it off.  That to me strikes me

9  as unfair and it's not just striking me as unfair.  You

10 know, we have -- that case talks specifically about it.

11      And as I said, at one point, the lack of mutuality in

12 the agreement, that to me is a fundamental problem with this

13 agreement.

14      Coinbase doesn't have to take its claims to

15 arbitration.  It doesn't.  There's no mechanism.  There's no

16 way that Coinbase is required to arbitrate its claims.  And

17 that's a broader problem that affects not just Mr. Bielski

18 but everybody else that signed up for Coinbase.

19      And regardless of how the Court comes down on the free

20 peek thing, I think that is dispositive.

21           THE COURT:  Well, maybe.  Okay.  You referred to

22 some decision and I didn't write it down.  Which one comes

23 closest to a ruling in your favor on this point --

24           MR. CARLSON:  That is --

25           THE COURT:  -- on the point about being too

15

1  onerous?

2       MR. CARLSON:  I'm sorry, your Honor.  The case

3  that I would cite for that, as we sit here today, is Darrah,

4  D-A-R-R-A-H, v. Friendly Ice Cream Corporation.  And the

5  citation for that is 328 F.Supp.2d 319.  And that's out of

6  the Northern District of New York from 2004.

7       THE COURT:  Okay.  Now, let me go back and let

8  Coinbase have a fair chance to respond to the point I

9  raised.

10      Go ahead, please.

11      MR. MARAIS:  Thank you, your Honor.  This is Nick

12 Marais.

13      I'd like to just start with some facts because I think

14 we're a little far afield from the actual circumstances

15 here.

16      This is a one-page form that a user can submit on

17 Coinbase's website.  They can leave as much or as little

18 detail as they want to.

19      When Mr. Bielski complains that he didn't get any

20 attention, that's because he didn't submit the form that

21 Coinbase asks its users to submit.  And I think it's worth

22 being clear about what's happened here.

23      This case was filed last September by a different

24 plaintiff, Jonathan Zubin.  And Mr. Zubin went through the

25 steps that are required under the user agreement.

1    His complaint is at docket 6.  And in paragraph 16, he

2  says, quote, "On or about May 6, 2021, plaintiff submitted

3  to Coinbase via Coinbase's website a formal complaint

4  regarding the transfers."  He doesn't say it was difficult.

5  He didn't say it was onerous.  He certainly doesn't say it

6  was a nightmare.

7    It is a simple one-page form.  And the goal of the form

8  is to allow Coinbase -- to allow the parties to try to

9  resolve any dispute they have before proceeding to

10 litigation.

11    We've linked to the form in the reply brief, and I

12 think it's worth the Court taking a look at it because it

13 certainly is not the nightmare that Mr. Bielski or Mr.

14 Carlson are making it out to be.

15        THE COURT:  Well, wait a minute.  Somebody is not

16 telling me the truth then, because isn't there a declaration

17 from Mr. Bielski describing the nightmare that he went

18 through once he learned that Coinbase didn't protect his

19 money and it had been stolen by a scammer?  He tried to

20 get -- no human being would answer him.

21    He got an automated template response?  What am I --

22 maybe I'm thinking of the wrong case, but I think it was

23 this case.

24        MR. CARLSON:  May I clarify, your Honor?  This is

25 Matthew Carlson for the plaintiff.

17

1          THE COURT:  All right.  I'll give you one minute.
2   Go ahead.
3          MR. CARLSON:  Okay.  Thank you.
4      So the form itself that counsel just mentioned is
5   relatively straightforward.  It's the procedures that you
6   have to go through before you have to get to the form that
7   create this nightmare.  And it truly is a nightmare.
8      Now, when we talk about facts, counsel said that they
9   provided a link to the formal complaint in their reply
10  brief.
11     Well, I'll tell you what, the link to that formal
12  complaint in the old version of the user agreement didn't
13  work.  It didn't take you to a formal complaint.  In the new
14  version of the user agreement, effective this year, now the
15  link actually works.
16     So just to clarify that piece of information.
17     And as far as Mr. Zubin goes, he alleged that he
18  submitted a formal complaint back in May.  Well, as it turns
19  out, he didn't.  He thought he did, but he was so confused
20  by the whole process that he didn't even realize that he
21  hadn't submitted a formal complaint.
22     So the whole situation is -- it's nothing short of a
23  debacle, frankly.
24          MR. MARAIS:  Your Honor, if I can continue just
25  briefly.

 1          THE COURT:  Yes, go ahead.

 2          MR. MARAIS:  This is Nick Marais again.

 3      The record is before the Court that the link to the

 4  form is in the reply brief.  I have not heard these words

 5  "debacle" and "nightmare" until today.  I don't think that

 6  they are an accurate characterization.

 7      The user agreement requires users to submit any

 8  complaint they have to Coinbase support, which is a very

 9  straightforward procedure.  It then requires them to fill

10  out a form if their dispute has not been resolved.  It's a

11  one-page form that I have described for the Court already.

12  And after that, they can submit the dispute that they have

13  to arbitration.

