United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABRAHAM BIELSKI,

         Plaintiff,

    v.

COINBASE, INC.,

         Defendant.

No.  C 21-07478 WHA

**ORDER RE MOTION TO COMPEL ARBITRATION**

## INTRODUCTION

In this action accusing defendant cryptocurrency exchange platform of violating the Electronic Funds Transfer Act and Regulation E, defendant moves to compel arbitration. Because the delegation clause and the broader arbitration provision are unconscionable for the same reasons, the motion is **DENIED**.

## STATEMENT

Defendant Coinbase, Inc. operates a currency exchange.  But beyond fiat currencies like dollars and yen, Coinbase also allows users to buy and trade in various forms of cryptocurrency.  Cryptocurrency is a decentralized, digital representation of value secured through cryptography.  Novelty and the lure of large returns have resulted in speculation in cryptocurrency like bitcoin and ethereum gaining mainstream popularity.  To that end, new

currency exchange platforms like Coinbase facilitate investment by allowing account holders to easily store their newly-acquired cryptocurrency in digital wallets.

Plaintiff Abraham Bielski created his Coinbase account in 2021. Unfortunately, he was soon targeted by a scammer who purported to be a PayPal representative. Bielski granted this unknown individual remote access to his Coinbase account, which the perpetrator used to transfer the equivalent of $31,039.06 out of Bielski's digital wallet (Bielski Decl. ¶¶ 6–7).

Bielski alleges that, after the scammer drained his account, he turned to Coinbase for help. He encountered a customer-service nightmare. Coinbase had become a large company with a market capitalization of $65 billion, 68 million users, and over two-thousand employees. But allegedly, its customer service remained meager and ineffective (Sec. Amd. Compl. ¶ 3 n.3). Upon realizing he had been swindled, Bielski initiated a "live chat" with a Coinbase representative, which turned out to be a mere bot that provided canned responses. Bielski then called the specific customer service "hotline" specified in his user agreement as where to get help for a compromised account. He was once again unable to speak with a human. Bielski then wrote two letters to Coinbase at its San Francisco office pleading for help. It was not until this lawsuit that Coinbase deigned to respond, albeit again with only automated inquiries (Bielski Decl. ¶ 8).

Bielski seeks to represent a class of similarly situated individuals with claims against Coinbase for violations of the Electronic Funds Transfer Act and Regulation E therein. Here, Coinbase moves to compel arbitration based on its user agreement. This order follows full briefing and oral argument.

## ANALYSIS

Pursuant to Section 2 of the Federal Arbitration Act, an agreement to submit a dispute to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The savings clause concluding Section 2 recognizes that arbitration agreements are subject to general contract principles. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

United States District Court
Northern District of California

1    Under the Act, a district court determines the two gateway issues of "whether a valid

2    arbitration agreement exists and, if so, whether the agreement encompasses the dispute at

3    issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

4    But the parties to an arbitration agreement can further agree to arbitrate these gateway issues so

5    long as the delegation is "clear and unmistakable." *Rent-A-Center, West, Inc. v. Jackson*, 561

6    U.S. 63, 69 n.1 (2010).

7    "Where a delegation provision exists, courts first must focus on the enforceability of that

8    specific provision, not the enforceability of the arbitration agreement as a whole." *Brice v.

9    Haynes Invs., LLC*, 13 F.4th 823, 827 (9th Cir. 2021).  Under California law, a contract

10   provision is unenforceable if it was "unconscionable at the time it was made."  Cal. Civ. Code

11   § 1670.5(a); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

12   Unconscionability has both procedural and substantive elements.  These elements are analyzed

13   on a sliding scale:  the more substantively unfair, the less procedurally unconscionable a

14   provision need be for a finding it is unenforceable, and vice-versa.  *Sanchez v. Valencia

15   Holding Co.*, 61 Cal. 4th 899, 910 (2015).  The party resisting arbitration bears the burden of

16   demonstrating unconscionability.  *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US),

17   LLC*, 55 Cal. 4th 223, 246–47 (2012).

18       **1.    UNCONSCIONABILITY.**

19   Bielski does not contest that he agreed to be bound by the Coinbase user agreement in

20   effect when he signed up for his user account, nor that it covers this dispute.  Instead, he argues

21   that the arbitration agreement is unconscionable because it lacks even a modicum of

22   bilaterality (Opp. 1).[*]

23   _____

24   [*] Coinbase requests judicial notice of the relevant user agreement as recorded in the Internet
     Archive's Wayback Machine (Dkt. No. 28).  Other courts in our district have previously taken

