1    KEKER, VAN NEST & PETERS LLP
     STEVEN P. RAGLAND - # 221076
2    sragland@keker.com
     NICHOLAS D. MARAIS - # 277846
3    nmarais@keker.com
     W. HAMILTON JORDAN - # 295004
4    wjordan@keker.com
     ROBYN A. PARISER - # 335017
5    rpariser@keker.com
     633 Battery Street
6    San Francisco, CA 94111-1809
     Telephone:    415 391 5400
7    Facsimile:    415 397 7188

8    Attorneys for Defendant COINBASE, INC.

9                        UNITED STATES DISTRICT COURT

10                     NORTHERN DISTRICT OF CALIFORNIA

11                          SAN FRANCISCO DIVISION

12   ABRAHAM BIELSKI, on behalf of himself        Case No. 3:21-cv-07478-WHA
     and all others similarly situated,
13                                                 **DEFENDANT COINBASE, INC.'S**
                    Plaintiffs,                     **NOTICE OF MOTION AND MOTION**
14                                                 **TO STAY PENDING APPEAL;**
            v.                                     **MEMORANDUM OF POINTS AND**
15                                                 **AUTHORITIES IN SUPPORT THEREOF**
     COINBASE, INC.
16                                                 Date:      June 9, 2022
                    Defendant.                     Time:      8:00 a.m.
17                                                 Dept:      Courtroom 12 – 19th Floor
                                                   Judge:     Hon. William Alsup
18
                                                   Date Filed: September 24, 2021
19
                                                   Trial Date:  None set
20

21

22

23

24

25

26

27

28

1842249

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................- 1 -

I.      INTRODUCTION ................................................................................................- 1 -

II.     BACKGROUND ..................................................................................................- 2 -

III.    LEGAL STANDARD............................................................................................- 3 -

IV.     ARGUMENT .......................................................................................................- 4 -

      A.      Coinbase's appeal has a sufficient likelihood of success on the merits..............- 5 -

          1.      Coinbase's appeal raises "serious legal questions" and presents "a substantial case on the merits" about whether the Court decided questions that the UA delegated to an arbitrator....................................- 6 -

          2.      Coinbase's appeal raises "serious legal questions" and presents a "substantial case on the merits" about whether the UA's pre-arbitration procedure is unconscionable. ................................................- 8 -

          3.      If the Ninth Circuit finds any provision of the UA unconscionable, Coinbase's appeal presents "a substantial case on the merits" regarding severability.................................................................- 11 -

      B.      Coinbase will suffer irreparable harm absent a stay. ........................................- 12 -

      C.      Mr. Bielski will suffer no cognizable harm from a stay pending appeal..........- 15 -

      D.      The public interest favors a stay. ......................................................................- 15 -

V.      CONCLUSION...................................................................................................- 16 -

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ali v. JP Morgan Chase Bank*,
  2014 WL 12691084 (N.D. Cal. Mar. 10, 2014)..........................................................4, 13

*Am. Exp. Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)...................................................................................................14

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).....................................................................................................1

*Aviles v. Quik Pick Express, LLC*,
  2016 WL 6902458 (C.D. Cal. Jan. 25, 2016) .........................................................4, 15

*Berk v. Coinbase, Inc.*,
  840 F. App'x 914 (9th Cir. 2020) .................................................................................4

*Berk v. Coinbase, Inc.*,
  No. 18-cv-01364-VC, 2019 WL 3561926 (N.D. Cal. Aug. 6, 2019) ...........................4

*Blinco v. Green Tree Servicing, LLC*,
  366 F.3d 1249 (11th Cir. 2004) ...................................................................................5

*Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*,
  128 F.3d 504 (7th Cir. 1997) .......................................................................................5

*Brice v. Haynes Invs., LLC*,
  13 F.4th 823 (9th Cir. 2021) .................................................................................6, 7, 8

*Britton v. Co-op Banking Grp.*,
  916 F.2d 1405 (9th Cir. 1990) .....................................................................................5

*Brown v. MHN Gov't Servs., Inc.*,
  2014 WL 2472094 (N.D. Cal. June 3, 2014) ................................................................3

*Ehleiter v. Grapetree Shores, Inc.*,
  482 F.3d 207 (3d Cir. 2007).........................................................................................5

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)......................................................................................................16

*Gray v. Golden Gate Nat. Recreational Area*,
  2011 WL 6934433 (N.D. Cal. Dec. 29, 2011)............................................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019)...................................................................................................7

*Ingle v. Cir. City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) ...............................................................................8

*Int'l Ass'n of Machinsts & Aerospace Workers v. Aloha Airlines*,
  776 F.2d 812 (9th Cir. 1985) ...............................................................................12

*Kaltwasser v. Cingular Wireless, LLC*,
  2010 WL 2557379 (N.D. Cal. June 21, 2010) ......................................................14

*Lei v. Amway Corp.*,
  2014 WL 12596787 (C.D. Cal. July 23, 2014) .....................................................10

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ..................................................................... *passim*

*Levin v. Alms & Assocs., Inc.*,
  634 F.3d 260 (4th Cir. 2011) .................................................................................5

*Marks v. Bridgestone Americas, Inc.*,
  2015 WL 13919149 (C.D. Cal. Nov. 16, 2015).....................................................10

*McGhee v. N. Am. Bancard, LLC*,
  2018 WL 11267348 (S.D. Cal. Feb. 6, 2018) ...................................................4, 15

*Mohamed v. Uber Techs.*,
  115 F. Supp. 3d 1024 (N.D. Cal. 2015) .............................................................4, 6

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ................................................................................6

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ...................................................................................................15

*Motorola Credit Corp. v. Uzan*,
  388 F.3d 39 (2d Cir. 2004)......................................................................................5

*Mundi v. Union Security Life Ins. Co.*,
  2007 WL 2385069 (E.D. Cal. Aug. 17, 2007) ......................................................15

