Matthew D. Carlson (State Bar No. 273242)
mdcarlson@mdcarlsonlaw.com
LAW OFFICE OF MATTHEW D. CARLSON
3959 N. Buffalo Road, Suite 29
Orchard Park, NY 14127
Telephone: (716) 242-1234

Attorney for Plaintiff ABRAHAM BIELSKI

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM BIELSKI, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> COINBASE, INC. <br><br> Defendant. | **Case No.: 3:21-cv-07478-WHA** <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING APPEAL** <br><br> Date: June 9, 2022 <br> Time: 8:00 a.m. <br> Judge: Hon. William H. Alsup <br> Ctrm.: 12 – 19th Floor <br><br> Complaint Filed: September 24, 2021 |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. RELEVANT FACTS ................................................................................................ 4

III. LEGAL STANDARD .............................................................................................. 4

IV. ARGUMENT .......................................................................................................... 5

    A. COINBASE'S APPEAL DOES NOT RAISE SERIOUS LEGAL QUESTIONS .... 5

        1. The Court Properly Addressed the Enforceability of the Delegation
           Provision Before Addressing the Enforceability of the Larger Agreement
           to Arbitrate ........................................................................................... 6

        2. The Enforceability of the Prearbitration Dispute Resolution Procedure
           Does Not Present a "Serious Legal Question" .................................... 6

        3. Coinbase's Severability Arguments Do Not Implicate "Serious Legal
           Questions" ............................................................................................ 9

    B. THE BALANCE OF HARDSHIPS WEIGHS AGAINST A STAY ....................... 13

    C. THE PUBLIC INTEREST WEIGHS AGAINST A STAY ................................... 16

V. CONCLUSION ..................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Cases**

*Ali v. JP Morgan Chase Bank*,
  No. C 13-01184 JSW, 2014 WL 12691084 (N.D. Cal. Mar. 10, 2014) ................................... 14

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) .................................................................................................... 1, 2

*Assaad v. Am. Nat'l Ins. Co.*,
  No. C 10–03712–WHA, 2010 WL 5416841 (N.D.Cal. Dec. 23, 2010) ................................. 12

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ............................................................................................................ 14

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016) .............................................................................................................. 7

*Barati v. Ottno, Inc.*,
  2018 WL 3099015 (Cal. Ct. App. June 25, 2018) ...................................................................... 9

*Brandwein v. Butler*,
  218 Cal. App. 4th 1485 (2013) ................................................................................................. 11

*Brice v. Haynes Invs., LLC*,
  13 F.4th 823 (9th Cir. 2021) ...................................................................................................... 6

*Britton v. Co.-op Banking Grp.*,
  916 F.2d 1405 (9th Cir. 1990) .................................................................................................... 4

*Burch v. Premier Homes, LLC*,
  199 Cal. App. 4th 730, 744 (2011)……………………………………………………………10

*Carlson v. Home Team Pest Def., Inc.*,
  239 Cal. App. 4th 619 (2015) .............................................................................................. 10, 13

*Carmona v. Lincoln Millennium Car Wash, Inc.*,
  226 Cal. App. 4th 74 (2014) ...................................................................................................... 8

*Clemmer v. Key Bank Nat. Ass'n*,
  539 F.3d 349 (6th Cir. 2008) .................................................................................................... 16

*Dekker v. Vivint Solar, Inc.*,
  No. C 19-07918 WHA, 2020 WL 2322916 (N.D. Cal. May 11, 2020) ........................... passim

*Dennison v. Rosland Cap. LLC*,
  47 Cal. App. 5th 204, 213 (2020), *review denied* (July 15, 2020) ...................................... 2, 12

*Dunham v. Env't Chemmical Corp.*,
  No. C 06-03389 JSW, 2006 WL 2374703 (N.D. Cal. Aug. 16, 2006)......................................... 8

*Esparza v. SmartPay Leasing, Inc.*,
  No. C 17-03421 WHA, 2017 WL 6731595 (N.D. Cal. Dec. 30, 2017) ........................... passim

*Farrar v. Direct Com., Inc.*,
    9 Cal. App. 5th 1257 (2017) ............................................................................................ 8

*Fitzgerald v. Pollard*,
    No. 20CV848-JM (NLS), 2021 WL 2104959 (S.D. Cal. May 25, 2021) ........................ 3

*Flores v. Transamerica HomeFirst, Inc.*,
    93 Cal. App. 4th 846 (2001) ................................................................................. 2, 7, 10

*Fox v. Vision Serv. Plan*,
    2017 WL 735735 (E.D. Cal. Feb. 24, 2017) ................................................................... 8

*Gray v. Golden Gate Nat. Recreational Area*,
    No. C 08-00722 EDL, 2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) .......................... 14

*Jackson v. S.A.W. Ent. Ltd.*,
    629 F. Supp. 2d 1018 (N.D. Cal. 2009) ....................................................................... 11

*Kaltwasser v. Cingular Wireless LLC*,
    No. C 07-00411 JF (PVT), 2010 WL 2557379 (N.D. Cal. June 21, 2010) .................... 14

*Kinney v. United HealthCare Servs., Inc.*,
    70 Cal. App. 4th 1322 (1999) ......................................................................................... 2

*Klink v. ABC Phones Of North Carolina, Inc.*,
    No. 20-CV-06276-EMC, 2021 WL 3709167 (N.D. Cal. Aug. 20, 2021) ...................... 11

