KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
NICHOLAS D. MARAIS - # 277846
nmarais@keker.com
W. HAMILTON JORDAN - # 295004
wjordan@keker.com
ROBYN A. PARISER - # 335017
rpariser@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant COINBASE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ABRAHAM BIELSKI, on behalf of himself and all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>COINBASE, INC.<br><br>            Defendant. | Case No. 3:21-cv-07478-WHA<br><br>**DEFENDANT COINBASE, INC.'S REPLY IN SUPPORT OF MOTION TO STAY PENDING APPEAL**<br><br>Date:      June 9, 2022<br>Time:      8:00 a.m.<br>Dept.:     Courtroom 12 – 19th Floor<br>Judge:     Hon. William Alsup<br><br>Date Filed:  September 24, 2021<br><br>Trial Date:  None set |

1858416

1

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... - 1 -

II.     ARGUMENT .......................................................................................................... - 3 -

        A.      Coinbase's appeal presents serious legal questions and a sufficient
                likelihood of success on the merits. .......................................................... - 3 -

                1.      Coinbase's appeal raises serious legal questions about whether the
                        Court decided questions that should have been left to an arbitrator. ....... - 3 -

                2.      Coinbase's appeal raises serious legal questions about the
                        unconscionability of pre-arbitration dispute requirements in
                        consumer agreements. ..................................................................... - 5 -

                3.      There is a "reasonable probability" or "fair prospect" that the Ninth
                        Circuit will hold that any unconscionable terms can be cured
                        through severance. .......................................................................... - 9 -

        B.      Coinbase will suffer irreparable harm absent a stay. ....................................... - 10 -

        C.      Mr. Bielski will suffer no harm from a stay pending appeal. ........................... - 13 -

        D.      The public interest favors a stay pending appeal. ........................................... - 14 -

III.    CONCLUSION....................................................................................................... - 15 -

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Berk v. Coinbase, Inc.*,
5      2019 WL 3561926 (N.D. Cal. Aug. 6, 2019), *rev'd and remanded on other
       grounds*, 840 F. App'x 914 (9th Cir. 2020) ...........................................................................10

6

*Berk v. Coinbase, Inc.*,
7      840 F. App'x 914 (9th Cir. 2020) .............................................................................................1

8

*Brice v. Haynes Invs., LLC*,
9      13 F.4th 823 (9th Cir. 2021) ...........................................................................................3, 4, 5

10

*Dekker v. Vivint Solar, Inc.*,
       2020 WL 2322916 (N.D. Cal. May 11, 2020) ...............................................................6, 8, 12

11

*Durruthy v. Charter Commc'ns, LLC*,
12      2020 WL 6871048 (S.D. Cal. Nov. 23, 2020) ...........................................................................7

13

*Erceg v. LendingClub Corp.*,
14      475 F. Supp. 3d 1071 (N.D. Cal. 2020) ...................................................................................13

15

*Esparza v. SmartPay Leasing, Inc.*,
       2017 WL 6731595 (N.D. Cal. Dec. 30, 2017) ...................................................................12, 13

16

*Fox v. Vision Serv. Plan*,
17      2017 WL 735735 (E.D. Cal. Feb. 24, 2017) .............................................................................7

18

*Gray v. Golden Gate Nat. Recreational Area*,
19      2011 WL 6934433 (N.D. Cal. Dec. 29, 2011) ........................................................................10

20

*Int'l Ass'n of Machinsts & Aerospace Workers v. Aloha Airlines*,
       776 F.2d 812 (9th Cir. 1985) .....................................................................................10, 13

21

*Johnson v. Starbucks Corp.*,
22      2019 WL 3220273 (N.D. Cal. Jul. 17, 2019) ..........................................................................14

23

*Leiva-Perez v. Holder*,
24      640 F.3d 962 (9th Cir. 2011) .....................................................................................1, 2, 5, 8

25

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
       460 U.S. 1 (1983) ....................................................................................................................14

26

*Murphy v. DirecTV, Inc.*,
27      2008 WL 8608808 (C.D. Cal. July 1, 2008) ....................................................................12, 13

28

*Perez v. DirecTV Grp. Holdings, LLC*,
       2017 WL 8117452 (C.D. Cal. Sept. 22, 2017) .....................................................................2, 5

ii

1858416

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) ........................................................................1, 5, 9, 12

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010)....................................................................................................4, 5

*Richards v. Ernst & Young LLP*,
   2012 WL 92738 (N.D. Cal. Jan. 11, 2012) ............................................................2, 14

*Roe v. SFBSC Mgmt., LLC*,
   2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) .........................................................11

*Sealey v. Chase Bank (U.S.A.), N.A.*,
   2020 WL 5814108 (N.D. Cal. Sept. 29, 2020) .......................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)..............................................................................................10, 13

*Sultan v. Coinbase, Inc.*,
   354 F. Supp. 3d 156 (E.D.N.Y. 2019) .......................................................................1

*Tarverdiyeva v. Coinbase Global, Inc.*,
   2021 WL 4527960 (M.D. Fla. Sept. 8, 2021), *appeal dismissed*, 2022 WL
   997800 (11th Cir. Mar. 22, 2022) ..............................................................................2