14      Now it's quite clear I think that Mr. Bielski has

15  avoided doing that to thwart the process so that he can

16  argue that a condition precedent has not been fulfilled.

17  But in the case that he is pointing the Court to, the

18  Northern District of New York case, <u>Darrah</u>, the court is

19  clear that each side had an obligation to fulfill its duty

20  to engage in the policy.

21      In that case, the employee -- and these issues are all

22  heightened obviously in the employer/employee context

23  because the courts are concerned that forcing an employee to

24  discuss the issue with his or her supervisor will chill

25  their desire to pursue their complaint.

19

1    In <u>Darrah</u>, the employee went, per the policy, to try to
2  discuss the complaint with her supervisor.  And her
3  supervisor laughed at her, told her she was being hormonal
4  and refused to engage in any dialogue.

5    What the court found is that both sides had a duty and
6  obligation to live by their end of the bargain.  And in that
7  case, the employee had done what she was supposed to do and
8  the employer failed to meet its obligations.

9    Here, the opposite is true.  Mr. Bielski has
10 intentionally chosen not to submit the formal complaint,
11 making it impossible for Coinbase to respond.  And he cannot
12 thwart a condition precedent in that way.

13    Your Honor, if I could point the Court to one other
14 case on this.  It will be one that I've mentioned already,
15 <u>Durruthy</u>.

16    Mr. Carlson's chief complaint was that that case is
17 very old.  It isn't.  It's a 2020 case.  And it draws the
18 distinction, the continuum I was referring to earlier,
19 between a situation where an employer requires an employee
20 to submit testimony, to submit documents, to submit to
21 employee controlled mediation, to go through four or five
22 steps before they can file an arbitration demand.

23    Versus, on the other end, in <u>Durruthy's</u> case, simply
24 submitting a form outlining the complaint, which the court
25 finds is appropriate and not unconscionable.

20

1      The final point --

2           THE COURT:  All right.

3           MR. MARAIS:  Sorry, your Honor.

4           THE COURT:  No, go ahead.  Make one last point.

5           MR. MARAIS:  My final point here, your Honor, is

6  that Mr. Carlson and Mr. Bielski keep arguing that Coinbase

7  would have no idea what its obligations were.  Mr. Carlson

8  said a minute ago that Coinbase has no obligation to

9  arbitrate its disputes.

10      That's simply not true.  The arbitration agreement is

11  very clear.  "You and we agree that any disputes arising out

12  of this agreement will be submitted to binding arbitration."

13  Coinbase has taken that position time and again in cases in

14  this district.  It's taken that position here.

15      And to the extent there were any doubt -- if Coinbase

16  hypothetically filed a complaint in federal court, which it

17  hasn't done, and a defendant moves to compel, to the extent

18  there were any doubt, the delegation provision is clear.

19  Any disputes about the scope or enforceability of the

20  arbitration agreement goes to an arbitrator.  And that would

21  be the result, as it should be here.

22           THE COURT:  All right.  I'm going to give each

23  side until Monday at noon -- today is Thursday -- to submit

24  any further briefing that you would like to give the Court

25  on this issue that I've raised about onerous preconditions.

1    And so I'd like to get -- up to five pages.  Each side
2  can have up to five pages.  And both are due at noon
3  simultaneously on Monday.  Okay?
4            MR. MARAIS:  Thank you, your Honor.
5            MR. CARLSON:  Your Honor, Matthew Carlson.  May I
6  just make one comment about that specifically?
7            THE COURT:  Sure.
8            MR. CARLSON:  I know you just said that they're
9  doing at noon on Monday simultaneously.  As we will be
10 leaving for international travel on Saturday, would the
11 Court be okay with me filing our brief on Saturday or
12 sooner?
13           THE COURT:  Yes, you can do that.  The other side
14 will get a, quote, "free peek."
15           MR. CARLSON:  Yes.
16           THE COURT:  But that's all right with me.
17    All right.  Okay.  You can do yours on Saturday and the
18 other side on Monday at noon.
19           MR. CARLSON:  Okay.  Thank you, your Honor.
20    And if the Court would allow me just one more comment
21 about counsel's last statement, I would appreciate it.  It
22 will take me 10 seconds.
23           THE COURT:  Go ahead.
24           MR. CARLSON:  Okay.  So the key language here in
25 the arbitration provision, which includes the delegation

22

1  provision, says "If we cannot resolve the dispute through

2  the formal complaint process."  That is the key language.

3  Because of that language, Coinbase has no obligation to

4  arbitrate its claims.

5      That's all.

6          THE COURT:  Thank you.  All right.  This will be

7  under submission when I get your additional briefs.

8      Thank you.

9          MR. CARLSON:  Thank you, your Honor.

10      (Proceedings adjourned at 1:34 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

23

1            CERTIFICATE OF TRANSCRIBER

2

3       I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9       I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14                   

15

16            Echo Reporting, Inc., Transcriber

17              Tuesday, March 22, 2022

18

19

20

21

22

23

24

25