25   judicial notice of the contents of web pages available through the Wayback Machine as facts that
     can be accurately and readily determined from a source whose accuracy cannot reasonably be

26   questioned.  This order will do the same.  *See* Fed. R. Evid. 201; *Steinberg v. Icelandic Provisions,
     Inc.*, 2022 WL 220641, at *2 n.1 (N.D. Cal. Jan. 25, 2022) (Judge Edward M. Chen); *Arroyo v. IA

27   Lodging Santa Clara, LLC*, 2021 WL 2826707, at *2 (N.D. Cal. July 7, 2021) (Judge Lucy H.
     Koh); *Erickson v. Neb. Mach. Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) (Judge

28   James Donato).  The undersigned's previous order in *Doe v. Xytex Corp.*, 2016 WL 3902577, at
     *1 n.1 (N.D. Cal. July 16, 2016), involved concerns not present here.

United States District Court
Northern District of California

Under California law, substantive unconscionability relates to the fairness of an agreement's actual terms and assesses whether they are overly harsh or one-sided. Substantively unconscionable contract terms will shock the conscience. *See Pinnacle*, 55 Cal. 4th at 246. A delegation clause "may be found substantively unconscionable where it imposes an unfair burden that is different from the inherent features and consequences of delegation clauses." *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 246 (2015) (citation omitted); s*ee also Rent-A-Center*, 561 U.S. at 68–69.

A delegation clause lacking mutuality imposes an unfair burden that qualifies as unconscionable. "The paramount consideration in assessing substantive conscionability is mutuality." *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1281 (2004) (cleaned up, citation omitted). In other words, to be enforceable, a delegation provision, as well as an arbitration agreement generally, must have a "modicum" of bilaterality. *See Armendariz v. Found. Health Psycare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000).

Coinbase's user agreement contains a clear and unmistakable delegation clause that is expressly anchored in the defined term "Arbitration Agreement":

> This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge

(User Agreement § 8.3, Dkt. No. 28-1, emphasis omitted). This order focuses, at this point, "on the enforceability of the delegation provision specifically." *Brice*, 13 F.4th at 826.

Coinbase argues the delegation clause is bilateral because it states: "*All* such matters shall be decided by an arbitrator and not by a court or judge" (Reply Br. 5, quoting User Agreement § 8.3, emphasis added). But Coinbase does not address the relevancy of the preceding sentence in the provision as reflected above. The delegation clause as a whole does not *generally* delegate the arbitrability of *all* disputes between Coinbase and its users to the arbitrator. Rather, it *specifically* delegates arbitrability of the "Arbitration Agreement," an expressly defined term in the user agreement. Defined terms are given their defined meaning.

4

1    This order can only conclude that Coinbase's user agreement, as defined by Coinbase, means

2    what it says and that the defined terms therein govern its interpretation. *See Turlock Irrigation*

3    *Dist. v. FERC*, 903 F.3d 862, 872 (9th Cir. 2018); *Pemberton v. Nationstar Mortgage LLC*,

4    331 F. Supp. 3d 1018, 1037–38 (S.D. Cal. 2018) (Judge Cynthia Bashant); *Facebook, Inc. v.*

5    *Rankwave Co., Ltd.*, 2019 WL 8895237, at *4 (N.D. Cal. Nov. 14, 2019) (Judge Jon S. Tigar);

6    *Kanno v. Marwit Cap. Partners II, L.P.*, 18 Cal. App. 5th 987, 1011–12 (2017).

7            Consequently, whether the delegation clause imposes an unconscionable burden that

8    differs from a generic delegation clause requires backtracking through the nested provisions of

9    Coinbase's "Arbitration Agreement" and the tripartite dispute resolution procedure it sets out.

10   From the delegation clause, we must proceed to the arbitration provision itself, which defines

11   "Arbitration Agreement":

12              If we cannot resolve the dispute through the Formal Complaint
             Process, you and we agree that any dispute arising out of or
13              relating to this Agreement or the Coinbase Services . . . shall be
             resolved through binding arbitration, on an individual basis (the
14              "Arbitration Agreement")

15   (User Agreement § 8.3, emphasis omitted).  The defined term "Arbitration Agreement"

16   incorporated into the delegation clause thus explicitly includes the precondition of engagement

17   in the "Formal Complaint Process," another defined term.

18            The Formal Complaint Process is laid out in Section 8.2 of the user agreement (emphasis

19   omitted):

20              Formal Complaint Process.  If you have a dispute with Coinbase (a
             "Complaint"), you agree to contact Coinbase through our support
21              team to attempt to resolve any such dispute amicably.  If we cannot
             resolve the dispute through the Coinbase support team, you and
22              we agree to use the Formal Complaint Process set forth below.
             You agree to use this process before filing any arbitration claim or
23              small claims action.  If you do not follow the procedures set out in
             this Section before filing an arbitration claim or suit in small
24              claims court, we shall have the right to ask the arbitrator or small
             claims court to dismiss your filing unless and until you complete
25              the following steps.