*Murphy v. DirecTV, Inc.*,
  2008 WL 8608808 (C.D. Cal. July 1, 2008).........................................................13

*Nken v. Holder*,
  556 U.S. 418 (2009)..........................................................................................14, 15

*Perez v. DirecTV Grp. Holdings, LLC*,
  2017 WL 8117452 (C.D. Cal. Sept. 22, 2017) .......................................................4

*Pokorny v. Quixtar Inc.*,
  2008 WL 1787111 (N.D. Cal. Apr. 17, 2008) ................................................13, 16

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)................................................................................6, 8

*Revitch v. DirecTV, LLC*,
    2018 WL 5906077 (N.D. Cal. Nov. 9, 2018) ...........................................3

*Richards v. Ernst & Young LLP*,
    2012 WL 92738 (N.D. Cal. Jan. 11, 2012).........................................4, 16

*Roe v. SFBSC Mgmt., LLC*,
    2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) .................................2, 3, 13

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)...............................................................................12

*Taft v. Henley Enters., Inc.*,
    2016 WL 9448485 (C.D. Cal. Mar. 2, 2016) .........................................10

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
    2018 WL 6074573 (C.D. Cal. Mar. 8, 2018)...........................................4

*Ward v. Estate of Goossen*,
    2014 WL 7273911 (N.D. Cal. Dec. 22, 2014) ...............................3, 14, 15

*Weingarten Realty Invs. v. Miller*,
    661 F.3d 904 (5th Cir. 2011) ..................................................................5

*Winig v. Cingular Wireless LLC*,
    2006 WL 3201047 (N.D. Cal. Nov. 6, 2006) ...............................2, 15, 16

*Wuest v. Comcast Cable Commc'ns Mgmt., LLC*,
    2017 WL 5569819 (N.D. Cal. Nov. 20, 2017) ....................................3, 13

*Zaborowski v. MHN Gov't Servs., Inc.*,
    2013 WL 1832638 (N.D. Cal. May 1, 2013) .............................2, 4, 13, 15

**State Cases**

*Baltazar v. Forever 21, Inc.*,
    62 Cal. 4th 1237 (2016) .....................................................................9, 10

*Barati v. Ottno, Inc.*,
    2018 WL 3099015 (Cal. Ct. App. June 25, 2018) (unpublished)...........10

*Nyulassy v. Lockheed Martin Corp.*,
    120 Cal. App. 4th 1267 (2004) ...........................................................9, 10

*Ontiveros v. DHL Express (USA), Inc.*,
    164 Cal. App. 4th 494 (2008) ................................................................11

*Sanchez v. Carmax Auto Superstores Cal., LLC,*
    224 Cal. App. 4th 398 (2014) .................................................................................................10

**Federal Statutes**

9 U.S.C. § 16(a)(1)(A) .................................................................................................1, 4, 5

1      **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

2        PLEASE TAKE NOTICE that on June 9, 2022, at 8:00 a.m., or as soon thereafter as this

3 matter may be heard, in the courtroom of the Honorable William Alsup, located in Courtroom 12,

4 19th Floor of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102,

5 Defendant Coinbase, Inc. ("Coinbase") will and hereby does move this Court for an order staying

6 all proceedings in the district court pending appeal of the Court's April 8, 2022 Order Denying

7 Motion to Compel Arbitration (Dkt. 42). Coinbase's motion is based upon this Notice of Motion,

8 the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this

9 action, and such other argument and evidence as may be presented to this Court prior to or at the

10 hearing on this matter.

11

12 Dated: May 5, 2022                             KEKER, VAN NEST & PETERS LLP

13

14                                 By:    */s/ Nicholas D. Marais*

15                                      STEVEN P. RAGLAND
                                     NICHOLAS D. MARAIS

16                                      W. HAMILTON JORDAN
                                     ROBYN A. PARISER

17                                      Attorneys for Defendant COINBASE, INC.

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT COINBASE, INC.'S NOTICE OF MOTION AND MOTION TO STAY PENDING APPEAL
Case No. 3:21-cv-07478-WHA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

District courts in California routinely grant stays pending the appeal of an order denying a motion to compel arbitration—especially where, as here, the litigation is still in its earliest stages and the balance of hardships tips sharply in favor of a stay.  Coinbase respectfully requests that this Court do the same.

Coinbase moved to compel arbitration because the parties agreed, in the User Agreement ("UA"), that "any dispute . . . arising out of or relating to" the UA or Coinbase's Services "shall be resolved by binding arbitration."  On April 8, 2022, this Court denied Coinbase's motion, finding the arbitration provision in the parties' agreement unconscionable.  *See* Dkt. 42 ("Order").  Pursuant to 9 U.S.C. § 16(a)(1)(A), Coinbase has appealed the Court's order.  Dkt. 43.  There is at least a "fair prospect" that the Ninth Circuit will take a different view as to whether: (1) this matter—and any disputes about the arbitrability of this matter—should have been decided by an arbitrator, not the Court; (2) the UA's express delegation provision is so unconscionable as to be unenforceable; and (3) any issues the Court identified with the UA could have been cured through severance.  Given the importance of these questions, the dearth of case law supporting Mr. Bielski's arguments, the ubiquity of consumer arbitration agreements like the one here, and the substantial irreparable harm Coinbase would face otherwise, Coinbase respectfully requests that the Court stay these proceedings until the Ninth Circuit resolves its appeal.

There is no doubt that Coinbase would be irreparably harmed if it is forced to continue litigating here while the Ninth Circuit adjudicates its appeal.  Allowing district court proceedings to continue while this appeal is pending would deprive Coinbase of the "efficient, streamlined" arbitration process to which the parties agreed.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see also* Order at 3 ("Bielski does not contest that he agreed to be bound by the Coinbase user agreement in effect when he signed up for his user account, nor that it covers this dispute.").[1]  This is especially so because the scope of motions practice and discovery permitted in a district court is significantly broader than that agreed to by the parties under the American

---

[1] All internal marks and citations have been removed and emphasis added, except where noted.