*Lei v. Amway Corp.*,
    2014 WL 12596787 (C.D. Cal. July 23, 2014) ................................................................ 9

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) .......................................................................................... 1

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ...................................................................................... 15

*Lou v. Ma Lab'ys, Inc.*,
    No. C 12-05409 WHA, 2013 WL 2156316 (N.D. Cal. May 17, 2013) ......................... 12

*Maile v. Tillamook Country Smoker, LLC*,
    2019 WL 11910943 (C.D. Cal. Feb. 1, 2019) ............................................................... 11

*Marks v. Bridgestone Americas, Inc.*,
    2015 WL 13919149 (C.D. Cal. Nov. 16, 2015) .............................................................. 9

*Murphy v. DirecTV, Inc.*,
    No. 2:07-CV-06465-FMC, 2008 WL 8608808 (C.D. Cal. July 1, 2008) ....................... 14

*Nyulassy v. Lockheed Martin Corp.*,
    120 Cal. App. 4th 1267 (2004) ................................................................................... 7, 8

*O'Hare v. Mun. Res. Consultants*,
    107 Cal. App. 4th 267 (2003) ....................................................................................... 12

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ...................................................................................... 1, 8

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) .................................................................. 12

*Ramirez v. Charter Comm's, Inc.*,
  2022 WL 498706 (Cal. Ct. App. Feb. 18, 2022) ...................................... 11

*Roe v. SFBSC Mgmt., LLC*,
  No. 14-CV-03616-LB, 2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) ................... 13

*Sanchez v. Carmax Auto Superstores Cal., LLC*,
  224 Cal. App. 4th 398 (2014) .................................................................. 8

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) ........................................................................... 7

*Serdenia v. Granada Hills Convalescent Hosp., Inc.*,
  2013 WL 4494480 (Cal. Ct. App. Aug. 21, 2013) ................................. 2, 7

*Serpa v. Cal. Sur. Investigations, Inc.*,
  215 Cal. App. 4th 695 (2013) .................................................................. 8

*Taft v. Henley Enters., Inc.*,
  2016 WL 9448485 (C.D. Cal. Mar. 2, 2016) .......................................... 9

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ................................................................ 7

*Wood v. Team Enterprises, LLC*,
  No. C 18-06867 WHA, 2019 WL 2437012 (N.D. Cal. June 11, 2019) ........... passim

*Wuest v. Comcast Cable Commc'ns Mgmt., LLC*,
  No. 17-CV-04063-JSW, 2017 WL 5569819 (N.D. Cal. Nov. 20, 2017) ........... 14

*Zaborowski v. MHN Gov't Servs., Inc.*,
  No. C 12-05109 SI, 2013 WL 1832638 (N.D. Cal. May 1, 2013) ................. 14

**Statutes**

15 U.S.C § 1693m(f) .................................................................................. 12

15 U.S.C. § 1693 ................................................................................... 4, 16

15 U.S.C. § 1693a(9) ............................................................................... 15

15 U.S.C § 1693l ...................................................................................... 12

**Rules**

Fed. R. Civ. P. 1 ....................................................................................... 16

## I. INTRODUCTION

Defendant Coinbase, Inc. ("Coinbase") has asked the Court to stay proceedings pending resolution of its appeal of the Court's April 8, 2022 Order Re Motion to Compel Arbitration (the "Order"). Plaintiff Abraham Bielski ("Plaintiff") respectfully submits that the requested stay would be inappropriate in this case for essentially the same reasons this Court has repeatedly rejected motions to stay pending appeals of orders denying arbitration in other cases. *Dekker v. Vivint Solar, Inc.*, No. C 19-07918 WHA, 2020 WL 2322916 (N.D. Cal. May 11, 2020); *Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2017 WL 6731595 (N.D. Cal. Dec. 30, 2017); *Wood v. Team Enterprises, LLC*, No. C 18-06867 WHA, 2019 WL 2437012 (N.D. Cal. June 11, 2019).

Courts in the Ninth Circuit utilize a four-factor test to determine if a stay is appropriate in such circumstances: (1) whether the applicant demonstrates a substantial case for relief on the merits or that its appeal raises "serious legal questions," (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See e.g.*, *Dekker*, 2020 WL 2322916, at *1 (*citing Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011)). The burden is on the applicant to show that a stay is warranted. *Id.*

While Coinbase argues that its appeal raises "serious legal questions," Coinbase's persistent refusal to acknowledge that the terms of its arbitration provision require only Coinbase users to arbitrate disputes (including disputes subject to the delegation provision) – while reserving for Coinbase any forum of its choosing – renders its appeal not only not "serious," but completely meritless. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 119 (2000) (agreements to arbitrate must have "a modicum of bilaterality"); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1001 (9th Cir. 2010) ("Requiring one party to arbitrate its claims but not the other is a paradigmatic form of substantive

unconscionability under California law."); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 857 (2001) (finding arbitration provision unconscionable based solely on one-sided obligation to arbitrate); *Serdenia v. Granada Hills Convalescent Hosp., Inc.*, 2013 WL 4494480, at *8 (Cal. Ct. App. Aug. 21, 2013) (unpublished) ("lack of mutuality alone is sufficient to render [the arbitration provision] substantively unconscionable.") (*citing Armendariz*, 24 Cal. 4th at 120 ("an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences")); *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1332 (1999) ("Faced with the issue of whether a unilateral obligation to arbitrate is unconscionable, we conclude that it is."). Indeed, Plaintiff is not aware of *any* case enforcing an arbitration provision with a *completely* unilateral obligation to arbitrate, regardless of the presence or absence of other unenforceable terms (*e.g.*, the one-sided pre-arbitration dispute resolution procedure and/or illegal fee shifting provisions present here).