*Ward v. Est. of Goossen*,
   2014 WL 7273911 (N.D. Cal. Dec. 22, 2014) ................................................. *passim*

*Wood v. Team Enterprises, LLC*,
   2019 WL 2437012 (N.D. Cal. June 11, 2019) .........................................................12

*Wuest v. Comcast Cable Commc'ns Mgmt., LLC*,
   2017 WL 5569819 (N.D. Cal. Nov. 20, 2017) ............................................3, 10, 11

**State Cases**

*Dotson v. Amgen, Inc.*,
   181 Cal. App. 4th 975 (2010) ..................................................................................12

*Nyulassy v. Lockheed Martin Corp.*,
   120 Cal. App. 4th 1267 (2004) .............................................................................6, 7

*Ontiveros v. DHL Express (USA), Inc.*,
   164 Cal. App. 4th 494 (2008) ...................................................................................9

*Pierre v. Coinbase, Inc.*,
   2021 WL 1538015 (N.Y. Sup. Ct. Apr. 14, 2021)....................................................2

**Federal Statutes**

FAA § 2.......................................................................................................................4

1858416

**Rules**

Fed. R. Civ. Pro. 26, 30, 33, and 34 ................................................................................................ 11

COINBASE, INC.'S REPLY IN SUPPORT OF MOTION TO STAY PENDING APPEAL
Case No. 3:21-cv-07478-WHA

1858416

## I.    INTRODUCTION

In most circuits, a stay pending the appeal of an order denying a motion to compel arbitration is mandatory, for the simple reason that continuing in the district court would inevitably affect "aspects of the case" on appeal.  *See* Dkt. 48 ("Mtn.") at 4:27–5:11 (citing cases).  In this circuit, district courts have discretion to assess whether a stay is appropriate.  But, in making that determination, courts hold moving parties to a relatively low threshold: they need demonstrate only that their appeal has a "'reasonable probability' or 'fair prospect'" of success, *or* that it presents "a substantial case on the merits," *or* that it raises "serious legal questions." *See Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011).[1]  Here, Coinbase has done all three.

Coinbase recognizes that this Court agreed with Mr. Bielski's arguments regarding its arbitration agreement.  When considering *this* Motion, however, it matters not whether the Court was right; what matters, instead, is whether the Court's conclusions are novel and untested.  They are.  Critically, despite two rounds of briefing—and despite bearing the burden of demonstrating unconscionability—Mr. Bielski still has not identified ***any*** binding case that invalidates a delegation provision like the one in Coinbase's User Agreement ("UA"), evaluates pre-arbitration procedures in the consumer context, or holds that courts cannot sever unilateral obligations.  *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) ("Under California law, the party opposing arbitration bears the burden of proving any defense, such as unconscionability."). That alone warrants a stay.  Moreover, the precedent that does exist (that is, cases assessing delegation provisions and arbitration agreements more generally) demonstrates a "reasonable probability" that the Ninth Circuit will disagree with this Court's conclusions regarding the UA.

Coinbase is not aware of any case that has invalidated an express delegation provision like the one in Coinbase's UA.  To the contrary, many courts have compelled arbitration—and many other plaintiffs have filed arbitration demands—based on the same (or substantially the same) Coinbase arbitration agreement this Court found unconscionable.  *See, e.g.*, *Berk v. Coinbase, Inc.*, 840 F. App'x 914, 916 (9th Cir. 2020) (reversing district court and remanding with instructions to compel arbitration); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 162 (E.D.N.Y.

---

[1] All internal marks and citations have been removed and emphasis added, except where noted.

2019) (granting motion to compel arbitration); *Pierre v. Coinbase, Inc.*, 2021 WL 1538015, at *4 (N.Y. Sup. Ct. Apr. 14, 2021) (same); *Tarverdiyeva v. Coinbase Global, Inc.*, 2021 WL 4527960, at *2 (M.D. Fla. Sept. 8, 2021) (same), *appeal dismissed*, 2022 WL 997800 (11th Cir. Mar. 22, 2022).  Moreover, Coinbase is not aware of any case evaluating, let alone striking down, any pre-arbitration procedures in the consumer context—let alone a pre-arbitration procedure like the one at issue here—even though pre-arbitration procedures like these are commonplace.  *See infra* note 3.

Coinbase's appeal raises "serious legal questions" with serious consequences for businesses in this district and throughout the country.  Even if "the Court is confident in its ultimate determination," a stay is appropriate whenever an appeal "present[s] substantial questions that bear on the proper application of the federal and state policies favoring arbitration." *Ward v. Est. of Goossen*, 2014 WL 7273911, at *3 (N.D. Cal. Dec. 22, 2014); *see also Leiva-Perez*, 640 F.3d at 964.  Such substantial questions have been raised here.  These proceedings should therefore be stayed until the Ninth Circuit has an opportunity to weigh in.  *See, e.g., Ward*, 2014 WL 7273911, at *3 (granting a stay because "while there is plentiful case law regarding the state and federal policies favoring arbitration, none of these cases address facts similar to the ones at hand"); *Perez v. DirecTV Grp. Holdings, LLC*, 2017 WL 8117452, at *2 (C.D. Cal. Sept. 22, 2017) (granting a stay because defendants met "the low showing of success on the merits needed" to warrant a stay where "there were a few instances where the Court's reasoning departed from that of other district courts considering similar issues."); *Richards v. Ernst & Young LLP*, 2012 WL 92738, at *5 (N.D. Cal. Jan. 11, 2012) (granting a stay because another court could conclude differently, which demonstrates a sufficient likelihood of success on the merits).