26   The Formal Complaint Process thus includes its own antecedent requirement of an informal

27   attempt to resolve the complaint with Coinbase's support team.  Should that fail to resolve the

28   issue, the formal process requires users (upon pain of dismissal) to file a complaint form, upon

which, within fifteen business days (and no later than thirty-five business days), Coinbase will: (1) resolve the dispute as requested; (2) reject the complaint and explain why; or (3) provide an alternative solution (*id.* §§ 8.2.1, 8.2.2).

To sum up then, like nesting boxes, the delegation clause incorporates several defined terms that specify the matters delegated to the arbitrator. The defined terms outline the user agreement's tripartite dispute resolution procedure. *First*, the user must contact Coinbase's support team. *Second*, should that fail, upon pain of dismissal, the user must pursue the formal complaint process. *Third*, should that process fail to resolve the grievance then, and only then, may the consumer seek arbitration.

The plain language of the informal and formal complaint procedures prior to arbitration only contemplates complaints raised by the consumer, not by Coinbase. The informal complaint process specifies "If *you* have a dispute *with Coinbase* (a "Complaint"), *you* agree to contact Coinbase" (User Agreement § 8.2, emphasis added). The formal complaint process states that, if the informal process fails, "*you and we agree* to use the Formal Complaint Process set forth below" (*ibid.*, emphasis added). But only the *user* is required to file a formal complaint upon pain of dismissal, and the procedures for handling a formal complaint outlined in the agreement anticipate only a user's complaint and Coinbase's eventual response, not the reverse scenario.

The "Arbitration Agreement" in the user agreement imposes no obligation on Coinbase to arbitrate. Using a litigation gimmick, Coinbase contends that the arbitration agreement itself is "explicitly bilateral" (Reply Br. 5), pointing to the language "you and we agree that any dispute arising out of or relating to this Agreement or the Coinbase Services . . . shall be resolved by binding arbitration" (User Agreement § 8.3). But Coinbase conspicuously ignores the introductory clause preceding the very language it cites. The full sentence states: "If *we* cannot resolve the dispute through the Formal Complaint Process, *you and we* agree that any dispute arising out of or relating to this Agreement or the Coinbase Services . . . shall be resolved by binding arbitration, on an individual basis (the "Arbitration Agreement")" (*ibid.*, emphasis added). Coinbase noted the latter clause multiple times in the hearing. Not once,

6

however, did counsel acknowledge the preceding clause, opting to simply start in the middle of the sentence.

The arbitration provision as a whole addresses only those disputes that have previously gone through the pre-arbitration complaint procedure. Because only Coinbase users can raise a complaint though the pre-arbitration complaint procedure, the arbitration provision imposes no obligation on Coinbase itself to submit its disputes with users to binding arbitration. Two further points support this conclusion.

*First*, Coinbase's interpretation renders the first clause of the arbitration provision surplusage. This is problematic especially because the first clause contains a defined term and informs the meaning of the second clause of the sentence, the clause that Coinbase relies upon. "[W]hen courts construe an instrument, a judge is not to insert what has been omitted, or to omit what has been inserted." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 954 (2008) (quotation omitted); *see also U.S. v. 1.377 Acres of Land*, 352 F.3d 1259, 1265–66 (9th Cir. 2003); *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 278–79 (9th Cir. 1992).

*Second*, the rest of Section 8.3 (like the first clause that Coinbase ignores) only imposes obligations on the user. The arbitration provision continues:

> Subject to applicable jurisdictional requirements, you may elect to pursue your claim in your local small claims court rather than through arbitration so long as your matter remains in small claims court and proceeds only on an individual (non-class and non-representative) basis. Arbitration shall be conducted in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes

(User Agreement § 8.3, emphasis omitted). The further specifics described in this passage do not say the user *and* Coinbase may elect to pursue their claim in small claims court. It singles out the user once again and subjects them to the low-dollar limits of small claims court. Thus, Coinbase would interpret Section 8.3 to at first apply only to the user (the informal and formal complaints), then apply to both parties (arbitration), and then go back to only applying to the user (small claims court). This order finds such a variable interpretation untenable. A plain reading of the user agreement, in contrast, construes the "Arbitration Agreement," as defined

7

1    by Coinbase, to be explicitly conditioned upon use of the "Formal Complaint Process," and

2    only users must submit to that procedure.  Because the delegation clause imposes no

3    requirements on Coinbase, it lacks the requisite modicum of bilaterality.