Arbitration Association's Consumer Rules—and because Mr. Bielski now purports to represent a putative class, despite agreeing in the UA that he would proceed only on an individual basis. *See Roe v. SFBSC Mgmt., LLC*, 2015 WL 1798926, at *3 (N.D. Cal. Apr. 17, 2015) ("The burdens associated with discovery in a putative class action are substantially greater than in an individual arbitration.").

Mr. Bielski, by contrast, will not be injured from a stay—much less "substantially injure[d]," as the caselaw requires—because any theoretical injury from a stay "can be redressed by an award of damages if plaintiff ultimately prevails." *Winig v. Cingular Wireless LLC*, 2006 WL 3201047, at *2 (N.D. Cal. Nov. 6, 2006). There is no ongoing alleged harm that Mr. Bielski seeks to remedy—only a claim for past damages. This is exactly the kind of case where a stay makes sense: "this case is still in its earliest stages, relief through the court system often takes a long time, and the delay may be mitigated by remedies such as prejudgment interest." *Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 1832638, at *3 (N.D. Cal. May 1, 2013). Coinbase requests that the Court stay these proceedings until its appeal is resolved.

## II.     BACKGROUND

Plaintiff Abraham Bielski filed the operative complaint on November 19, 2021. *See* Dkt. 22 ("SAC"). On January 13, 2022, Coinbase moved to compel Mr. Bielski to submit this dispute to individual arbitration in accordance with the UA. *See* Dkt. 26.

On February 10, 2022, Mr. Bielski opposed Coinbase's motion. *See* Dkt. 29. In his opposition brief, Mr. Bielski did not dispute that he agreed to be bound by the UA, that the UA contained a clear arbitration agreement with a delegation provision, or that his claims all fell within the scope of the arbitration agreement. *See generally id.* Instead, Mr. Bielski argued that he should not be compelled to arbitrate because (1) the arbitration agreement was unilateral and therefore unconscionable, and (2) a "condition precedent to arbitration" never occurred because Mr. Bielski *chose* not to submit his dispute through Coinbase's Formal Complaint Process. *See id.* at 1–2. Coinbase filed its reply on February 24, 2022. *See* Dkt. 30.

On March 10, 2022, the Court heard oral argument on the motion and requested supplemental briefing on one discrete issue: whether the two pre-arbitration steps required by the

1   UA, which require users to first contact customer service and then submit a short complaint form

2   online before turning to arbitration, might be so "onerous" as to render the dispute-resolution

3   provisions of the UA unconscionable with respect to Mr. Bielski.  On March 14, 2022, the parties

4   filed their supplemental briefs.  *See* Dkts. 38, 39.

5       On April 8, 2022, this Court issued an Order denying Coinbase's motion to compel.  The

6   Court acknowledged that there was no dispute "that [Mr. Bielski] agreed to be bound by the

7   Coinbase user agreement in effect when he signed up for his user account, nor that it covers this

8   dispute."  *See* Order at 3.  However, the Court found the arbitration agreement and delegation

9   provision unconscionable, and therefore unenforceable, because (1) the delegation provision

10  "lacks the requisite modicum of bilaterality," (2) "there is no legitimate commercial need" for the

11  pre-arbitration procedures—contacting customer support and completing an online form

12  describing the complaint—required by the UA, and (3) "severance is not feasible."  *Id.* at 8:3,

13  8:26–27, 11:27–28.

14  **III.    LEGAL STANDARD**

15      In determining whether to grant a stay pending appeal of the denial of a motion to compel

16  arbitration, district courts in this circuit consider: (1) whether the movant has shown a sufficient

17  likelihood of success on the merits of the appeal; (2) whether the movant will be irreparably

18  injured absent a stay; (3) whether the stay will substantially injure the other parties interested in

19  the proceeding; and (4) whether the public interest favors a stay.  *See Leiva-Perez v. Holder*, 640

20  F.3d 962, 964 (9th Cir. 2011); *see also, e.g.*, *Roe v. SFBSC Mgmt., LLC*, 2015 WL 1798926, at

21  *1–2 (N.D. Cal. Apr. 17, 2015) (applying the *Leiva-Perez* four-factor test); *Brown v. MHN Gov't

22  Servs., Inc.*, 2014 WL 2472094, at *2 (N.D. Cal. June 3, 2014) (same).  The Ninth Circuit weighs

23  all four factors on a "continuum," under which "a stronger showing of one element may offset a

24  weaker showing of another."  *Leiva-Perez*, 640 F.3d at 964.

25      District courts in California regularly grant complete stays of all proceedings pending

26  appeal of an order denying a motion to compel arbitration.  *See, e.g.*, *Revitch v. DirecTV, LLC*,

27  2018 WL 5906077, at *2 (N.D. Cal. Nov. 9, 2018), *Wuest v. Comcast Cable Commc'ns Mgmt.,

28  LLC*, 2017 WL 5569819, at *2 (N.D. Cal. Nov. 20, 2017); *Ward v. Estate of Goossen*, 2014 WL

7273911, at *5 (N.D. Cal. Dec. 22, 2014); *Zaborowski*, 2013 WL 1832638, at *3; *Richards v. Ernst & Young LLP*, 2012 WL 92738, at *5 (N.D. Cal. Jan. 11, 2012); *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, 2018 WL 6074573, at *3 (C.D. Cal. Mar. 8, 2018); *Perez v. DirecTV Grp. Holdings, LLC*, 2017 WL 8117452, at *3 (C.D. Cal. Sept. 22, 2017); *Aviles v. Quik Pick Express, LLC*, 2016 WL 6902458, at *4 (C.D. Cal. Jan. 25, 2016); *McGhee v. N. Am. Bancard, LLC*, 2018 WL 11267348, at *3 (S.D. Cal. Feb. 6, 2018).