Coinbase's insistence that the agreement should be saved by severance is similarly unserious, as it is well-established that severance is improper where the obligation to arbitrate itself is completely unilateral. *Armendariz*, 24 Cal. 4th at 122; *see also Flores*, 93 Cal. App. 4th at 857 ("[Defendant] has cited no precedent, and we are aware of none, in which a unilateral agreement to arbitrate was saved by severing the offending provisions."). Moreover, where other terms – such as the unilateral prearbitration dispute resolution procedure and unconscionable fee-shifting provisions here – add to the one-sidedness of the agreement, severance is inappropriate for this additional reason. *See Dennison v. Rosland Cap. LLC*, 47 Cal. App. 5th 204, 213 (2020), *review denied* (July 15, 2020) ("An agreement to arbitrate is considered 'permeated' by unconscionability where it contains more than one unconscionable provision.").

Further, Plaintiff is willing to limit discovery to matters pertaining to his individual

claims during the pendency of the appeal – a compromise Coinbase referenced in its Motion, and which has been adopted by this Court on at least two occasions. *Wood*, 2019 WL 2437012, at *2 ("In order to mitigate any potential for unnecessary costs, this order limits discovery to that concerning the named plaintiffs for the pendency of defendants' appeal of the order denying arbitration."); *Esparza*, 2017 WL 6731595, at *3 (same). Thus, motion practice and limited discovery here would mirror the resolution of issues and discovery that would be necessary in an individual arbitration, and Coinbase is not faced with potentially "wasting" *any* resources in this Court. More specifically, continued litigation would permit the Court to rule on the critical issue of whether Coinbase is covered by the Electronic Funds Transfer Act ("EFTA") and Regulation E thereto, which would be obviously relevant to Plaintiff's arbitration in the unlikely event Coinbase prevails on appeal. A ruling by the Court on this issue would inform not just Plaintiff's potential arbitration, but numerous other individual arbitrations that are pending against Coinbase. Resolution of this issue would also likely resolve several issues common to the proposed class, which will be helpful if and when the time comes to certify a class – but which would not require Coinbase to expend resources beyond those necessary to litigate Plaintiff's individual case while the appeal is pending. On the other hand, a stay would severely – and unnecessarily – delay inevitable discovery regarding Plaintiff's claim, potentially lead to the degradation of evidence, and leave unresolved the issue of what past and ongoing responsibilities Coinbase has to its users, including Plaintiff, under the EFTA.[1]

Lastly, while Coinbase argues that the public policy in favor of minimizing unnecessary expenditure of resources supports a stay, Plaintiff's proposal for limited

---

[1] If the Court is inclined to limit discovery to that concerning Plaintiff, Plaintiff requests that the Court make clear that discovery relevant to both class issues and Plaintiff's individual claim is permitted (*e.g.*, discovery concerning policies, practices, and procedures that apply to both Plaintiff and unnamed class members). *See, e.g.*, *Fitzgerald v. Pollard*, No. 20CV848-JM (NLS), 2021 WL 2104959, at *2 (S.D. Cal. May 25, 2021) ("There may be some overlap between individual discovery and class discovery here as Plaintiff points out (for example, as to Defendants' practices and policies), but as long as the discovery pertains to Plaintiff's claims, Plaintiff would not be precluded from seeking that discovery initially.").

litigation until the appeal is resolved makes that concern moot. On the other hand, Federal Rule of Civil Procedure 1 contemplates the need for a "just, speedy, and inexpensive" resolution of this case, and the EFTA emphasizes the importance of "the provision of individual consumer rights" under the statute. 15 U.S.C. § 1693.

Accordingly, all factors weigh against issuance of a stay, and Coinbase's Motion should be denied.

## II.    RELEVANT FACTS

Plaintiff asserts two claims against Coinbase arising from the theft of funds from his Coinbase account and Coinbase's refusal to reimburse him for the theft: (1) a claim under the substantive provisions of the EFTA; and (2) a claim pursuant to Regulation E to the EFTA. Dkt. No. 22.

On November 15, 2021, the parties stipulated that Coinbase would file a Motion to Compel Arbitration pursuant to its User Agreement ("UA") and, if unsuccessful, a Motion to Dismiss. Dkt. Nos. 15, 20.  Coinbase filed its Motion to Compel, and on April 8, 2022, the Court denied the Motion. Dkt. No. 42. On April 18, 2022, Coinbase filed a Notice of Appeal of the Order. Dkt. No. 43. On April 25, 2022, Coinbase's counsel informed Plaintiff's counsel that, rather than file a sequential Motion to Dismiss as contemplated by the parties' stipulations, Coinbase would file a Motion to Stay proceedings pending appeal. This Motion followed.