Finally, the "balance of harms" clearly tips in Coinbase's favor.  Proceeding here while the appeal is pending would require the parties and the Court to expend significant resources—on a motion to dismiss; on discovery that would be much broader than that allowed under the AAA's Consumer Rules; on depositions, which are not contemplated in arbitration at all; and, later, on dispositive motions, which are also disfavored in arbitration.  That is "contrary to public policy" because "judicial resources will be wasted if this case proceeds all the way to trial, only for the

Court to later discover that the case should have proceeded through arbitration." *Ward*, 2014 WL 7273911, at *5. For his part, Mr. Bielski identifies no harm that would befall him from waiting for the appeal. Instead, his lawyer argues that he *wants* this Court to expend unnecessary resources on a motion to dismiss so that he can leverage any decision in "*other*" cases he is pursuing in arbitration. *See* Dkt. 50 ("Opp.") at 3:12–13. These are not cognizable harms.

For all of these reasons, the Court should stay these proceedings until the Ninth Circuit has ruled on Coinbase's appeal.

## II.   ARGUMENT

### A.   Coinbase's appeal presents serious legal questions and a sufficient likelihood of success on the merits.

#### 1.   Coinbase's appeal raises serious legal questions about whether the Court decided questions that should have been left to an arbitrator.

Coinbase's appeal presents a serious legal question as to whether the Court's unconscionability findings relate specifically to the UA's delegation provision (as required by controlling precedent) or mistakenly focus on other provisions of the UA (such as the allegedly unilateral arbitration provision and pre-arbitration procedure). *See* Mtn. 6–8. And there is at least a sufficient likelihood of success on the merits of Coinbase's position because the Ninth Circuit has previously specifically decreed that "[w]here a delegation provision exists, courts first must focus on the enforceability of that specific provision, not the enforceability of the arbitration agreement as a whole. To do otherwise would render the delegation provision a nullity." *Brice v. Haynes Invs., LLC*, 13 F.4th 823, 827 (9th Cir. 2021). This is a threshold question: if the Ninth Circuit determines that this Court got it wrong, then Mr. Bielski's arguments that the UA is unfair or unilateral *must* be evaluated by an arbitrator, not by this Court. *See Wuest v. Comcast Cable Commc'ns Mgmt., LLC*, 2017 WL 5569819, at *1 (N.D. Cal. Nov. 20, 2017) (granting a stay pending appeal because the defendant raised "serious legal questions" about whether questions of arbitrability should have been delegated to an arbitrator).

There is no dispute that the UA contains a clear and express delegation clause, in which the parties agreed that "*all*" disputes about the agreement's enforceability would be sent to an arbitrator:

1
2
3

This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. ***All such matters shall be decided by an arbitrator and not by a court or judge.***

4     *See* Dkt. 28-1 ("UA") at § 8.3; *see also* Dkt. 42 ("Order") at 4:14.

5         Nor is there any dispute that, where an arbitration agreement contains a delegation

6     provision like this, courts may consider *only* those arguments that "go to the validity of the

7     delegation provision" itself—not challenges to other parts of the agreement or to the agreement as

8     a whole.  *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).

9         Yet, those are the very challenges Mr. Bielski invited this Court to weigh.  When he

10    opposed Coinbase's motion to compel, Mr. Bielski did not argue that the delegation provision

11    *itself* created a unilateral obligation.  Instead, he claimed that (1) "the ***broader*** agreement to

12    arbitrate" is "deficien[t]" and unconscionable, and (2) because "the delegation provision is

13    expressly incorporated into the larger 'Arbitration Agreement,'" it is "therefore subject to the

14    same deficiencies as the broader agreement to arbitrate."  Opp. at 6:12–15.  That logic runs afoul

15    of *Rent-A-Center* and other binding caselaw.  In *Rent-A-Ctr.*, the United States Supreme Court

16    explained that under Section 2 of the FAA, the delegation provision is severable from the

17    reminder of the arbitration agreement.  561 U.S. at 70–71.  And lower courts have repeatedly

18    followed this direction.  *See Brice*, 13 F.4th at 825, 827; *Brennan*, 796 F.3d at 1133.  Mr.

19    Bielski's position is not only contrary to this binding caselaw, it is unprecedented.  In two rounds

20    of briefing, Mr. Bielski has not identified a single case invalidating a delegation provision

21    because it "incorporated" an allegedly problematic provision from somewhere else in the

22    agreement.  Indeed, under Mr. Bielski's logic, delegation provisions and *Rent-A-Center* would be

23    rendered meaningless: courts could circumvent them by finding that, if an arbitration agreement

24    were invalid, then a related delegation provision is too.