4          Although the user agreement lacks mutuality, our analysis continues.  The California

5    Supreme Court has "confirmed that a one-sided contract is not necessarily unconscionable."

6    *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1030–31 (9th Cir. 2016).  Pre-arbitration dispute

7    procedures can recite legitimate "extra protection" for the stronger party and present

8    "laudable" mechanisms to resolve disputes informally.  Pretextual or unduly onerous

9    preconditions to arbitration, however, remain substantively unconscionable.  *See Baltazar v.*

10   *Forever 21, Inc.*, 62 Cal. 4th 1237, 1250 (2016); *Nyulassy*, 120 Cal. App. 4th at 1282–83.

11         Coinbase asserts that its "Formal Complaint Process is a far cry from the cumbersome,

12   lopsided pre-arbitration procedures" found unconscionable in other decisions (Reply Br. 9;

13   Dkt. No. 38).  The opinions Coinbase cites, however, analyzed employment contracts and

14   other, similar agreements.  *See, e.g.*, *Pokorny*, 601 F.3d at 991–92 ("independent business

15   owners"); *Nyulassy*, 120 Cal. App. 4th at 1282 (employment); *Serpa v. Cal. Sur. Investigations,*

16   *Inc.*, 215 Cal. App. 4th 695, 699, 710 (2013) (employment).

17         In contrast to the more substantial relationship between employee and employer, the

18   Coinbase user agreement governs a less formal, less particularized, consumer relationship.  An

19   unconscionability determination is highly context-specific, where the context "includes both

20   the commercial setting and purpose of the arbitration contract and any procedural

21   unconscionability in its formation."  *OTO, LLC v. Kho*, 8 Cal. 5th 111, 136 (2019); *see also De*

22   *La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 984 (2018).  As discussed, Coinbase's tripartite

23   complaint process requires users to jump through multiple, antecedent hoops before initiating

24   arbitration.  This order pauses to note the agreement also mentions a separate "hotline" for

25   users to call if their account is compromised, a further checkbox for a user who has seen their

26   account drained.  There is no legitimate commercial need for this many burdensome obstacles

27   prior to arbitrating disputes relating to a basic user agreement for services like those provided

28   by Coinbase.  *See Aremendariz*, 24 Cal. 4th at 117–18; *Pokorny*, 601 F.3d at 998–1000.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1    The lack of mutuality in Coinbase's complaint process is expressly incorporated into the

2  delegation clause via defined terms.  In other words, the delegation clause only delegates

3  questions of arbitrability that emerge from the user agreement's tripartite dispute-resolution

4  procedure, not arbitration, generally.  Because the delegation clause imposes an onerous, unfair

5  burden beyond that of a typical delegation clause, this order finds it substantively

6  unconscionable.

7                                    *         *         *

8    We turn next to procedural unconscionability.  Procedural unconscionability addresses

9  the circumstances of contract negotiation and formation and concentrates on two factors:

10 oppression and surprise.  *Pinela*, 238 Cal. App. 4th at 243.  "Oppression occurs where a

11 contract involves lack of negotiation and meaningful choice, surprise where the allegedly

12 unconscionable provision is hidden within a prolix printed form."  *Morris v. Redwood Empire*

13 *Bancorp*, 128 Cal. App. 4th 1305, 1317 (2005) (quotation and citation omitted).

14    *First*, considering oppression, the user agreement here clearly qualifies as a contract of

15 adhesion — a "standardized contract, which, imposed and drafted by the party of superior

16 bargaining strength, relegates to the subscribing party only the opportunity to adhere to the

17 contract or reject it."  *Pinela*, 238 Cal. App. 4th at 242 (quotation omitted).  Coinbase drafted

18 and presented the user agreement to Bielski on a take-it-or-leave-it basis, which deprived him

19 of both the ability to negotiate and meaningful choice.

20    *Second*, this order recognizes that, under the prevailing law, consumers can be forced to

21 arbitrate even federal claims that Congress has expressly authorized for the federal district

22 court.  But even though a federal claim for relief can be forced into arbitration, this order holds

23 that the "right" to arbitrate may not be further conditioned on onerous procedural

24 preconditions, as here employed.  For example, the user agreement recites:  "If you do not

25 follow the procedures set out in this Section before filing an arbitration claim or suit in small

26 claims court, we shall have the right to ask the arbitrator or small claims court to dismiss your

27 filing unless and until you complete the following [pre-arbitration complaint] steps" (User

28

                                              9

1    Agreement § 8.2).  This order finds that such a broad prohibition on access to formal resolution

2    procedures would surprise the average consumer for this type of service.