As a compromise measure, federal courts in California sometimes permit *limited* discovery while the appeal is pending, restricting discovery to that which would be available to the parties in the relevant arbitral forum. *See, e.g.*, *Mohamed v. Uber Techs.*, 115 F. Supp. 3d 1024, 1029 (N.D. Cal. 2015); *Ali v. JP Morgan Chase Bank*, 2014 WL 12691084, at *2 (N.D. Cal. Mar. 10, 2014). For instance, in *Berk v. Coinbase, Inc.*, Judge Chhabria denied Coinbase's motion to compel arbitration after finding that (1) a different, earlier version of Coinbase's user agreement did not "clearly and unmistakably delegate the question of arbitrability to the arbitrator," and (2) the plaintiff's claims did not "arise under" that agreement. *Berk v. Coinbase, Inc.*, No. 18-cv-01364-VC ("*Berk* matter"), 2019 WL 3561926, at *1 (N.D. Cal. Aug. 6, 2019). But, recognizing that these were "close questions," Judge Chhabria stayed discovery in those proceedings—except as to "issues/material that would be used in arbitration"—pending appellate review. *See* Dkt. 82, *Berk* matter (Minute Entry (Aug. 21, 2019)). In *Berk*, the Ninth Circuit ultimately "reverse[d] the district court's order denying Coinbase's motion to compel arbitration and remand[ed] with instructions to compel arbitration." *Berk v. Coinbase, Inc.*, 840 F. App'x 914, 916 (9th Cir. 2020).

## IV.   ARGUMENT

There are significant statutory and pragmatic reasons for an automatic stay in situations like this one. Indeed, the federal appellate courts are split on whether such a stay is mandatory—and most have concluded that, after a motion to compel arbitration is denied and a defendant appeals, all district court proceedings *must* immediately be stayed. The FAA permits interlocutory appeals from the denial of such a motion. *See* 9 U.S.C. § 16(a)(1)(A). And, "[a]s a general rule, the filing of an appeal 'confers jurisdiction on the court of appeals and divests the

district court of its control over those aspects of the case involved in the appeal.'" *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)).  Continuing in the district court will necessarily touch on the "aspect of the case" that is up on appeal—whether this dispute belongs in federal court at all.  As a result, the majority of circuits have all recognized that a non-frivolous appeal under 9 U.S.C. § 16(a)(1)(A) divests the district court of jurisdiction during appeal, holding that all trial-court proceedings must be stayed while the appeal is pending.  *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007); *Levin*, 634 F.3d at 263; *Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504 (7th Cir. 1997); *McCauley v. Halliburton Energy Servs.*, Inc., 413 F.3d 1158 (10th Cir. 2005); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249 (11th Cir. 2004).  In other circuits, including the Ninth Circuit, district courts have discretion to determine whether a stay is appropriate in each particular case.  *See, e.g.*, *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004); *Weingarten Realty Invs. v. Miller*, 661 F.3d 904 (5th Cir. 2011); *Britton v. Co-op Banking Grp.*, 916 F.2d 1405 (9th Cir. 1990).  Of course, the logic that *mandates* a stay in other circuits—that the issue on appeal affects the rest of the proceedings— counsels in favor of one here, too.  Plainly, this Court is bound by Ninth Circuit precedent, which gives it discretion to consider whether (and to conclude that) a stay is appropriate.  However, if the Court ultimately denies this motion, Coinbase preserves this argument—that a stay here should be mandatory—for appeal.

In any event, this Court should exercise its discretion to stay these proceedings because, here, all four factors considered in this circuit weigh in Coinbase's favor: (1) Coinbase's appeal has a sufficient likelihood of success on the merits; (2) Coinbase will be irreparably injured absent a stay; (3) Mr. Bielski will not be substantially injured by a stay; and (4) a stay is in the public interest.  *See Leiva-Perez*, 640 F.3d at 964.

### A.    Coinbase's appeal has a sufficient likelihood of success on the merits.

To obtain a stay, a movant need only demonstrate a "minimum quantum of likely success"—that is, that its appeal has a "'reasonable probability' or 'fair prospect'" of success, presents "a substantial case on the merits," *or* raises "serious legal questions." *Leiva-Perez*, 640

F.3d at 967–68; *see also Mohamed v. Uber Techs., et al*, 115 F. Supp. 3d 1024, 1028 (N.D. Cal. 2015) ("[T]he moving party can attempt to satisfy the first factor by showing that its appeal raises 'serious legal questions,' even if the moving party has only a minimal chance of prevailing on these questions.").  The Ninth Circuit calls each of these formulations "essentially interchangeable," and emphasizes that "none of them demand a showing that success is more likely than not." *Leiva-Perez*, 640 F.3d at 967–68.

> **1.   Coinbase's appeal raises "serious legal questions" and presents "a substantial case on the merits" about whether the Court decided questions that the UA delegated to an arbitrator.**

In its Order, this Court recognized that the Coinbase UA contains an arbitration agreement with a "clear and unmistakable delegation clause." Order at 4:14.  That delegation clause provides that "all" questions about the "enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement . . . shall be decided by an arbitrator and not by a court or judge." UA § 8.3; *see also* Order at 4:14–20 (noting that this section of the UA constitutes the delegation provision); *Brice v. Haynes Invs., LLC*, 13 F.4th 823, 837–38 (9th Cir. 2021) ("[B]oth Congress and the Supreme Court have instructed us to respect agreements to arbitrate just as any other contractual agreement.").  Indeed, where an arbitration agreement contains a delegation provision, as the UA does, courts may only consider those arguments that "go to the validity of the delegation provision" itself and not challenges to other parts of the agreement or to the agreement as a whole.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("[U]nless [the plaintiff] challenged the delegation provision specifically, we must treat it as valid . . . , leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *see also Brice*, 13 F.4th at 827 ("Where a delegation provision exists, courts first must focus on the enforceability of that specific provision, not the enforceability of the arbitration agreement as a whole.  To do otherwise would render the delegation provision a nullity."); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) ("When considering an unconscionability challenge to a delegation provision, the court must consider only arguments specific to the delegation provision.").

There is a serious question as to whether this Court's unconscionability findings relate

1   specifically to the delegation provision, as required, or focus instead on other provisions of the

2   UA or on the arbitration agreement as a whole.  *See Brice*, 13 F.4th at 827 ("Where a delegation

3   provision exists, courts first must focus on the enforceability of that specific provision, not the

4   enforceability of the arbitration agreement as a whole.").

5        In the Order, the Court's unconscionability analysis focused on the formal complaint

6   process and the arbitration agreement, both of which are distinct from the delegation provision.

7   *See e.g.*, Order at 6:19–20 ("The '***Arbitration Agreement***' in the user agreement imposes no

8   obligation on Coinbase to arbitrate."); Order at 7:3–7 ("The ***arbitration provision as a whole***

9   addresses only those disputes that have previously gone through the pre-arbitration complaint

10  procedure.  Because only Coinbase users can raise a complaint though the pre-arbitration

11  complaint procedure, the arbitration provision imposes no obligation on Coinbase itself to submit

12  its disputes with users to binding arbitration."); Order at 8:8–28 (finding Coinbase's "***tripartite***

13  ***complaint process***" unduly onerous).  This Court reasoned that the same analysis applied to the

14  delegation provision, too, because, "like nesting boxes, the delegation clause incorporates several

15  defined terms that specify matters delegated to the arbitration," including "Arbitration

16  Agreement" and "the user agreement's tripartite dispute resolution procedure."  Order at 5:15–17,

17  6:4–6.  Coinbase respectfully disagrees, and believes that there is at least a "fair prospect" that the

18  Ninth Circuit might, too.  *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct.

19  524, 531 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator,

20  the courts must respect the parties' decision as embodied in the contract.").

21       The Ninth Circuit has found delegation provisions containing similar language

22  enforceable because they were separate and severable from the arbitration agreement at issue,

23  even though they explicitly mention the arbitration agreement.  *See, e.g.*, *Brice*, 13 F.4th at 825,

24  827 (finding that a delegation provision requiring an arbitrator to determine "any issue concerning

25  the validity, enforceability, or scope of the loan agreement or arbitration agreement" separate and

26  severable from the arbitration agreement); *Brennan*, 796 F.3d at 1133 (finding a delegation

27  provision that states the "arbitrator shall have the power to rule on his or her own jurisdiction,

28  including any objections with respect to the . . . validity of the arbitration agreement" separate and

severable from the arbitration agreement).  The Court's holding here would nullify the parties' express agreement to delegate questions of arbitrability to the arbitrator—indeed, its findings that the Arbitration Agreement is unconscionable and unenforceable are precisely the questions the parties agreed "shall be decided by an arbitrator and not by a court or judge."  UA § 8.3; *see also Brice*, 13 F.4th at 827.

    This Court also found that "the delegation clause only delegates questions of arbitrability that emerge from the user agreement's tripartite dispute-resolution procedure, not arbitration, generally."  Order 9:2–4.  If the Court means to say that it need not enforce the UA's delegation clause because that clause covers only *certain* disputes—that is, those arising out of the Formal Complaint Process—that is an impermissible finding about the *scope* of the arbitration agreement. The Ninth Circuit may reasonably conclude that the parties expressly delegated those questions (questions about the scope and enforceability of the arbitration provision) to an arbitrator.  *See* UA § 8.3 ("[D]isputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, **scope,** or validity of the Arbitration Agreement or any portion of the Arbitration Agreement . . . shall be decided by an arbitrator and not by a court or judge.").

    There is a "'reasonable probability' or 'fair prospect'" that the Ninth Circuit will find that this Court decided questions about arbitrability that should have been decided by an arbitrator. *See Leiva-Perez*, 640 F.3d at 971; *Rent-A-Ctr.*, 561 U.S. at 72.  At the very least, Coinbase's appeal raises "serious legal questions" about delegation sufficient to warrant a stay.  *See Leiva-Perez*, 640 F.3d at 971.

## 2. Coinbase's appeal raises "serious legal questions" and presents a "substantial case on the merits" about whether the UA's pre-arbitration procedure is unconscionable.

    Coinbase respectfully disagrees that the UA's pre-arbitration procedure "imposes an onerous, unfair burden" on users that renders the delegation clause substantively unconscionable. *See* Order at 9:4–5.  First, as explained above, the Court's findings about the pre-arbitration procedure are not specific to the delegation clause.  Second, for a provision to be unconscionable, it must "shock the conscience."  *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir.

2003).  The Court concluded that "Coinbase's tripartite complaint process requires users to jump through multiple, antecedent hoops before initiating arbitration."  Order at 8:22–24.  In fact, the UA requires that users take only two basic steps before filing an arbitration demand.[2]  First, they must "contact Coinbase through [its] support team," which Mr. Bielski alleges he did.  UA § 8.2.  Second, if the support team is unable to resolve the issue, users must submit a formal complaint using Coinbase's form, in which they can describe their complaint, explain how they would like Coinbase to resolve their complaint, and provide any additional information related to the dispute that they believe to be relevant.  *Id*. § 8.2.1.  The form can be completed in minutes and submitted electronically or by U.S. Mail.  Both of these steps are straightforward and simple; neither "shocks the conscience."

Respectfully, the Court's finding that the UA's simple two-step pre-arbitration procedure is unconscionable is unsupported by legal precedent.  Although this Court acknowledged that pre-arbitration procedures can be "legitimate" and "laudable," it nevertheless concluded that "[p]retextual or unduly onerous preconditions to arbitration . . . remain substantively unconscionable."  Order at 8:8–9, citing *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1250 (2016) and *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282-83 (2004).  But neither *Baltazar* nor *Nyulassy* supports this conclusion.  *Baltazar* does not address preconditions to arbitration at all.  *See Baltazar*, 62 Cal. 4th at 1250.  And *Nyulassy* stands for a different proposition altogether.  *Nyulassy* involved three concerns that, "taken together," rendered an arbitration agreement substantively unconscionable.  Those concerns included requiring the plaintiff to participate in *multiple* in-person meetings with a chain of *supervisors* all the way to the Vice President of Human Resources before pursuing arbitration—discussions that would ultimately give the defendant a strategic advantage in the arbitration itself.  *See Nyulassy*, 120 Cal. 4th at 1282–83.  But here, the Court rejected that so-called "free peek" argument.  Hrg. Tr. 13:12–13 (Dkt. 41) ("I don't think there's a problem of free peek.  I don't – that problem

---

[2] The Court's Order "pauses to note the agreement also mentions a separate 'hotline' for users to call if their account is compromised, a *further checkbox* for a user who has seen their account drained."  Order at 8:24-25.  But this is not a pre-arbitration requirement; it is merely another avenue for users who want assistance.  The UA states: "If you believe your account has been compromised, you may also report your claim by calling (888) 908-7930."  UA § 8.1.

1    doesn't bother me.").  What's more, the *Nyulassy* court wasn't concerned about the pre-dispute

2    process in *isolation*; like this Court, it recognized that pre-dispute processes could be "laudable

3    mechanism[s] for resolving [] disputes informally."  *Nyulassy*, 120 Cal. App. 4th at 1282; *see also*

4    Dkt. 38 (Suppl. Br.) at 5:1–10.

5         As far as Coinbase is aware, no court has ever found pre-arbitration procedures like

6    Coinbase's unconscionable.  In fact, courts routinely enforce arbitration agreements that involve

7    significantly more burdensome prerequisites than those at issue here.  *See* Dkt. 38 at 3–4, citing

8    *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013); *Taft v. Henley Enters.,*

9    *Inc.*, 2016 WL 9448485, at *8 (C.D. Cal. Mar. 2, 2016); *Marks v. Bridgestone Americas, Inc.*,

10   2015 WL 13919149, at *2 (C.D. Cal. Nov. 16, 2015); *Lei v. Amway Corp.*, 2014 WL 12596787,

11   at *9 (C.D. Cal. July 23, 2014); *Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App.

12   4th 398, 406 (2014); *Barati v. Ottno, Inc.*, 2018 WL 3099015, at *4 (Cal. Ct. App. June 25, 2018)

13   (unpublished).  The Court dismissed these cases out of hand because they "analyzed employment

14   contracts and other, similar agreements," not consumer agreements.  Order at 8:13–14.  But the

15   cases on which the Court's order relies—including both *Baltazar* and *Nyulassy*—also analyzed

16   employment contracts, *see id*. at 8:4–9:6, as did those cited by Mr. Bielski.  Regardless, it is

17   unclear why this employment–consumer distinction matters; if anything, requiring an employee

18   to discuss her complaint in person "within successive levels of [an employee's] supervisory chain

19   of command" all the way up to "the Vice President, Human Resources" is far more onerous than

20   asking a consumer to submit a form that can be completed in five minutes from a user's home

21   computer.  *Nyulassy*, 120 Cal. App. 4th at 1273 n.4.

22        In any event, it was not Coinbase's burden to prove that its pre-arbitration procedures are

23   conscionable—it was Mr. Bielski's burden to prove that the pre-arbitration procedures are

24   unconscionable.  *See Poublon*, 846 F.3d at 1260.  Mr. Bielski has *never* identified any caselaw

25   suggesting that the UA's dispute-resolution procedures are onerous—or that even onerous

26   procedures could render an arbitration agreement unconscionable.

27        Coinbase believes there is a "reasonable probability" that the Ninth Circuit will determine

28   that the UA's pre-arbitration procedure—which is intended to and does streamline dispute

resolution to the customers' benefit—is commercially justified and not unconscionable. At a minimum, these issues raise serious legal questions, likely of first impression: as the Court recognized, there is a dearth of case law assessing pre-arbitration requirements in the consumer context. *See* Order at 8:13–22. Given the ubiquity of user agreements and terms of service like the one at issue here, there are broad ramifications to this Court's decision that may create uncertainty for businesses and chill efforts to resolve consumers' disputes before resorting to expensive litigation. For these reasons, this case should be stayed pending appeal. *See Leiva-Perez*, 640 F.3d at 971.

### 3. If the Ninth Circuit finds any provision of the UA unconscionable, Coinbase's appeal presents "a substantial case on the merits" regarding severability.

A court may "refuse to enforce the entire agreement only when it is 'permeated' by unconscionability." *Poublon*, 846 F.3d at 1272. Coinbase respectfully disagrees that "severance is not feasible" because "unilaterality pervades both the delegation clause and the arbitration agreement as a whole." Order at 11:3–4, 11:27–28. As explained in the preceding section, Coinbase believes the Ninth Circuit is likely to find that the UA's pre-arbitration procedure, which requires only that users contact Coinbase and provide basic information about their claims, is not unconscionable. That leaves only one provision at issue in the Order: an 11-word clause at the beginning of Section 8.3. Order at 6:19–20. In Coinbase's view, which it has expressed in this case and others around the country, the UA's arbitration agreement creates a bilateral obligation. But, even if the Court's analysis were correct, this prefatory clause would be the only objectionable term—a fact that weighs strongly in favor of severance. *Cf. Poublon*, 846 F.3d at 1273 ("California courts have held that a factor weighing against severance exists when the agreement contains more than one objectionable term."); *Ontiveros v. DHL Express (USA), Inc.*, 164 Cal. App. 4th 494, 515 (2008) (in considering severance, courts weigh "whether the agreement contains more than one objectionable term.").

Specifically, the Court found the arbitration agreement unilateral because of its "introductory clause," which states: "If we cannot resolve the dispute through the Formal Complaint Process . . . ." UA § 8.3; *see* Order at 6:10–7:7. Coinbase believes, and Mr. Bielski

- 11 -

concedes, that severing this clause would render the agreement indisputably mutual.  *See* Dkt. 29 at 4 n.6; *id.* at 17 n.19 (recognizing that it is "grammatically possible for the Court to strike language that renders the delegation provision (and the entire agreement to arbitrate) unilateral").  Coinbase disagrees that severance is impossible because one cannot "cleanly remove the unconscionable language," or that severance "would have little efficacy."  Order at 11:19, 11:21.  The Ninth Circuit may not even need to reach this question—if, for instance, it agrees that questions about the UA's enforceability should be sent to an arbitrator, or that the agreement itself is bilateral.  But, if it did, and if it thought that the 11-word clause caused any confusion, there is a fair prospect that it would find that that clause could be easily and cleanly severed.  This change would not, as the Court suggested, "rewrite the dispute resolution procedure the user agreement sets out."  Order at 11:16.  It would simply clarify that the parties ("you and we") agreed that "any dispute arising out of or relating to this Agreement or the Coinbase Services . . . shall be resolved by binding arbitration . . . ."  *See* UA, § 8.3.  Courts frequently sever precisely these sorts of clauses.  *See e.g.*, *Poublon*, 846 F.3d at 1273–74 (severing two unconscionable clauses, including "the portion of the dispute resolution provision that permits [defendant], but not [plaintiff], to seek judicial resolution of specified claims," and the portion of the agreement waiving PAGA claims).  Doing so here would simply conform the agreement with the parties' intent "for any invalid portion of the agreement to be restricted."  *Poublon*, 846 F.3d at 1274; UA § 9.7 (agreeing that, if any provision is determined to be unenforceable, the provision should be changed "to accomplish the objectives of the provision to the greatest extent possible . . . .").

Because there is a "'reasonable probability' or 'fair prospect'" that the Ninth Circuit would find that any unconscionable terms in the UA could be severed, this case should be stayed pending appeal.  *See Leiva-Perez*, 640 F.3d at 971.

**B.**     **Coinbase will suffer irreparable harm absent a stay.**

If this litigation continues while Coinbase's appeal is pending, Coinbase will face serious and irreparable harm that far outweighs any theoretical injury to Mr. Bielski or putative class members.  The predominant purpose of arbitration is to provide an "inexpensive and expeditious means of resolving . . . dispute[s]."  *Int'l Ass'n of Machinists & Aerospace Workers v. Aloha*

*Airlines*, 776 F.2d 812, 815 (9th Cir. 1985); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (noting "the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes").  But if this Court denies a stay, and the Ninth Circuit reverses the Order and compels arbitration, Coinbase will be unable to recover the substantial time and resources that it will have devoted to litigating this dispute during the appeal.  *See Pokorny v. Quixtar Inc.*, 2008 WL 1787111, at *2 (N.D. Cal. Apr. 17, 2008).  While monetary expenses incurred in litigation are generally not considered irreparable harm, "arbitration is unique in this aspect," because "[i]f a party must undergo the expense of a trial before being able to appeal denial of a motion to compel arbitration, the anticipated advantages of arbitration—speed and economy—are lost." *Zaborowski*, 2013 WL 1832638, at *2; *see also Gray v. Golden Gate Nat. Recreational Area*, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011) ("Although monetary losses incurred in litigation are generally not considered irreparable harm, if defendants are forced to incur the expense of litigation before their appeal is heard, the appeal will be moot, and their right to appeal would be meaningless.").

Simply put, ongoing litigation would render meaningless Coinbase's right to seek immediate appellate review from an order denying a motion to compel arbitration.  Numerous district courts within the Ninth Circuit have adopted this reasoning and granted stay motions under similar circumstances because the consequence of losing the advantages of arbitration are "serious, perhaps, irreparable." *Ali*, 2014 WL 12691084, at *1; *see also, e.g.*, *Zaborowski*, 2013 WL 1832638, at *2; *Wuest v. Comcast Cable Commc'ns Mgmt., LLC*, 2017 WL 5569819, at *1 (N.D. Cal. Nov. 20, 2017).

Furthermore, the harm caused by denial of a stay would be magnified here because Mr. Bielski purports to represent a class and "[t]he burdens associated with discovery in a putative class action are substantially greater than in an individual arbitration." *SFBSC Mgmt.*, 2015 WL 1798926, at *3; *see also Wuest*, 2017 WL 5569819, at *1 (irreparable harm absent a stay was amplified because "Plaintiff has brought this case as a class action, thus increasing the expense Defendants will incur"); *Murphy v. DirecTV, Inc.*, 2008 WL 8608808, at *2 (C.D. Cal.

1   July 1, 2008) (defendant would suffer irreparable harm absent stay because it would lose "any

2   and all practical benefits that [it] would have been afforded by the compulsion of arbitration" and

3   would "lose valuable time and resources if it [were] forced to conduct and respond to classwide

4   discovery and participate in other complex pre-trial proceedings"); *Kaltwasser v. Cingular*

5   *Wireless, LLC*, 2010 WL 2557379, *2 (N.D. Cal. June 21, 2010) ("[T]he nature and extent of

6   discovery permissible in private arbitration is fundamentally different from that allowed in class-

7   action litigation."); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 238-239 (2013)

8   (comparing the "prospect of speedy resolution that arbitration in general and bilateral arbitration

9   in particular was meant to secure" with class procedures that are "slower, more costly, and more

10   likely to generate procedural morass").

11        Even aside from class-related discovery concerns, the AAA Consumer Arbitration Rules

12   incorporated into the UA provide for a much more limited "exchange of information between the

13   parties" than would occur in discovery under the Federal Rules of Civil Procedure.  As the

14   relevant AAA Rules emphasize: "keeping in mind that arbitration must remain a fast and

15   economical process," the arbitrator has discretion to "direct (1) specific documents and other

16   information to be shared between the consumer and business, and (2) that the consumer and

17   business identify the witnesses, if any, they plan to have testify at the hearing."  AAA Consumer

18   Arbitration Rules at R-22(a).  Beyond that, "[n]o other exchange of information . . . is

19   contemplated under these Rules, unless an arbitrator determines further information exchange is

20   needed to provide for a fundamentally fair process."  *Id.* at R-22(c).  Thus, in this case, further

21   discovery in this Court during the pendency of Coinbase's appeal would irreparably deprive

22   Coinbase of the benefits of the very specific limitations on discovery to that which, *in the*

23   *arbitrator's discretion*, is consistent with "a fast and economical process."  *Id.* at R-22(a); *see*

24   *Ward*, 2014 WL 7273911, at *4 (finding irreparable harm to the movant where the relevant

25   arbitration procedure "is a streamlined process" without "formal discovery, law and motion

26   practice, or other pre-trial hearings" because "[t]he contrast, in time and expense, between the

27   arbitration process . . . and the process of litigation in federal court is substantial").

28        None of these harms to Coinbase could be undone or remedied.  Because Coinbase will be

1    "irreparably injured absent a stay," this factor tilts sharply in favor of granting this motion.  *Nken*

2    *v. Holder*, 556 U.S. 418, 426 (2009).

3         **C.    Mr. Bielski will suffer no cognizable harm from a stay pending appeal.**

4         In contrast to the substantial irreparable harm that Coinbase will face if a stay is not

5    granted, the only harm that Mr. Bielski could suffer is a delay in prosecuting his claims.  There is

6    no alleged ongoing harm to be addressed.  Such delay alone "does not compare to the

7    unjustifiable waste of time and money that would result from proceeding with this litigation

8    before the Ninth Circuit decides whether this dispute is even subject to judicial resolution."

9    *Mundi v. Union Security Life Ins. Co.*, 2007 WL 2385069, at *6 (E.D. Cal. Aug. 17, 2007).  As

10   one court in this district has explained, "[a]lthough relief may be delayed, this case is still in its

11   earliest stages, relief through the court system often takes a long time, and the delay may be

12   mitigated by remedies such as prejudgment interest."  *Zaborowski*, 2013 WL 1832638, at *3.

13   Indeed, as another Northern District court has emphasized, any injury to a plaintiff from a stay

14   such as that requested here "can be redressed by an award of damages if plaintiff ultimately

15   prevails."  *Winig,* 2006 WL 3201047, at *2.

16        Therefore, this factor likewise favors granting Coinbase's motion because the issuance of

17   a stay will not "substantially injure the other parties interested in the proceeding."  *Nken*, 556 U.S.

18   at 426.

19        **D.    The public interest favors a stay.**

20        Public policy interests—particularly the promotion of judicial economy and the strong

21   federal policy favoring arbitration—also support a stay.  *See Moses H. Cone Mem. Hosp. v.*

22   *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  "It does not make sense for this Court to expend

23   its time and energy preparing this case for trial . . . only to learn at a later date from the court of

24   appeals that it was not the proper forum to hear the case."  *Aviles*, 2016 WL 6902458, at *4.  As

25   courts have repeatedly emphasized, "[t]he policy underlying the FAA is to promote judicial

26   efficiency and economy.  Thus, contrary to public policy, judicial resources will be wasted if this

27   case proceeds all the way to trial, only for the Court to later discovery the case should have

28   proceeded through arbitration."  *Ward*, 2014 WL 7273911, at *5; *McGhee*, 2018 U.S. Dist.

LEXIS 19579 at *8 (same); *Zaborowski*, 2013 WL 1832638, at *3 ("[C]ontrary to public policy, judicial resources will be wasted if this case proceeds all the way to trial, only for the Court to later discover that the case should have proceeded through arbitration."); *Richards,* 2012 WL 92738, at *4  ("[T]he federal policy favoring arbitration embodied in the FAA and the economical use of judicial resources lead the public interest to favor a stay.").  Moreover, "[the] speed and efficiency of [arbitration] are the foundation for a strong federal policy favoring arbitration over litigation, which would be contravened by requiring the parties to litigate while the appeal is pending." *Pokorny*, 2008 WL 1787111, at *2.

On the other hand, the requested stay will not impact Mr. Bielski's interest in resolving his dispute against Coinbase.  *See Winig*, 2006 WL 3201047, at *3 ("Although the Court is cognizant of the public interest in vindicating consumer rights, the Court finds the requested stay will not materially impact that interest.").  Mr. Bielski will not lose his right to litigate the issues in his Complaint pending the stay, and Coinbase has already taken steps to preserve the relevant evidence.  *See id.* at *2; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("[B]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum.").  Moreover, Mr. Bielski seeks only monetary damages, which can be awarded if and when he prevails.  In sum, he will not suffer additional injury as a result of the stay.  *See Winig*, 2006 WL 3201047, at *2.

## V.    CONCLUSION

For the foregoing reasons, Coinbase respectfully requests that the Court grant its motion and stay all proceedings until the conclusion of the pending appeal.

Dated:  May 5, 2022                                    KEKER, VAN NEST & PETERS LLP

                                        By:    */s/ Nicholas D. Marais*
                                                STEVEN P. RAGLAND
                                                NICHOLAS D. MARAIS
                                                W. HAMILTON JORDAN
                                                ROBYN A. PARISER

                                                Attorneys for Defendant COINBASE, INC.