## III.    LEGAL STANDARD

"Whether to issue a stay pending appeal from a denial of defendants' motion to compel arbitration "'is a proper subject for the exercise of discretion by the district court.'" *Dekker*, 2020 WL 2322916, at *1 (*citing Britton v. Co.-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990)). As the party requesting the stay, Coinbase "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.*

//

# IV.    ARGUMENT

As previously noted, courts in the Ninth Circuit assess four factors when determining whether it is appropriate to stay proceedings pending an appeal of an order denying a motion to compel arbitration: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *E.g.*, *Dekker*, 2020 WL 2322916, at *1 (*citing Leiva-Perez*, 640 F.3d at 964). Courts weigh these factors using a sliding scale approach, under which "a stronger showing of one element may offset a weaker showing of another." *Id.* This Court has repeatedly found that even where a defendant satisfies the first factor (though Coinbase does not do so here), a stay may nonetheless be inappropriate. *See Dekker*, *Esparza*, and *Wood*, *supra*.

## A.    COINBASE'S APPEAL DOES NOT RAISE SERIOUS LEGAL QUESTIONS

Under the first factor, Coinbase must show that it "has a substantial case for relief on the merits" or "that serious legal questions are raised." *Dekker*, 2020 WL 2322916, at *2. Rehashing arguments a court has already rejected does not present a "substantial case for relief on the merits," *see id.*, but lack of precedent on point may suggest a "serious legal question." *Id.*; *see also Wood*, 2019 WL 2437012, at *2; *Esparza*, 2017 WL 6731595, at *2. Coinbase raises three questions, which Plaintiff addresses in turn.[2]

---

[2]    Coinbase's framing of the questions on appeal do not adequately or accurately address the Court's straightforward findings that: (1) the delegation clause was substantively unconscionable because it required only users to arbitrate disputes encompassed by the delegation clause (Order at pp. 3-8); (2) the delegation clause was substantively unconscionable because it required users to engage in a wholly unnecessary pre-arbitration dispute resolution procedure (Order at pp. 8-9); (3) the delegation clause was procedurally unconscionable because it is a contract of adhesion and because the pre-arbitration dispute resolution procedure would surprise the average consumer (Order at pp. 9-10); (4) the broader agreement to arbitrate substantive disputes was unconscionable for the same reasons as the delegation provision (Order at p. 10); and (5) neither the delegation clause nor the larger agreement to arbitrate could be saved by severance because unilaterality pervaded both the delegation clause and the larger arbitration agreement (Order at pp. 10-11). For purposes of this Motion, however, Plaintiff addresses the questions as Coinbase frames them.

## 1. The Court Properly Addressed the Enforceability of the Delegation Provision Before Addressing the Enforceability of the Larger Agreement to Arbitrate

The first "serious legal question" Coinbase intends to raise on appeal is "whether this Court's unconscionability findings relate specifically to the delegation provision, as required, or focus instead on other provisions of the UA or on the arbitration agreement as a whole." Mot. at pp. 6-7. But in the Order, following clearly defined precedent, this Court properly analyzed the delegation provision first, turning to the larger agreement after finding the delegation provision unenforceable. Order at p. 3 (*citing Brice v. Haynes Invs., LLC*, 13 F.4th 823, 827 (9th Cir. 2021) ("Where a delegation provision exists, courts first must focus on the enforceability of that specific provision, not the enforceability of the arbitration agreement as a whole.")).

It appears to Plaintiff that Coinbase's argument stems from its repeated refusal to acknowledge that the delegation provision is expressly incorporated into the larger "Arbitration Agreement" (as defined by the UA), and is therefore subject to the same deficiencies as the broader agreement to arbitrate, including the unilateral obligation to arbitrate *all* disputes (including those subject to the delegation provision), the unilateral prearbitration dispute resolution procedures that are condition precedents to arbitration of *all* disputes (including those subject to the delegation provision), and the unlawful fee-shifting provisions applicable to *both* substantive disputes and disputes encompassed by the delegation provision. Indeed, Coinbase's argument on this fundamental issue is that it "disagrees" with the Court. Mot. at p. 7. This is not a serious legal question on appeal.

## 2. The Enforceability of the Prearbitration Dispute Resolution Procedure Does Not Present a "Serious Legal Question"

The second "serious legal question" Coinbase posits is whether the UA's prearbitration dispute resolution procedure is unconscionable. Mot. at p. 8. This is not a serious legal question because it will have no bearing on whether the Order is affirmed. Plaintiff is not aware of *any* court that has upheld a *completely unilateral* arbitration

provision like Coinbase's, regardless of whether it also includes a one-sided prearbitration dispute resolution procedure (or any other offending term). The entirely one-sided nature of the agreement (including the delegation provision) can and should be the end of the story. *See Flores*, 93 Cal. App. 4th at 857 (finding arbitration provision unconscionable based solely on one-sided obligation to arbitrate); *Serdenia*, 2013 WL 4494480, at *8 ("lack of mutuality alone is sufficient to render [the arbitration provision] substantively unconscionable.").[3]

To be sure, Coinbase's prearbitration dispute resolution procedure – an express precondition to arbitration of all disputes, including disputes encompassed by the delegation provision – does *contribute* to the substantive unconscionability of the delegation provision and the overall agreement to arbitrate. The process requires escalating dispute resolution procedures with successive ranks of Coinbase representatives, with each step exclusively controlled by Coinbase without a neutral decisionmaker. These were precisely the concerns addressed in *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1273 (2004), wherein the court found unconscionable a unilateral prearbitration dispute resolution procedure that was a mandatory precondition to arbitration and which required the employee to "resolve [his] [dispute] through discussions within successive levels of [their] supervisory

---

[3]     Plaintiff respectfully submits that the Court gave Coinbase undue credit when the Court stated that "a one-sided contract is not necessarily unconscionable," Order at p. 8 (*citing Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1030–31 (9th Cir. 2016)), and proceeded to analyze the substantive unconscionability of the prearbitration dispute resolution procedures. *Tompkins* did say this, but not in reference to a *completely* one-sided agreement to arbitrate. Indeed, the two cases *Tompkins*  cited for this proposition – *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237 (2016) and *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899 (2015), as well as *Tompkins* itself – found that certain one-sided *aspects* of an arbitration provision (a one-sided confidentiality provision in *Baltazar*, an arguably one-sided provision permitting a new arbitration under certain circumstances in *Sanchez*, and a one-sided "carve out" that permitted judicial resolution of intellectual property and infringement claims in *Tompkins*) were permissible because there was a "legitimate commercial need" for the terms. *Baltazar* at 1250-51; *Sanchez* at 911-12, 915-16 (noting that "[n]ot all one-sided contract *provisions* are unconscionable" and discussing "commercial needs of a particular trade or case") (emphasis added); *Tompkins* at 1030-31. Neither *Tompkins*, nor *Baltazar*, nor *Sanchez* suggested that a *completely* one-sided agreement to arbitrate could be justified by "commercial need." Indeed, the *Flores* court held that a "justification" based on "commercial need" could *not* save an agreement to arbitrate that obligated only the plaintiff to arbitrate disputes. *Id.* at 855.

---

chain of command, until the [dispute] [wa]s resolved." *Id.* at 1273; *see also id.* 1283 (noting concern that provision required employee to "submit to an employer-controlled dispute resolution mechanism ... without a neutral mediator."); *see also Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 89 (2014) (unilateral procedure requiring employees to discuss with employer "any problems or concerns with anything related to" their employment before disclosing any information to third parties "contribute[d] to the substantive unconscionability of an agreement that already lack[ed] mutuality"); *see also Fox v. Vision Serv. Plan*, 2017 WL 735735, at *6 (E.D. Cal. Feb. 24, 2017) (outside of employment context, finding unilateral two-step prearbitration dispute resolution procedure substantively unconscionable under *Nyulussy*); *see also Dunham v. Env't Chemmical Corp.*, No. C 06-03389 JSW, 2006 WL 2374703, at *8 (N.D. Cal. Aug. 16, 2006) (a "one-sided duty to exhaust pre-arbitration remedies" "adds to the contract's substantive unconscionability by permitting ECC to preview Dunham's claims against her employer.").

And while Coinbase attempts to draw a distinction between a prearbitration dispute resolution procedure in the employment context versus the consumer context, the Ninth Circuit has applied *Nyulussy* in the context of claims under the False Advertising and Unfair Competition laws. *Pokorny*, 601 F.3d at 998; *see also Fox*, *supra* (applying *Nyulussy* outside employment context). Moreover, Coinbase has not advanced any "legitimate commercial need" for the procedure, nor any justification based on "business realities." *See Farrar v. Direct Com., Inc.*, 9 Cal. App. 5th 1257, 1273 (2017).

The Court was also right to dismiss Coinbase's authority on this issue because all of it is easily distinguishable. For example, in *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013), the court found a prearbitration dispute resolution provision enforceable because it was arguably "precatory" and, more importantly, was part of "an agreement containing a mutual obligation to arbitrate." Neither factor is present here. In *Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 406 (2014), the

"procedure" at issue was not part of any grievance procedure, but rather was a requirement to initiate arbitration via a two-page arbitration request form (apparently akin to submitting an American Arbitration Association demand for arbitration form, which is separately required here and which Plaintiff does not argue is unconscionable). In *Barati v. Ottno, Inc.*, 2018 WL 3099015, at \*4 (Cal. Ct. App. June 25, 2018) (unpublished), the court emphasized that there was no requirement for employees to disclose anything during the pre-arbitration process, as the process "only require[d] a 'meeting.'" Here, Coinbase users are required to describe their complaint "in full detail" and upload documentation in support thereof. And in the three additional cases cited by Coinbase – *Taft v. Henley Enters., Inc.*, 2016 WL 9448485, at \*8 (C.D. Cal. Mar. 2, 2016), *Marks v. Bridgestone Americas, Inc.*, 2015 WL 13919149, at \*2 (C.D. Cal. Nov. 16, 2015), and *Lei v. Amway Corp.*, 2014 WL 12596787, at \*9 (C.D. Cal. July 23, 2014) – the pre-arbitration dispute resolution procedures were bilateral, not one-way as it is here.

Whether the prearbitration dispute resolution procedure is unconscionable is incidental to the resolution of Coinbase's appeal given the complete unilaterality of the obligation to arbitrate all disputes (including disputes subject to the delegation provision). But even if the issue is more than incidental, caselaw makes clear that the procedure at least contributes to the substantive unconscionability of both the delegation provision and the larger agreement to arbitrate. Either way, it is not a "serious legal question."

### 3. Coinbase's Severability Arguments Do Not Implicate "Serious Legal Questions"

The third "serious legal question" Coinbase raises is whether the delegation provision and larger agreement to arbitrate can be saved by severance. Mot. at pp. 11-12. The faulty premise of this "serious question" is that the contractual language that creates the one-sided agreement to arbitrate is purportedly a mere "prefatory clause." Mot. at p. 11. Once again, Coinbase misses the import of the language it drafted: the clause is an integral part – the final part – of a lockstep tripartite dispute resolution procedure. Indeed, this

language *creates* the duty to arbitrate – the raison d'être for the arbitration provision. *Flores*, 93 Cal. App. 4th at 857 ("[Defendant] has cited no precedent, and we are aware of none, in which a unilateral agreement to arbitrate was saved by severing the offending provisions.").

While Coinbase claims that the parties intended there to be a bilateral agreement to arbitrate, its argument is belied by a comprehensive three-step dispute resolution procedure, culminating in arbitration, that expressly applies only to users from start to finish. *See* UA at ¶ 8.1-8.3; *Aanderud v. Superior Ct.*, 13 Cal. App. 5th 880, 890 (2017) ("If contractual language is clear and explicit, it governs."). And if this express language is not enough, Coinbase's argument is also belied by language in other parts of the UA that show that the intent of the agreement was to require users – not Coinbase – to arbitrate their claims. *See* UA at ¶ 8.3 ("*you* may elect to pursue your claim in *your* local small claims court rather than through arbitration…"); (emphasis added); UA at ¶ 8.3 ("the arbitrator may not consolidate more than one *person's* claims…") (emphasis added). *See Burch v. Premier Homes, LLC*, 199 Cal. App. 4th 730, 744 (2011) ("In cases where there is 'any apparent conflict between its different clauses or provisions, the circumstances surrounding its execution and the conditions and motives of the parties as shown by recitals in the contract or matters in evidence should be taken into consideration in order that the true intent of the parties may be ascertained.'").

Further, as this Court also recognized, the "prefatory" clause that Coinbase proposes striking is part of the defined term "Arbitration Agreement," and removing the language would thus impermissibly require rewriting and redefining this term, which appears in multiple places. Order at p. 11; *see also Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 629 (2015) ("severing all unconscionable provisions from the Agreement would require the court to rewrite the arbitration agreement, a task the court cannot do.") (internal quotations omitted). It would also render the multiple preconditions to arbitration useless – an outcome entirely at odds with the intended comprehensive nature of the three-

step dispute resolution process. *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1507 (2013) ("we may not, as [plaintiff] would have us do, simply read [language] out of the settlement agreement. On the contrary, when interpreting a contract, we strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable."). To compound matters, Coinbase's proposed deletion would have no effect anyway, as other provisions in the UA separately require compliance with the Formal Complaint process before proceeding to arbitration. *See* UA at ¶ 8.2; *see also Brandwein*, *supra*.[4]

Further, the one-sidedness of the obligation to arbitrate is not the only unconscionable aspect of the agreement: the lengthy unilateral prearbitration dispute resolution procedure adds to the overall unconscionability of the agreement (including the delegation provision) and thus weighs against severance. *See* § IV(A)(2), *supra*. Additionally, the particularly insidious fee-shifting provision – applicable to both substantive disputes and the motions to compel arbitration (*i.e.*, disputes under the delegation provision) also adds to the unconscionability of the delegation provision as well as the larger agreement to arbitrate. *See* Dkt. No. 28-1, UA at ¶ 8.3; *Ramirez v. Charter Comm's, Inc.*, 2022 WL 498706, at *6-10 (Cal. Ct. App. Feb. 18, 2022) (finding fee-shifting provision applicable to motion to compel arbitration unconscionable where underlying statute provided for only one-way fee-shifting); *Maile v. Tillamook Country Smoker, LLC*, 2019 WL 11910943, at *4 (C.D. Cal. Feb. 1, 2019) ("Provisions requiring a bilateral fee-shifting…are unconscionable when they conflict with governing statutes that allow one-way

---

[4]    Coinbase notes Plaintiff's comment that it is "grammatically possible" to excise this language. But this "grammatical possibility" does not have the legal import that Coinbase apparently ascribes to it, nor does it take into account the fact that severance would have the effects (and non-effects) identified above. *See Jackson v. S.A.W. Ent. Ltd.*, 629 F. Supp. 2d 1018, 1030 (N.D. Cal. 2009) ("the fact that a severance can mechanically and grammatically be accomplished is not dispositive."); *Klink v. ABC Phones Of North Carolina, Inc.*, No. 20-CV-06276-EMC, 2021 WL 3709167, at *12 (N.D. Cal. Aug. 20, 2021) (severance is appropriate only where "'the illegality is *collateral to the main purpose of the contract*, and the illegal provision can be extirpated from the contract by means of severance or restriction.'") (emphasis added) (*citing Armendariz*, 24 Cal. 4th at 124).

fee-shifting…"); 15 U.S.C § 1693m(f) (providing for fees to prevailing defendant only in EFTA cases "brought in bad faith or for purposes of harassment"); *see also* 15 U.SC § 1693l ("No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter.").[5] These multiple substantively unconscionable provisions clearly support this Court's decision to decline to save the agreement via severance. *Dennison*, 47 Cal. App. 5th at 213 ("An agreement to arbitrate is considered 'permeated' by unconscionability where it contains more than one unconscionable provision.").

Notably, Coinbase's reliance on *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017) is wholly misguided, as in that case the court was willing to sever a "carve out" provision that exempted from arbitration certain *types* of claims likely to be brought by the defendant. *Poublon* says *nothing* about severing an arbitration provision that *completely* reserves a judicial forum for a defendant while at the same time requiring a consumer or employee to pursue claims in arbitration. *Compare O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267, 279 (2003) ("MRC did not simply 'carve out' a provision entitling it to file a lawsuit for injunctive relief. MRC drafted a completely one-sided agreement compelling O'Hare to arbitrate all of its claims while allowing MRC to file a lawsuit on any claim it had against him. Because unconscionability permeates the entire agreement, severance is not appropriate."). Further, in *Poublon*, the carve out was severed without affecting the remainder of the agreement – an impossibility here.

Coinbase went to significant lengths to force consumers into a lockstep, unilateral process that would insulate Coinbase from the judicial forum and, more specifically, class actions. In so doing, it overreached. As one court commented, "[t]o rewrite [an] [a]greement in such a way as to eliminate its unconscionable provisions under these circumstances

---

[5]     *See also Lou v. Ma Lab'ys, Inc.*, No. C 12-05409 WHA, 2013 WL 2156316, at *5 (N.D. Cal. May 17, 2013) (discussing "to the extent permitted by law" language like the language in the UA's fee-shifting provision) (*citing Assaad v. Am. Nat'l Ins. Co.*, No. C 10–03712–WHA, 2010 WL 5416841, *6 (N.D.Cal. Dec. 23, 2010) (same)).

would not further the interests of justice." *Carlson*, 239 Cal. App. 4th at 640. There are myriad grounds on which the Ninth Circuit can, should, and will decline to save Coinbase's arbitration provision by severance, and it is not a close call under existing precedent. Accordingly, neither this question nor any others posed by Coinbase are "serious" ones.

## B. THE BALANCE OF HARDSHIPS WEIGHS AGAINST A STAY

This Court has repeatedly found that the balance of hardships weighs against a stay pending appeal under similar circumstances. *See Dekker*, 2020 WL 2322916, at *2; *Wood*, 2019 WL 2437012, at *2; *Esparza*, 2017 WL 6731595, at *2-3. In reaching its conclusions, the Court has rejected arguments that continued litigation would result in a waste of time and resources – precisely the argument Coinbase makes. *See* Mot. at p. 13 ("But if this Court denies a stay, and the Ninth Circuit reverses the Order and compels arbitration, Coinbase will be unable to recover the substantial time and resources that it will have devoted to litigating this dispute during the appeal."); *compare Dekker*, 2020 WL 2322916, at *2 (rejecting argument that continued litigation in this Court would result in the waste of "substantial time and resources" on "litigating this dispute during the appeal that can never be recovered.").

Here, continued litigation – limited to issues relating to Plaintiff – would allow the parties to advance resolution of legal issues and exchange discovery, all of which will happen whether the case proceeds in court or in arbitration. Discovery and motion practice managed in Plaintiff's proposed fashion thus entirely undercuts Coinbase's arguments that it would "waste" time and money during the pendency of the appeal.[6] Conversely, a complete

---

[6]     The cases Coinbase cites concerning this factor are inapposite. In *Roe v. SFBSC Mgmt., LLC*, No. 14-CV-03616-LB, 2015 WL 1798926, at *3-4 (N.D. Cal. Apr. 17, 2015), Judge Beeler granted a stay largely on grounds that continued litigation in the FLSA opt-in case would result in defendants potentially having to file 500 or more motions to compel arbitration of opt-in plaintiffs' claims. The court also expressed concern about the expansive nature of class certification discovery. *Id.* Neither concern is relevant in this case, particularly given Plaintiff's proposal to engage in limited discovery. *Gray v. Golden Gate Nat. Recreational Area*, No. C 08-00722 EDL, 2011 WL 6934433, at *2 (N.D. Cal. Dec. 29, 2011) arose in the context of a requested stay pending a Rule 23(f) appeal, and thus (*cont'd*)

---

stay of proceedings would do nothing but result in the unnecessary delay of the resolution of critical legal issues and exchange of discovery and risk degradation of memories and evidence. *See Wood*, 2019 WL 2437012, at *2 ("A stay, moreover, would likely force plaintiffs to wait an extended period for any progress in this action, during which time relevant data may disappear and witnesses' memories may fade."); *Esparza*, 2017 WL 6731595, at *3 (same).

Additionally, Coinbase's lamentation that discovery rules under the American Arbitration Association Rules will potentially require less in the way of resources than discovery on Plaintiff's individual claim here is speculative, overblown, and wrong. As Coinbase acknowledges, the AAA Consumer Rules permit an arbitrator to authorize as much discovery as is "needed to provide for a fundamentally fair process." AAA Consumer Rule R-22(c). Thus, exchange of documents and information (*i.e.*, document requests and interrogatories) are appropriate, *see* R-22(a), and depositions are likewise common in arbitration. Indeed, Coinbase's current UA expressly provides for three depositions per

---

implicated imminent expenditure of resources on expert discovery, dispositive motions, and trial preparations on class claims. Here, there are no such imminent concerns. In *Zaborowski v. MHN Gov't Servs., Inc.*, No. C 12-05109 SI, 2013 WL 1832638, at *2 (N.D. Cal. May 1, 2013), Judge Illston granted a stay pending appeal in large part because California and federal courts were still grappling with the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), and in any case permitted issuance of notice under the FLSA. Here, there is no recent or imminent transformative caselaw in the vein of *Concepcion*.

At least three of Coinbase's cases were stayed because of the courts' concern that discovery concerning class certification could be potentially unnecessary depending on the outcome of the appeal – a non-issue here, where discovery can be limited to Plaintiff's individual claims. *See Murphy v. DirecTV, Inc.*, No. 2:07-CV-06465-FMC, 2008 WL 8608808, at *2 (C.D. Cal. July 1, 2008) (granting stay where defendant would have been forced to "respond to class-wide discovery and participate in other complex pre-trial proceedings."); *Kaltwasser v. Cingular Wireless LLC*, No. C 07-00411 JF (PVT), 2010 WL 2557379, at *2 (N.D. Cal. June 21, 2010) (stay granted on eve of class certification during pendency of resolution of *Concepcion*); *Wuest v. Comcast Cable Commc'ns Mgmt., LLC*, No. 17-CV-04063-JSW, 2017 WL 5569819, at *1 (N.D. Cal. Nov. 20, 2017) ("Plaintiff has brought this case as a class action, thus increasing the expense Defendants will incur.").

And in *Ali v. JP Morgan Chase Bank*, No. C 13-01184 JSW, 2014 WL 12691084, at *2 (N.D. Cal. Mar. 10, 2014), the court only granted a partial stay, permitting the parties two depositions and twenty document requests per side, largely consistent with the limited discovery Plaintiff proposes here.

---

side.[7] Notwithstanding its position in its current UA, it appears Coinbase envisions an arbitrator exercising discretion in a manner that would result in significantly more restrictive discovery than would take place on Plaintiff's individual claims in court. Such a concern is highly unlikely. For example, in either forum, Plaintiff will ask for relevant documents and information, such as all documents and information relating to Plaintiff's Coinbase account, as well as all documents and information concerning Coinbase's policies, practices, and procedures (applicable to Plaintiff) concerning investigation and resolution of alleged unauthorized transfers of funds. Depending on the nature of the documents and information provided, Plaintiff may need to take a limited number of depositions. And while the success of Plaintiff's case likely has little or nothing to do with anything he could say in his own deposition, Coinbase may elect to take his deposition anyway, regardless of the forum in which the case sits. Put simply, it is highly likely that discovery pertaining to Plaintiff's claims will be essentially the same in this Court as it would be in a potential arbitration.

Moreover, while Plaintiff seeks "only" a monetary recovery in this case,[8] a ruling that Coinbase is subject to the EFTA would impact Coinbase's ongoing relationship with legions of consumers that are currently "protected" only by the whims of Coinbase policy. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (stay not warranted where there was "ongoing and future harm").

For these reasons, the balance of hardships do not weigh in favor of granting a stay.

//

---

[7]    *See* https://www.coinbase.com/legal/user_agreement/united_states, Appx. 5, ¶ 1.4.

[8]    Coinbase's May 10, 2022 10-Q filing raises the specter of bankruptcy, stating "the crypto assets we hold in custody on behalf of our customers could be subject to bankruptcy proceedings and such customers could be treated as our general unsecured creditors." *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/1679788/000167978822000048/coin-20220331.htm, at p. 83. Of course, this statement also undercuts Coinbase's anticipated argument that it does not operate as a "financial institution" as defined by the EFTA. *See* 15 U.S.C. § 1693a(9) (A "financial institution" includes banks and credit unions, as well as "any other person who, directly or indirectly, *holds an account* belonging to a consumer.") (emphasis added); *see also* 12 CFR § 1005.2(j) (defining "person" to include a corporation).

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING APPEAL
CASE NO. 3:21-CV-07478-WHA

### C. THE PUBLIC INTEREST WEIGHS AGAINST A STAY

The final factor a court considers is whether the public interest would be served by a stay. Much like its arguments concerning the balance of hardships, Coinbase contends that a purported "waste of judicial resources" if Coinbase prevails on appeal would run contrary to public policy. See Mot. at pp. 15-16. But as discussed above, there would be no such waste of judicial resources if this case proceeds with the measured approach Plaintiff proposes, and in any case Coinbase's argument presumes the enforceability of an agreement this Court has already found unenforceable. *See Dekker*, 2020 WL 2322916, at *2; *Esparza*, 2017 WL 6731595, at *3; *Wood*, 2019 WL 2437012, at *2. Thus, what remains are the "countervailing public policy of access to [] federal courts and speedy, efficient, and just relief," *Dekker*, 2020 WL 2322916, at *2,[9] as well as the public interest in "the provision of individual consumer rights" embodied by the EFTA. 15 U.S.C. § 1693; *see also Clemmer v. Key Bank Nat. Ass'n*, 539 F.3d 349, 353 (6th Cir. 2008) ("The EFTA…is a remedial statute accorded a broad, liberal construction in favor of the consumer.").

### V. CONCLUSION

For the foregoing reasons, the Court should deny Coinbase's Motion.


Dated: May 19, 2022                     LAW OFFICE OF MATTHEW D. CARLSON


                                        By: */s/ Matthew D. Carlson*
                                            Matthew D. Carlson
                                            Attorney for Plaintiff

---

[9]      *See also Wood*, 2019 WL 2437012, at *2; *Esparza*, 2017 WL 6731595, at *3; Fed. R. Civ. P. 1.