25        The Court adopted this approach in its Order, in which it reasoned that, because the

26    arbitration agreement requires users to follow a "tripartite dispute resolution process," and

27    because the delegation provision references the broader "Arbitration Agreement," the "delegation

28    clause imposes no requirements on Coinbase . . . ."  *See* Order at 7–8.  In other words, the Court

1858416

identified what it perceived as a unilateral obligation *elsewhere* in the "Arbitration Agreement," which it then incorporated into the delegation provision. *See* Order at 6:4–5 ("[L]ike nesting boxes, the delegation clause incorporates several defined terms that specify the matters delegated to the arbitrator."); *see also* Mtn. at 7:5–20. There is at least a "fair prospect" that the Ninth Circuit will conclude that this approach violates *Rent-A-Center* and the FAA.

If the parties' roles were reversed—that is, if Mr. Bielski claimed that the arbitration agreement bound Coinbase and Coinbase disagreed—the parties would plainly have a "dispute[] . . . related to the . . . enforceability . . . of the Arbitration Agreement." UA § 8.3. The parties expressly delegated that dispute to "an arbitrator and not . . . a court or judge." *Id*. In other words, even if the Court concluded that the *arbitration agreement* works unilaterally, the delegation provision does not. *See Rent-A-Ctr.*, 561 U.S. at 72; *Brice*, 13 F.4th at 825, 827. There is a "'reasonable probability' or 'fair prospect'" that the Ninth Circuit, applying *Rent-A-Center*, will agree. At the very least, the fact that Mr. Bielski has cited ***no*** precedent adopting his "incorporation" argument to invalidate a delegation provision justifies a stay pending appeal— even if this Court thinks the Ninth Circuit will ultimately affirm. *See, e.g.*, *Ward*, 2014 WL 7273911, at *3; *Leiva-Perez*, 640 F.3d at 971; *see also Perez*, 2017 WL 8117452, at *1–2.

> ## 2.    Coinbase's appeal raises serious legal questions about the unconscionability of pre-arbitration dispute requirements in consumer agreements.

The second serious legal question for the Ninth Circuit is whether the UA's simple, two-step pre-arbitration process is or could be unconscionable. *See* Mtn. at 9:11–10:21. As far as Coinbase is aware, this Court's conclusions—that the pre-dispute process is "onerous" and therefore "unconscionable"—are unprecedented. As Coinbase has explained, and as this Court's Order recognized, there is no existing caselaw assessing pre-arbitration requirements in the consumer context. *See* Order at 8:13–22. Mr. Bielski, who bears the burden of proving unconscionability, is unable to cite ***a single*** case striking down a similar pre-arbitration procedure in the consumer context. *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) ("Under California law, the party opposing arbitration bears the burden of proving any defense, such as unconscionability."). The Court's Order, likewise, cited none. The absence of federal

court of appeals precedent discussing pre-arbitration dispute procedures in the consumer context—and the ubiquity of such provisions, *see infra* note 3—present precisely the sort of "serious legal question" that merits a stay. *Dekker v. Vivint Solar, Inc.*, 2020 WL 2322916, at *2 (N.D. Cal. May 11, 2020) ( "the absence of any federal court of appeals precedent directly addressing" the issue at hand "presents a serious legal question.").

Moreover, the case law that does exist (that is, cases assessing pre-arbitration requirements in *non-consumer* contexts) illustrates that there is a "reasonable probability" the Ninth Circuit will find the UA's pre-arbitration procedure commercially justified and reverse. Notably, Mr. Bielski did not come forward with evidence establishing that the UA's pre-arbitration process is onerous—because it is not. The cases Mr. Bielski relied on to argue this point set a very high bar for onerousness, and his briefing misconstrued what the UA actually requires, arguing in his Opposition that users *must* "describe their complaint 'in full detail' and upload documentation in support thereof." *See* Opp. at 9:7–8; *see also* Dkt. 29 at 16. This is simply incorrect. In truth, as Coinbase has explained, a simple online form gives users the *option* to "describe the incident and complaint," to briefly explain how Coinbase might "address it to [the user's] satisfaction," and, if they so choose, to upload documents they want Coinbase to review.[2] But all the process requires is that users fill out an online form, identifying themselves and the nature of their complaint so that Coinbase can attempt to resolve it before the parties proceed to arbitration. *See* Mtn. at 10:5–21.

Mr. Bielski also misconstrues the cases he cites, inaccurately likening Coinbase's online form to significantly more convoluted procedures and agreements in other cases. For example, in *Nyulassy*, the case on which he primarily relies, the California Court of Appeal identified *three* separate concerns about an employer's arbitration agreement—including that the employer sought to shorten the employees' statute of limitations. *See* Opp. at 7:14–8:3; *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1282-83 (2004). *Nyulassy*'s suite of concerns, "taken together," rendered the agreement unconscionable. *See Nyulassy*, 120 Cal. App. at 1282–83; *see*

---

[2] Users can also submit the Formal Complaint form while leaving these fields empty. *See* https://help.coinbase.com/en/contact-us/submit-a-complaint.

1858416

*also* Mtn. at 9–10.

In his Opposition, Mr. Bielski relies on a new case, *Fox*, which he claims supports his position and which he describes as "applying *Nyulassy* outside [the] employment context." *See* Opp. at 8:15–21.  He is wrong on both counts.  First, *Fox* was essentially an employment dispute: Dr. Fox, an optometrist, worked as "a contracted doctor" with VSP, an insurance company.  *Fox v. Vision Serv. Plan*, 2017 WL 735735, at *1 (E.D. Cal. Feb. 24, 2017).  The substance of the dispute was whether Dr. Fox was entitled to payments from VSP under the terms of her Network Doctor Agreement.  *Id*.  Second, the *Fox* court did not conclude that VSP's pre-arbitration procedures were unconscionable; instead, it simply found, in the context of a motion for a preliminary injunction, that one side's arguments were "more persuasive" than the other's, while recognizing that "all the evidence with respect to this issue has yet to be presented by the parties." *Id*. at *7.  Critically, the *Fox* court identified a series of problems with VSP's arbitration agreement that are nowhere found here, including that it was likely *illegal* because it violated a state statute specific to insurance regulations and contained a fee arrangement that could require Fox to pay VSP's arbitration costs even if she prevailed in arbitration.  *Id*. at *4, 8–9.

In fact, courts have routinely accepted and upheld pre-arbitration disputes procedures, some like those in the UA, and others that were significantly more burdensome.  *See, e.g., Durruthy v. Charter Commc'ns, LLC*, 2020 WL 6871048, at *12 (S.D. Cal. Nov. 23, 2020); Dkt. 38 at 3–4 (citing cases).  Mr. Bielski still has not identified—and Coinbase not aware of—a *single* case (prior to this one) in which a court found procedures like Coinbase's unduly burdensome or unconscionable.

Mr. Bielski is similarly mistaken in his claim that "Coinbase has not advanced any 'legitimate commercial need' for the procedure, nor any justification based on 'business realities.'"  Opp. at 8:19–20.  Coinbase has previously explained that its "pre-arbitration procedures exist for good reason.  By establishing a straightforward, uniform process—an online complaint form—Coinbase can investigate any user complaints, provide additional information to its users, and potentially resolve their concerns before the parties resort to costly arbitration." *See* Dkt. 30 at 10:18–21.  Coinbase is by no means alone in that view: companies across the United

States require their customers to submit complaint forms as part of their efforts to resolve disputes.[3]  In its Order, the Court dismissed these justifications.  *See* Order at 8:26–28.  Whether the Court is correct that these procedures are "illegitimate" or "unjustified" appears to be untested.  As far as Coinbase knows, this is the first time any court has suggested that consumer-facing companies may not include a Formal Complaint Process like Coinbase's in a user agreements or terms of service.  Given the ramifications, and the lack of precedent, this is a textbook example of the kind of "serious question" that justifies a stay pending appeal.  *See Leiva-Perez*, 640 F.3d at 971; *see also Dekker*, 2020 WL 2322916, at *2; *Ward*, 2014 WL 7273911, at *3.

Mr. Bielski ultimately attempts to brush aside this portion of the parties' dispute, arguing that even if the Ninth Circuit disagrees with this Court's decision, it will "have no bearing on whether the Order is affirmed."  Opp. at 6:26–28.  His argument appears to be that the Court's conclusions about the pre-dispute process are entirely immaterial because the "one-sided nature of the agreement" is "the end of the story."  *Id.* at 7:2–3.  Again, he is wrong.  As the Court's Order makes clear, its findings about the pre-dispute procedures are central to both its holding that the UA is unconscionable and its holding that the UA could not be cured through severance. *See* Order at 9:1–6 ("[T]he delegation clause only delegates questions of arbitrability that emerge from the user agreement's tripartite dispute-resolution procedure, not arbitration, generally. Because the delegation clause imposes an onerous, unfair burden beyond that of a typical delegation clause, this order finds it substantively unconscionable."); *id*. at 11:23–25 ("The

---

[3] *See, e.g.*, Hotels.com Terms and Conditions (available at https://www.hotels.com/customer_care/terms_conditions.html) (requiring that should users have a dispute with the company, "you agree to communicate your claim to Hotels.com by contacting . . . Customer Support," and then wait 60 days before "seek[ing] relief through arbitration or in small claims court . . . ."); ExpediaCruises.com Terms of Use (available at https://www.expediacruises.com/en-US/900177/Common/TermsOfUse) (requiring that customers "agree to give us an opportunity to resolve any disputes or claims relating in any way to the Website . . . by contacting Expedia Customer Support" and then seeking relief through arbitration or in small claims court "[i]f we are not able to resolve your Claims within 60 days"); Kayak.com Terms & Conditions (available at https://www.kayak.com/terms-of-use) (requiring "[i]f you intend to seek arbitration, you must first send to the Company, by certified mail, a written Notice of Dispute ("Notice") . . . describ[ing] the nature and basis of the claim or disputes and the specific relief sought" and that the parties may commence arbitration "[i]f you and the Company cannot reach an agreement to resolve the claim within thirty (30) days after the Notice is received.")

1    inclusion of the requirement for users to engage in an onerous pre-arbitration procedure in

2    multiple provisions further indicates that severance is not possible here."); *see also* Hr'g Tr.,

3    20:22–25 (Dkt. 41) (asking the parties for "further briefing . . . on this issue I've raised about

4    onerous preconditions"); Dkts. 38–39.

5            **3.     There is a "reasonable probability" or "fair prospect" that the Ninth**
             **Circuit will hold that any unconscionable terms can be cured through**
6            **severance.**

7            Coinbase believes that the Ninth Circuit will find that both the delegation provision and

8    the arbitration agreement are bilateral and enforceable.  But, even if it agreed with this Court on

9    those points, there is a "'reasonable probability' or 'fair prospect'" that the Ninth Circuit would

10   find that any unilaterality could be cured by severing the prefatory clause in the UA's arbitration

11   agreement (*i.e.*, "~~If we cannot resolve the dispute through the Formal Complaint Process~~").

12           This Court's refusal to sever the prefatory clause is grounded in the presumption that

13   "unilaterality . . . permeates the whole" of the agreement because of the purported unconscionability

14   of the pre-arbitration dispute process.  Order at 11:7–8; *see also id*. at 11:20–25.  Likewise, in his

15   Opposition, Mr. Bielski argues that severance is futile based on his belief that the alleged "tripartite

16   dispute resolution procedure" is unconscionable.  Opp. at 9:28, *see also id*. at 10:4–6, 11:5–8.  But

17   there is at least a fair prospect that Ninth Circuit will conclude that severing the 11-word prefatory

18   clause would leave the parties with a provision that says: "[Y]ou and we agree that any dispute

19   . . . shall be resolved by binding arbitration."  *See* UA at § 8.3; *see also* Dkt. 29 at 17 n.19 (Bielski

20   conceding that it is "possible for the Court to strike the language that renders the delegation

21   provision (and the entire agreement to arbitrate) unilateral").  Indeed, if the Ninth Circuit

22   concluded that this was the only objectionable term, it would most likely hold that severance is

23   not just possible, but required.  *See Poublon*, 846 F.3d at 1272 (California courts have expressed

24   the "strong preference to sever" unconscionable terms unless an agreement is "permeated by

25   unconscionability") (citing Cal. Civ. Code § 1670.5(a)); *id*. at 1273 ("California courts have held

26   that a factor weighing against severance exists when the agreement contains more than one

27   objectionable term."); *Ontiveros v. DHL Express (USA), Inc.*, 164 Cal. App. 4th 494, 515 (2008)

28   (in considering severance, courts weigh "whether the agreement contains more than one

1858416

objectionable term."); *see also* UA, § 9.7 ("If any provision of this Agreement shall be determined to be invalid or unenforceable . . . , such provision will be changed and interpreted to accomplish the objectives of the provision to the greatest extent possible under any applicable law and the validity or enforceability of any other provision of this Agreement shall not be affected.").

Rather than engage this argument, Mr. Bielski now claims that the UA contains an "insidious fee-shifting provision" that weighs against severance.  Opp. at 11:13.  As a legal matter, that argument is misguided: another court in this district has already considered this question in another case involving Coinbase and found that "[b]ilateral fee-shifting provisions," like those in the UA, "are not substantively unconscionable under California law."  *Berk v. Coinbase, Inc.*, 2019 WL 3561926, at *1 n.1 (N.D. Cal. Aug. 6, 2019), *rev'd and remanded on other grounds*, 840 F. App'x 914 (9th Cir. 2020).  But, more importantly, this is not and will not be an issue on appeal: Mr. Bielski never put forth any argument about the UA's "fee-shifting provision" in opposing Coinbase's motion to compel, and this Court never analyzed it.

## B. Coinbase will suffer irreparable harm absent a stay.

The balance of hardships weighs in favor of a stay.  Coinbase will suffer considerable irreparable harm absent a stay by being deprived of the "inexpensive and expeditious means of resolving . . . dispute[s]" afforded by arbitration.  *Int'l Ass'n of Machinsts & Aerospace Workers v. Aloha Airlines*, 776 F.2d 812, 815 (9th Cir. 1985); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (noting "the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes").  District courts in the Circuit have repeatedly recognized that by requiring parties to continue litigating while a motion to compel arbitration is pending appeal "the advantages of arbitration—speed and economy—are lost forever."  *Wuest*, 2017 WL 5569819, at *1, quoting *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984).  This consequence is "serious, perhaps, irreparable."  *Id.*; *see also Ali*, 2014 WL 12691084, at *1; *Zaborowski*, 2013 WL 1832638, at *2.  Indeed, forcing Coinbase to incur the expense of litigation before its appeal is heard would render "their right to appeal . . . meaningless."  *Gray v. Golden*

1858416

1    *Gate Nat. Recreational Area*, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011).  This, in part,

2    is why most circuits mandate a stay in these circumstances.  *See* Mtn. at 4–5.

3         Mr. Bielski concedes that the harm caused to Coinbase absent a stay would be amplified

4    here because he purports to represent a class, and therefore proposes that the Court limit

5    discovery to his individual claim.  *See* Opp. at 13:18.  In other words, if this Court were to deny

6    Coinbase's Motion, the parties ***agree*** that it would be improper to proceed to class discovery

7    while Coinbase's appeal is pending.  *See Roe v. SFBSC Mgmt., LLC*, 2015 WL 1798926, at *3

8    (N.D. Cal. Apr. 17, 2015) ("The burdens associated with discovery in a putative class action are

9    substantially greater than in an individual arbitration."); *Wuest*, 2017 WL 5569819, at *1

10   (irreparable harm was amplified because plaintiff "brought this case as a class action, thus

11   increasing the expense Defendants will incur").

12        However, Mr. Bielski wrongly suggests that limiting discovery to his individual claims

13   while Coinbase's appeal is pending would somehow eliminate Coinbase's harms.  *See* Opp. at

14   13–15.  His premise—that "discovery pertaining to Plaintiff's claims will be essentially the same

15   in the Court as it would be in a potential arbitration"—is incorrect.  *Id.* at 15:13–14.  Among other

16   discovery, proceeding in district court under the Federal Rules of Civil Procedure would require

17   initial disclosures and presumptively entitle the parties to ten depositions, twenty-five

18   interrogatories, and any number of requests for production within the scope of Rule 26(b).  *See*

19   Fed. R. Civ. Pro. 26, 30, 33, and 34.  However, the AAA's Consumer Rules, which the parties

20   agree would govern this dispute in arbitration, do not entitle parties to *any* of this discovery.  *See*

21   UA § 8.3; *see also* Opp. at 14:10.  While the Consumer Rules allow an arbitrator to grant the

22   discovery needed "to provide for a fundamentally fair process," they do not authorize depositions,

23   interrogatories, or document requests as a matter of course.  AAA Consumer Arbitration Rules at

24   R-22(a), (c).

25        Next, Mr. Bielski mistakenly (or misleadingly) points to the *current* version of Coinbase's

26   UA and argues that the parties have agreed to three depositions each, even in arbitration.  *See*

27   Opp. at 14:14-15:1; *id.* at n.7 (citing Coinbase's current UA).  That's wrong in two ways.  First,

28   Mr. Bielski has expressly argued in prior briefing that he is "unquestionably *not* subject to the

- 11 -

new UA." Dkt. 29 at 4 n.6. The version of the Coinbase UA at issue in Mr. Bielski's case does not contemplate depositions at all. *See* UA § 8.3. Second, even in the current UA, the parties have agreed that they "will not *request* more than three depositions per side" in any arbitration.[4] This means that, under the new UA, it would still be up to the arbitrator and not the parties to decide whether *any* depositions are necessary—and, even if the arbitrator decided they were necessary, the parties would have agreed by contract to a maximum of three. Here, by contrast, the AAA's Consumer Rules and the relevant User Agreement don't contemplate any depositions.

More broadly, Mr. Bielski fails to acknowledge that the scope and breadth of discovery in arbitration, which is entirely within the arbitrator's discretion, is significantly more limited than in federal court. *See Poublon*, 846 F.3d at 1270 ("The California Supreme Court has made clear that limitation on discovery is one important component of the simplicity, informality, and expedition of arbitration."); *see also Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 984 (2010) ("discovery limitations are an integral and permissible part of the arbitration process"). Therefore, even if this Court limited discovery to Mr. Bielski's individual claim, as he now proposes, Coinbase would be deprived of the streamlined and efficient discovery provided by arbitration, and would suffer irreparable harm as a result. *See Ward*, 2014 WL 7273911, at *4 (finding irreparable harm where the relevant arbitration procedure "is a streamlined process" without "formal discovery, law and motion practice, or other pre-trial hearings" because "[t]he contrast, in time and expense, between the arbitration process . . . and the process of litigation in federal court is substantial"); *Murphy v. DirecTV, Inc.,* 2008 WL 8608808, at *2 (C.D. Cal. July 1, 2008) (defendant would suffer irreparable harm absent stay because it would lose "any and all practical benefits that [it] would have been afforded by the compulsion of arbitration").

Mr. Bielski's reliance on this Court's denials of other motions to stay is misplaced, because none of those cases present facts similar to those here. Importantly, unlike here, the AAA's limited Consumer Rules are not at issue in any of those cases. *See Dekker v. Vivint Solar, Inc.*, 2020 WL 2322916 (N.D. Cal. May 11, 2020); *Wood v. Team Enterprises, LLC*, 2019 WL 2437012, at *1 (N.D. Cal. June 11, 2019); *Esparza v. SmartPay Leasing, Inc.*, 2017 WL 6731595,

---

[4] https://www.coinbase.com/legal/user_agreement/united_states, at Appx. 5 § 1.4.

1858416

at *1 (N.D. Cal. Dec. 30, 2017).  Thus, even though discovery produced in federal court might be usable in a future arbitration, that misses the point.  *Cf. Esparza*, 2017 WL 6731595, at *1 (holding that the defendant would not experience harm absent a stay because "all discovery in this action will be usable in any future arbitration").  Forcing Coinbase to proceed under the Federal Rules would force it to expend considerably more resources than would be required in arbitration, thus depriving Coinbase of one of the benefits that courts routinely recognize as a critical advantage of arbitration.  *See, e.g.*, *Int'l Ass'n of Machinsts*, 776 F.2d at 815; *Stolt-Nielsen*, 559 U.S. at 685; *Ward*, 2014 WL 7273911, at *4; *Murphy*, 2008 WL 8608808, at *2.

Moreover, Mr. Bielski ignores the substantial and costly motion practice that would ensue if the parties continued in this Court while Coinbase's appeal is pending.  Mr. Bielski tacitly acknowledges one such burden when he explains that he *wants* Coinbase and this Court to expend resources on a motion to dismiss because his lawyer hopes to leverage any such ruling in "*other* individual arbitration that are pending against Coinbase."  Opp at 3:9–13.  There would be other motions too, including inevitable discovery disputes and potential dispositive motions, all of which would unnecessarily tax the parties' and this Court's resources.  These sorts of issues need not (and should not) be resolved now, when there is a "reasonable prospect" that the Ninth Circuit will send the parties to arbitration and they will have to begin all over again.

In short, the irreparable harm that Coinbase will face absent a stay is considerable.

### C.   Mr. Bielski will suffer no harm from a stay pending appeal.

While Coinbase would suffer considerably without a stay, Mr. Bielski would suffer no harm from a stay.  In his Opposition, Mr. Bielski failed to illustrate or even argue that he would suffer *any* substantial injury absent a stay.  He concedes that he is seeking only monetary recovery and does not claim that he is suffering any ongoing harm.  *See* Opp. at 15.  He argues that a stay would "potentially lead to the degradation of evidence," *see id*. at 3:19–20, but such concerns are entirely speculative and are easily resolved through standard litigation holds like the one already issued in this case.  *See* Mtn. at 16 ("Coinbase has already taken steps to preserve the relevant evidence."); *see also Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1077 (N.D. Cal. 2020) (finding the balance of hardships weighs in favor of a stay where because it would

1858416

1    "eliminate a potential hardship by not requiring the parties to go forward with premature

2    discovery" and cause minimal harm because a litigation hold preserved relevant evidence); *Sealey*

3    *v. Chase Bank (U.S.A.), N.A.*, 2020 WL 5814108, at *2 (N.D. Cal. Sept. 29, 2020) (finding the

4    balance of hardships weighs in favor of a stay where ongoing harm is not alleged and defendant

5    has been made aware of its duty to institute a litigation hold to preserve relevant documents);

6    *Johnson v. Starbucks Corp.*, 2019 WL 3220273 at *2 (N.D. Cal. Jul. 17, 2019) ("Delay alone is

7    typically insufficient where there is no showing of irreparable damage or injury, such as problems

8    with preserving evidence.").  Mr. Bielski speculates that *if* this Court were to find that Coinbase is

9    subject to the EFTA, that finding "would impact Coinbase's relationship with customers," but he

10   does not suggest that he or any other Coinbase customer is threatened by ongoing or future harm,

11   nor could he.  *Id.*  In fact, his primary argument for continuing this litigation is not based on

12   harms at all; rather, his lawyer wants this Court to hurry up and rule on the viability of Mr.

13   Bielski's EFTA claim so that he can use such a ruling as precedent in *other* arbitrations he has

14   already filed for *other* Coinbase users.  *See* Opp. at 3:8–14 ("A ruling by the Court on this issue

15   would inform . . . numerous other individual arbitrations that are pending against Coinbase.").

16   Those motives certainly do not constitute "harm" to Mr. Bielski.

17        **D.    The public interest favors a stay pending appeal.**

18            There is a strong federal policy in favor of arbitration, and Mr. Bielski does not contend

19   otherwise.  *See, e.g., Richards v. Ernst & Young LLP*, 2012 WL 92738, at *4 (N.D. Cal. Jan. 11,

20   2012) ("[T]he federal policy favoring arbitration embodied in the FAA and the economical use of

21   judicial resources lead the public interest to favor a stay, even when other interests are at play.");

22   *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Instead,

23   he argues only that resources would not be wasted if this Court limited discovery to his individual

24   claim and that the provisions of the EFTA—which no court has ever ruled applies to Coinbase—

25   weigh in favor of a stay.  *See* Opp. at 16:2–13.  For the reasons explained above, he is wrong.

26   Neither Mr. Bielski nor any other consumer will be injured by a stay, while Coinbase and this

27   Court will have wasted valuable time and expense should this case proceed and the Ninth Circuit

28

1858416

1  later decide that the case should have been sent to arbitration. *See Ward*, 2014 WL 7273911, at

2  *5; *Zaborowski*, 2013 WL 1832638, at *3.  The public interest favors a stay.

3  **III.    CONCLUSION**

4        For the foregoing reasons, Coinbase asks the Court to stay these proceedings until the

5  conclusion of the pending appeal.

6

7  Dated:  May 26, 2022                                    KEKER, VAN NEST & PETERS LLP

8

9                                           By:    _____

10                                                  STEVEN P. RAGLAND
                                                    NICHOLAS D. MARAIS
                                                    W. HAMILTON JORDAN
11                                                  ROBYN A. PARISER

12                                                  Attorneys for Defendant COINBASE, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1858416