3        Again, the procedural unconscionability of the user agreement's dispute resolution

4    procedure is expressly incorporated into the delegation clause.  Coinbase does not contest the

5    user agreement contains at least some level of procedural unconscionability (Reply Br. 4).

6    This order concludes that, given the level of substantive unconscionability inherent in the

7    delegation clause previously discussed, the level of procedural unconscionability merits the

8    finding that the delegation clause is unconscionable and, thus, unenforceable.

9        Having found the delegation clause unenforceable, this order must consider whether the

10   arbitration agreement as a whole is unenforceable.  *See Pinela*, 238 Cal. App. 4th at 250.  Our

11   court of appeals has stated that "*Rent-A-Center* contemplate[d] that a delegation provision may

12   be unenforceable for the same reason as the broader arbitration agreement." *Brice*, 13 F.4th at

13   827.  Because of the manner in which Coinbase crafted its user agreement, all the analysis

14   above regarding the delegation clause applies to the arbitration agreement, generally.  *See*

15   *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 422 (N.D. Cal. 2015).  The "Arbitration

16   Agreement" imposes a burdensome and unfair pre-arbitration dispute process on users and

17   sends their complaints, but not Coinbase's complaints, to binding arbitration.  This order finds

18   the arbitration agreement as a whole unconscionable and, hence, unenforceable.

19       **2.    SEVERANCE.**

20       Finally, having determined that the delegation clause and the arbitration provision as a

21   whole are unconscionable, this order must consider the possibility of severance.

22       California Civil Code Section 1670.5(a) provides:

23           If the court as a matter of law finds the contract or any clause of
             the contract to have been unconscionable at the time it was made
24           the court may refuse to enforce the contract, or it may enforce the
             remainder of the contract without the unconscionable clause, or it
25           may so limit the application of any unconscionable clause as to
             avoid any unconscionable result.
26

27   In *Armendariz*, the California Supreme Court explained:  "the statute appears to give a trial

28   court some discretion as to whether to sever or restrict the unconscionable provision or whether

United States District Court
Northern District of California

1    to refuse to enforce the entire agreement. But it also appears to contemplate the latter course

2    only when an agreement is 'permeated' by unconscionability."  24 Cal. 4th at 122.

3          Here, unilaterality pervades both the delegation clause and the arbitration agreement as a

4    whole.  As explained above, the relevant provisions of the user agreement's dispute resolution

5    procedure employ defined terms such that the various provisions outlining the informal

6    complaint, formal complaint, and arbitration procedures are nested one inside the other.  The

7    formal and informal complaint processes precondition arbitration.  Unilaterality, accordingly,

8    permeates the whole. The arbitration agreement is "simply too tainted to be saved through

9    minor adjustments."  *Pokorny*, 601 F.3d at 1005.

10         Coinbase would have this order strike the phrase "If we cannot resolve the dispute

11   through the Formal Complaint Process," which would leave:  "[Y]ou and we agree that any

12   dispute arising out of or relating to this arbitration agreement . . . shall be resolved through

13   binding arbitration, on an individual basis (the "Arbitration Agreement")" (Reply Br. 11).  In

14   effect, Coinbase asks this order to revise a term Coinbase itself defined, "Arbitration

15   Agreement."  As explained above, defined terms govern the interpretation of the contract, so

16   this change would rewrite the dispute resolution procedure the user agreement sets out.  This

17   order "strive[s] to interpret the parties' agreement to give effect to *all* of a contract's terms."

18   *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1507 (2013) (emphasis added).  Coinbase's

19   suggestion is a non-starter and the inability to cleanly remove the unconscionable language

20   weighs against severance.  *See Pinela*, 238 Cal. App. 4th at 256.  Coinbase's revision,

21   moreover, would have little efficacy:  another provision in the contract similarly requires the

22   user "to agree to use this [pre-arbitration] process before filing any arbitration claim or small

23   claim action" (User Agreement ¶ 8.2).  The inclusion of the requirement for users to engage in

24   an onerous pre-arbitration procedure in multiple provisions further indicates that severance is

25   not possible here.  *See Nyulassy*, 120 Cal. App. 4th at 1287.  This order further notes that

26   Coinbase's proposed change would be binding only in this case and would leave Coinbase free

27   to insist on its burdensome and one-way preconditions in all other cases.  In short, severance is

28   not feasible.

United States District Court
Northern District of California

11

## CONCLUSION

For the reasons stated, Coinbase's motion to compel arbitration is **DENIED**.

**IT IS SO ORDERED.**

Dated:  April 8, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE